EXHIBIT A

**Wolters Kluwer**

**CT Corporation**
**Service of Process Notification**
03/04/2025
CT Log Number 548562849

## Service of Process Transmittal Summary

**TO:**     LEGAL DEPARTMENT - SOP
            TESLA, INC.
            C/O LEGAL DEPT, 3000 HANOVER ST.
            PALO ALTO, CA 94304

**RE:**     **Process Served in California**

**FOR:**    Tesla, Inc.  (Domestic State: TX)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | NYREE HINTON, an individual, on behalf of himself and all others similarly situated vs. Tesla, Inc. |
| **DOCUMENT(S) SERVED:** | Summons, Class Action Complaint, Cover Sheet, Attachment(s), Addendum and Statement, Order, First Amended General Order, Notice |
| **COURT/AGENCY:** | Los Angeles County - Superior Court - Central District, CA Case # 25STCV03746 |
| **NATURE OF ACTION:** | This complaint indicates that the plaintiff is suing the defendant because they believe the defendant failed to fulfill the terms of a legally binding contract. |
| **PROCESS SERVED ON:** | C T Corporation System, GLENDALE, CA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 03/04/2025 at 13:53 |
| **JURISDICTION SERVED:** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after this summons and legal papers are served on you (Document(s) may contain additional answer dates) |
| **ATTORNEY(S)/SENDER(S):** | CHRISTOPHER R. RODRIGUEZ SINGLETON SCHREIBER, LLP 1414 K Street, Suite 470 Sacramento, CA 95814 916-248-8478 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 03/06/2025, Expected Purge Date: 03/11/2025 |
| | Image SOP |
| | Email Notification,  LEGAL DEPARTMENT - SOP  legalsop@tesla.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System 330 N BRAND BLVD STE 700 GLENDALE, CA 91203 8775647529 MajorAccountTeam2@wolterskluwer.com |



**CT Corporation**
**Service of Process Notification**
03/04/2025
CT Log Number 548562849

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                           Tue, Mar 4, 2025
**Server Name:**                    DROP SERVICE

| Entity Served | TESLA, INC |
|---|---|
| Case Number | 25STCV03746 |
| Jurisdiction | CA |

| Inserts |
|---|



**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
TESLA, INC.., a Delaware corporation; TESLA FINANCE LLC, a Delaware limited liability company; and DOES 1 through 100, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
NYREE HINTON, an individual, on behalf of himself and all others similarly situated,

Electronically FILED by
Superior Court of California,
County of Los Angeles
2/10/2025 4:22 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>(El nombre y dirección de la corte es): Los Angeles County Superior Court<br><br>111 North Hill Street, Los Angeles, CA 90012 | CASE NUMBER:<br>(Número del Caso):<br>25STCV03746 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Christopher R. Rodriguez, SINGLETON SCHREIBER, LLP, 1414 K St., Ste. 470, Sacramento, CA 95814, (916) 248-8478

| | | | |
|---|---|---|---|
| DATE: 02/10/2025<br>(Fecha): | Clerk, by | David W. Slayton, Executive Officer/Clerk of Court<br>J. Nunez | , Deputy |
| | (Secretario) | | (Adjunto) |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [X] on behalf of *(specify):* TESLA, INC.

under: [X] CCP 416.10 (corporation)      [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)      [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership)      [ ] CCP 416.90 (authorized person)
[ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]
**SUMMONS**
Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

1 | **SINGLETON SCHREIBER, LLP**
CHRISTOPHER R. RODRIGUEZ, SB# 212274
2 | E-Mail: crodriguez@singletonschreiber.com
ANDREW D. BLUTH, SB# 232387
3 | E-Mail: abluth@singletonschreiber.com
JOHN R. TERNIEDEN, SB# 330343
4 | E-Mail: jternieden@singletonschreiber.com
1414 K Street, Suite 470
5 | Sacramento, California 95814
Telephone: (916) 248-8478
6 | Facsimile: (619) 255-1515

7 | Attorneys for Plaintiffs

Electronically FILED by
Superior Court of California,
County of Los Angeles
2/10/2025 4:22 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

NYREE HINTON, an individual, on behalf of himself and all others similarly situated,

Plaintiffs,

v.

TESLA, INC.., a Delaware corporation; TESLA FINANCE LLC, a Delaware limited liability company; and DOES 1 through 100, inclusive,

Defendants.

No. 25STCV03746

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff NYREE HINTON ("Plaintiff"), by and through his undersigned counsel, on his own behalf and on behalf of all other persons similarly situated, sue TESLA, INC. ("Tesla Inc."); TESLA FINANCE LLC ("Tesla Finance") ("Tesla Inc." and "Tesla Finance" are collectively referred to herein as "Tesla"); and Does 1 through 100 ("Doe Defendants") (Tesla and Doe Defendants are collectively referred to herein as the "Defendants") and for this Complaint, allege upon information and belief, and based on investigation to date, as follows:

1

**INTRODUCTION**

1.     This is a class action brought for the benefit and protection of Plaintiff and all other similarly situated California citizen consumers against Defendants, which purported to provide warranties on all purchases, through Tesla, of new, used, and leased Tesla vehicles ("Tesla Vehicles").

2.     Tesla Inc. advertises, promotes, and markets its warranties as a way to protect Tesla Vehicle purchases.  Tesla Inc.'s warranties cover repairs and replacements necessary to correct defects in the materials or workmanship of parts manufactured or supplied by Tesla Inc.

3.     Notwithstanding Tesla Inc.'s ability to measure the distances its Tesla Vehicles drive to the millimeter, Plaintiff alleges, on information and belief, that Tesla Inc. knowingly overstates the distances traveled in Tesla Vehicles, or at minimum tolerates substantial inaccuracy in distances travelled in Tesla Inc.'s favor, such that the "odometers" in Tesla Vehicles indicate greater distances than what they actually travel.

4.     Rather than relying on mechanical or electronic systems to measure distance, Plaintiff alleges on information and belief that Tesla Inc. employs an odometer system that utilizes predictive algorithms, energy consumption metrics, and driver behavior multipliers that manipulate and misrepresent the actual mileage travelled by Tesla Vehicles.  In so doing, Defendants can, and do, accelerate the rate of depreciation of the value of Tesla Vehicles and also the expiration of Tesla Vehicle warranties to reduce or avoid responsibility for contractually required repairs as well as increase the purchase of its extended warranty policy.

5.     These systemic inaccuracies and fraudulent business practices undermine the value of Tesla Vehicles and their warranties, erode consumer trust, and suggest intentional practices designed to financially benefit Tesla Inc. at the expense of its customers.  By tying warranty limits and lease mileage caps to inflated "odometer" readings, Tesla increases repair revenue, reduces warranty obligations, and compels consumers to purchase extended warranties prematurely.

6.     In short, Tesla has thus misled, induced, and defrauded consumers from obtaining the benefits of Tesla Inc.'s warranties and into purchasing Tesla Vehicles and spending money on Tesla Inc.'s extended warranty packages, and thus harmed consumers through its fraudulent

2

1   business practices, misrepresentations, and false advertising.

2                            **JURISDICTION AND VENUE**

3       7.      This Court has jurisdiction over the claims and causes of action asserted herein

4   because they arise solely and specifically out of Defendants' unlawful business practices within

5   California and relate to several California statutes—Business & Professions Code sections 17200

6   and 17500, and Vehicle Code section 28050—which were designed to protect California's citizens,

7   the application of which is exclusively a matter for the courts of this State.

8       8.      Venue is proper in this Court because Defendants actively transact business in

9   California and in the County of Los Angeles based on Plaintiff's use of Defendants' products and

10  services in Los Angeles County; Defendants transact business in California and in the County of

11  Los Angeles based on their vehicle and warranty sales with residents of the County; Defendants

12  have committed unlawful acts in the County by and through their products, services, and associated

13  business transactions within the County; and a substantial part of the events giving rise to the claims

14  alleged herein occurred in Los Angeles County, where Plaintiff resides.

15                               **THE PARTIES**

16      9.      Plaintiff is a citizen of the State of California and a resident of Los Angeles. Plaintiff

17  purchased and now owns a warrantied Tesla Vehicle designed, manufactured, marketed, leased,

18  and/or sold by one or more of the Defendants containing an odometer system that over-represented

19  the actual number of miles travelled.  Plaintiff has suffered damages as a result of Defendants'

20  conduct.

21      10.     Upon information and belief, Plaintiff alleges that Tesla Inc.—formerly known as

22  Tesla Motors, Inc.—is a Delaware corporation that had its principal place of business in Palo Alto,

23  California, from approximately 2003 until December 1, 2021, at which point it moved its principal

24  place of business to Austin, Texas.

25      11.     Upon information and belief, Plaintiff alleges that Tesla Inc. designs, develops,

26  manufactures, tests, markets, distributes, sells, and leases electric vehicles under the brand name

27  "Tesla" as well as offers services related to those vehicles, including designing, developing and

28  periodically sending over-the-air updates for the advanced driver-assistance system software in

                                           3

1    Tesla Vehicles.

2         12.    Upon information and belief, Tesla Inc. is comprised of affiliated corporate entities,

3    each of which conducts business in California and all across the United States. These entities,

4    individually or collectively, through an integrated corporate structure (the details of which Plaintiff

5    is presently unaware), market, sell and provide automobiles and associated products and services.

6         13.    Upon information and belief, one of those affiliated corporate entities of Tesla Inc.

7    is Tesla Finance. Plaintiff alleges that Tesla Finance is a Delaware limited liability company with

8    a principal place of business in Palo Alto, California.

9         14.    Upon information and belief, Plaintiff alleges that Tesla Finance is a subsidiary of

10    Tesla Inc. and, as an agent for Tesla Inc., originates, offers, services, administers, and collects leases

11    and financing for Tesla Inc. and Tesla Vehicles.

12         15.    The true names and/or capacities, whether individual, corporate, partnership,

13    associate, governmental, or otherwise, of the Doe Defendants, inclusive, and each of them, are

14    unknown to Plaintiff at this time, who therefore sues said Doe Defendants by such fictitious names.

15    Plaintiff is informed and believes, and thereon alleges, that each defendant designated herein as a

16    Doe Defendant caused injuries and damages proximately thereby to Plaintiff as hereafter alleged,

17    and that each Doe Defendant is liable to Plaintiff for the acts and omissions alleged herein below,

18    and the resulting injuries to Plaintiff, and damages sustained by Plaintiff. Plaintiff will amend this

19    Complaint to allege the true names and capacities of said Doe Defendants when the same are

20    ascertained.

21                        **FACTS COMMON TO ALL CLASS MEMBERS**

22         **A.    Tesla's Automotive Products and Services**

23         16.    Electric vehicle sales are growing faster than ever as more car manufactures enter

24    the market. Once rare, electric vehicles are now increasingly affordable and as available as new

25    gas-engine vehicles.

26         17.    Defendants manufacture, market, sell, lease, and/or distribute electric vehicles to

27    consumers and business customers throughout the United States under the brand name "Tesla".

28         18.    Upon information and belief, Plaintiff alleges that Tesla is the leading producer of

4

1    plug-in electric vehicles globally—with some of its models becoming the world's best-selling all-
2    electric vehicles—and sells its vehicles and associated services to consumers across the United
3    States.

4         19.    Tesla was founded in 2003 by engineers Martin Eberhard and Marc Tarpenning in
5    San Carlos, California as an American automotive and energy company.  It was originally founded
6    as Tesla Motors, Inc., which was truncated to Tesla Inc. in 2017.

7         20.    The company was named after the 19th-century inventor Nikola Tesla, who
8    discovered the properties of rotating electromagnetic fields.  His work led to the development of
9    what is known as an "alternating current," a form of electricity that powers most homes and
10   businesses today and that is more efficient than the less efficient system called "direct current." His
11   contributions to the design that was favored by Thomas Edison.

12        21.    Today, Tesla engages in the design, development, manufacture, sale, financing and
13   leasing of fully electric vehicles and energy generation and storage systems.  This includes sales of
14   used vehicles, non-warranty after-sales vehicle services, body shop and parts, paid supercharging,
15   vehicle insurance and retail merchandise.

16        22.    Tesla Inc.'s consumer vehicles include the Models 3, Y, S, X, and Cybertruck.

17        23.    Currently, Tesla Inc. is among the most influential in the electric vehicle space,
18   dominating the electrical vehicle market in the U.S.

19        24.    Tesla Inc. has a vertically integrated business model that largely eliminates the use
20   of third-party supports.

21        25.    Tesla Inc. designs, manufactures, and tests its electric vehicles, and its components,
22   and all versions of their advanced driver-assistance system software such as Autopilot, Enhanced
23   Autopilot, and Full Self-Driving Capability Subscriptions.

24        26.    Tesla Inc. markets its vehicles on its website; in its brick-and-mortar galleries and
25   showrooms; through tweets; and public launch events, featuring unique automotive tests and online
26   audience interactions and online buzz, largely created by statements of its representatives including
27   its CEO Elon Musk, whose significant social media presence helps Tesla with its marketing by
28   increasing the company's visibility in the market.

27.     Unlike most other automakers that sell vehicles through franchised dealerships, Tesla sells and leases its electric vehicles directly to consumers through its website and retail stores, which Tesla Inc. owns and operates.

28.     Tesla sells used and new vehicles as well as offers financing and leasing programs for its vehicles and purportedly covers these vehicles with various warranties that cover repairs and replacements necessary to correct defects in the materials or workmanship of parts manufactured or supplied by Tesla Inc.

**B.      Tesla Inc.'s Repair Infrastructure**

29.     Electric vehicles are frequently touted as needing less maintenance than internal combustion vehicles.[1] That is purported to be the case because the electric motors that propel electric vehicles have fewer components, and require far less fluids, that require less maintenance than gas vehicles.  Additionally, electric vehicles use regenerative braking, which purports to reduce the wear and tear on brake pads.

30.     Tesla Inc. has stated on its website that it "designs every Tesla vehicle with the goal of eliminating the need for service."[2]

31.     However, Tesla Inc. has yet to eliminate the need for its vehicles to be serviced.  In fact, according to consumer research firm J.D. Power, Tesla Vehicle drivers visit service centers at nearly the same rate as the owners of premium gas vehicles, such as Lexus and Audi.[3]

32.     Furthermore, according to Tesla Inc.'s own filings with the Security Exchange Commission, suspension failures on several models of Tesla Vehicles pose an ongoing risk to Tesla Inc.'s operations.[4]

---

[1] Maintenance and safety of electric vehicles, ALTERNATIVE FUELS DATA CENTER: MAINTENANCE AND SAFETY OF ELECTRIC VEHICLES (2023), https://afdc.energy.gov/vehicles/electric-maintenance#:~:text=All%2Delectric%20vehicles%20typically%20require,oil%2C%20that%20require%20regular%20maintenance (last visited May 31, 2024).

[2] Service, TESLA (2024), https://www.tesla.com/service (last visited May 31, 2024).

[3] Rebecca Heilweil, *Missing parts, long waits, and a dead mouse: The perils of getting a Tesla fixed*, VOX, August 24, 2022, https://www.vox.com/recode/23318725/tesla-repair-mechanic-delay-electric-vehicles-ev (last visited May 2024).

[4] Tesla, Inc., Annual Report (Form 10-k) (Feb. 4, 2022) (Page 21); Tesla, Inc., Annual Report (Form 10-k) (Feb. 8, 2021) (Page 21).

33.     Upon information and belief, Plaintiff alleges that Tesla Inc. rolled out upgraded suspensions on their vehicles, including Tesla Model Y Tesla Vehicles, as a way to address these suspension failures.

34.     A reflection of Tesla Inc.'s vertically integrated business model, which aims to eliminate the need for third-party intermediaries, is Tesla Inc.'s unique approach to vehicle service.

35.     While automakers traditionally have a network of thousands of dealerships and independent mechanics to service their vehicles across wide coverage areas, Tesla Inc. has skipped the dealership sales model and sold vehicles directly to consumers since it was founded in 2003. Tesla Inc. has also built its own service centers, where most repairs on Tesla Vehicles tend to be completed by Tesla Inc. technicians who are employed or authorized by Tesla Inc. This has resulted in Tesla Inc. having a disproportionately smaller network of repair centers than traditional automakers.[5]

36.     In addition to the under-availability of Tesla Inc. service technicians, independent mechanics that service traditional gas vehicles tend not to have the expertise or access to materials or software required to service electrical vehicles like Tesla Vehicles.[6]

37.     Despite its limited number of repair centers, Tesla Inc. induces customers to use its service centers, warning Tesla Vehicle owners that damage or failures caused by non-Tesla certified technicians will not be covered under Tesla Inc.'s warranty policy.

38.     Tesla Inc.'s largely in-house repair infrastructure has led to long wait times, for even simple repairs, and high costs for customers.[7]

39.     Despite issues with its repair service delivery, however, Tesla Inc. has opposed "right-to-repair" legislation that would make it easier for people to repair their vehicles by making

---

[5] George Paul, BUSINESS INSIDER, November 4, 2019, https://www.businessinsider.com/tesla-owners-dissatisfied-with-wait-for-services-2019-11 (last visited Jun 2, 2024).

[6] Battery Industry Workforce Needs in North America, CENTER FOR AUTOMOTIVE RESEARCH (2024), https://www.cargroup.org/bietna/?utm_source=Media%2BList&utm_campaign=eecfbe7d81-EMAIL_CAMPAIGN_2023_02_08_09_40_COPY_01&utm_medium=email&utm_term=0_-59328f5e21-%5BLIST_EMAIL_ID%5D (last visited Jun 2, 2024).

[7] Heilweil, *supra* note 3.

1    sure that independent shops have access to the same diagnostic tools, parts, and software as

2    manufacturer-run repair shops.[8]

3    **C.    Tesla Inc.'s Warranties**

4    40.    Upon information and belief, Plaintiff alleges that Tesla Inc. provides certain

5    warranties for its new, used, and leased vehicles for some factory defects that may affect Tesla

6    Vehicles.

7    41.    Upon information and belief, Plaintiff alleges that Tesla Inc. also provides separate

8    warranty coverage terms for certain parts, conditions, and repairs. Each warranty includes

9    prescribed warranty periods based on usage time and/or an upper limit for mileage.

10    42.    All new Tesla Vehicles are covered by a New Vehicle Limited Warranty ("New

11    Vehicle Warranty"), which is a package of three warranty areas: the Basic Vehicle Limited

12    Warranty ("Basic Warranty"), the Supplemental Restraint System Limited Warranty

13    ("Supplemental Warranty"), and the Battery and Drive Unit Limited Warranty ("Battery and Drive

14    Unit Warranty").

15    43.    The Basic Warranty, under the New Vehicle Warranty, provides bumper-to-bumper

16    coverage for four (4) years or 50,000-miles, whichever comes first.  It covers costs associated with

17    the material and repair, including parts and labor, for workmanship or materials defects that occur

18    "under normal use" in any parts that were manufactured or supplied by Tesla Inc.

19    44.    Eligible customers whose Basic Warranty has not yet expired may extend some of

20    the warranty's protections by purchasing an optional Extended Service Agreement.  The price of

21    the Extended Service Agreement varies by model, but, upon information and belief, Plaintiff alleges

22    that purchase of the Extended Service Agreement may cost as much as $3,500 for two (2) years or

23    25,000 miles of additional Basic Warranty coverage.

24    45.    The Supplemental Warranty covers repairs or replacements to correct seatbelt and

25    airbag defects for up to five (5) years or 60,000 miles, whichever comes first.

26    46.    Tesla Inc.'s New Vehicle Warranty covers battery and drive units through the

27    ───────────────
[8] Fred Lambert, *Tesla fights new 'Right to Repair' initiative over cybersecurity concerns*, ELECTREK, October 14,
28    2020, https://electrek.co/2020/10/14/tesla-fights-right-to-repair-initiative-over-cybersecurity-concerns/ (last visited May 31, 2024).

8

PLAINTIFF'S CLASS ACTION COMPLAINT

1    Battery and Drive Unit Warranty, a separate more extensive warranty, whose coverage period

2    varies by Tesla Vehicle model.

3        47.    Previously, Tesla Inc. provided unlimited-mileage warranties for the battery and

4    drive unit. However now, Tesla Inc.'s warranties have mileage limits to determine coverage.[9]

5        48.    Under the Battery and Drive Unit Warranty, Model S, Model X, and Cyber Truck

6    vehicles are covered for the shorter of eight (8) years or 150,000 miles.

7        49.    The Battery and Drive Unit Warranty covers the short-range variants of the Model

8    Y and Model 3's battery and drive unit for the shorter of eight (8) years or 100,000 miles.

9        50.    Lastly, the Battery and Drive Unit Warranty covers the long-range variants of the

10    Model Y and Model 3 for eight (8) years or 120,000 miles, whichever is shorter.

11        51.    Additionally, the Battery and Drive Unit Warranty guarantees 70 percent battery

12    retention during the covered period.

13        52.    All used Tesla Vehicles purchased directly from Tesla are covered by shorter of the

14    remainder of the four (4) years or 50,000 miles left on the Basic Warranty.

15        53.    After the Basic Warranty expires, Tesla Vehicle customers may purchase additional

16    coverage from Tesla of one (1) year or 10,000 miles, whichever comes first.

17        54.    The balance of the several warranties, like the Basic Warranty and original Battery

18    and Drive Warranty, also transfer during the purchase of a used Tesla Vehicle.

19        55.    Tesla Inc. also covers failures that occur under normal use of Tesla-branded

20    replacement or repair parts purchased directly from Tesla under the Parts, Body and Paint Limited

21    Warranty for the shorter of one (1) year or 12,500 miles.

22        56.    However, some categories of parts have unique warranty periods under the Parts,

23    Body and Paint Limited Warranty: sheet metal (limited lifetime), drive unit and high voltage battery

24    (four (4) years or 50,000 miles), wall connectors (four (4) years for personal use or 12 months for

25    commercial use), touchscreen and media control unit (two (2) years or 25,000 miles), clear

26    protection film (10 years), and color paint film (five (5) years).

27    _____

28    [9] Elon Musk, INFINITE MILE WARRANTY TESLA (2014), https://www.tesla.com/blog/infinite-mile-warranty (last visited May 31, 2024).

57.     Tesla Inc. also provides a twelve (12)-year Body Rust Limited Warranty that covers rust perforation.

58.     Tesla Inc. warranties may be voided under certain circumstances including but not limited to failing to comply with any recall advisories, install software updates and to make repairs as well as exceeding load limits. Additionally, Tesla Vehicles with damaged vehicle identification numbers ("VIN"), possibly indicating theft and those that have been designated as rebuilt or salvage or have been written off as a total loss by an insurance company may be denied warranty coverage.

59.     Upon information and belief, Plaintiff alleges that it is the mileage reflected on Tesla Vehicles' odometer system that determines whether a Tesla Vehicle is within the applicable warranty mileage limits, including those described above.

**D.      Tesla's Odometer System**

60.     While maintenance costs for electric vehicles, like Tesla Vehicles, are initially low, anything that goes wrong outside of the prescribed warranty period will likely result in consumers being financially responsible for paying for repairs that will likely represent a large portion of the vehicle's actual cost of ownership.

61.     Plaintiff alleges that Defendants have the technical ability to measure, and do measure, distances travelled by their Tesla Vehicles with incredible GPS precision.

62.     Notwithstanding this sophisticated and technical ability to measure distances traveled precisely, Plaintiff alleges that Defendants misrepresent and manipulate the mileage driven by Tesla Vehicles by way of an odometer system ("Tesla's Odometer System") that unlike traditional vehicles, utilizes a miles-to-electrical energy conversion factor that relies on predictive algorithms, energy consumption metrics, and driver behavior multipliers to determine mileage traveled.

63.     Specifically, Tesla Odometer System are integrally linked to Tesla Vehicles' energy consumption metrics and range estimation algorithms, as evidenced by Tesla Inc.'s patents and internal methodology detailed in Patent US8054038B2. This patent confirms that Tesla Odometer System readings are not direct measurements of distance traveled, but are instead derived from energy consumption data, driving behavior patterns, and predictive algorithms. The patent

10

1   explicitly describes a "miles-to-electrical energy conversion factor" that varies dynamically based

2   on road and traffic conditions.

3       64.    Plaintiff alleges that Tesla's Odometer System integrates data from GPS sensors,

4   energy consumption readings, and historical driving patterns to display distance travelled, rather

5   than providing an accurate and immutable measurement of miles traveled.

6       65.    Thus, upon information and belief, Plaintiff alleges that Tesla's Odometer System

7   readings are not direct physical measurements of distance traveled, but rather estimates derived

8   from these various aforementioned sensor inputs and software calculations.

9       66.    Plaintiff alleges that Tesla Inc.'s patents and technical documentation reveal that the

10   odometer readings in Tesla Vehicles are modified by dynamic multipliers that penalize or reward

11   certain driving behaviors.  For example, Tesla applies a lower efficiency multiplier to "aggressive"

12   driving behaviors, such as rapid acceleration or high-speed driving, thereby inflating the recorded

13   mileage relative to the energy consumed.  Conversely, "efficient" driving behaviors receive higher

14   efficiency multipliers, reducing the recorded mileage for similar energy usage.

15       67.    These adjustments, made without disclosure to consumers, deviate significantly

16   from the commonly accepted function of an odometer as an accurate and immutable record of miles

17   traveled.

18   **E.**    **Discrepancies Between Real-World Data and Tesla's Odometer System**

19       68.    Plaintiff alleges that Defendants intentionally, designed, manufactured, calibrated,

20   installed, altered, set, or tolerated their Tesla's Odometer System to inflate the mileage traveled by

21   Tesla Vehicles.

22       69.    Upon information and belief, Plaintiff alleges that an analysis of Tesla Vehicle data,

23   including charging logs, energy efficiency metrics, and odometer readings, demonstrates

24   significant discrepancies between reported mileage and actual distance traveled.

25       70.    Upon information and belief, Plaintiff alleges that Tesla's reliance on predictive

26   algorithms, energy consumption metrics, and software recalibrations contributes to these

27   discrepancies and undermines the accuracy of the odometer readings in Tesla Vehicles.

28       71.    In truth, and without the knowledge of Plaintiffs or consumers, and/or disclosure by

1   Defendants, Defendants represented Tesla Vehicles' odometers as functioning like commonly
2   accepted odometers, but instead intentionally designed, manufactured, calibrated, installed, altered,
3   set and/or tolerated their Tesla Odometer Systems (ether directly and/or by using a device, devices,
4   or software) to inflate the mileage travelled by the vehicle by varying percentages ranging from 15
5   percent to 117 percent higher than Plaintiff's other vehicles and many times greater than the four
6   percent industry standard tolerance for measures of inaccuracy in odometers under normal
7   conditions.

8       72.    Defendants achieved the excessive readings of their Tesla Odometer System by,
9   *inter alia*, installing (or causing to be installed) a computer software and/or an electronic or
10  mechanical device or devices, that alter the odometer system's performance by an amount
11  exceeding the odometer manufacturer's design tolerance and industry standard tolerances for
12  measures of inaccuracy in odometers, or, alternatively, by tolerating inaccurate registration of miles
13  traveled in Tesla Vehicles.

14      73.    Plaintiff further alleges that Tesla Inc. adopted a uniform, biased odometer
15  performance standard so that the Tesla Odometer Systems installed in all Tesla Vehicles sold and
16  leased by Defendants in the United States, including California, would systematically over-register
17  the mileage traveled by those vehicles.

18      74.    Upon information and belief, Plaintiff alleges that Tesla's odometer discrepancies
19  are not isolated incidents but rather systemic issues affecting a broad class of consumers. Due to
20  Defendants' over-registration of miles traveled in Tesla Vehicles, Plaintiff alleges that owners of
21  Tesla Vehicles are deprived of the benefits of their bargains in purchasing, financing, or leasing
22  these Tesla Vehicles, by among other things: (i) installing and tolerating misleading odometer
23  systems in their vehicles; (ii) accelerating the expiration of warranties tied to mileage thresholds;
24  (iii) diminishing the number of miles allowed to be driven under their leases without penalty,
25  thereby causing them to pay excess mileage charges for which they rightfully bear no responsibility;
26  and/or (iv) diminishing the resale value of Tesla Vehicles.

27      75.    As a result of its scheme, Tesla Inc., and by extension all Defendants, reaped, and
28  will continue to reap, financial benefits in the form of (i) avoiding manufacturing costs of installing

odometers in their vehicles that accurately record the mileage driven; (ii) warranty repair savings; and/or (iii) excess lease mileage charges, all to the financial detriment of Tesla Vehicle owners or lessees. The resale value of the vehicles owned by consumers also has been (and will continue to be) diminished.

76.    At all relevant times, Plaintiff alleges that Defendants devised a scheme to increase profits and retain the revenue from the purchase of Extended Service Agreements and denial of valid warranty claims by designing Tesla Vehicle odometers to report inflated mileage to expedite the expiration of standard warranties and purchase of extended warranties as well as reject valid warranty claims for repair.

## PLAINTIFF'S INDIVIDUAL ALLEGATIONS

77.    Plaintiff is a seasoned financial sector professional who specializes in equity research, data analytics, and product management. He has subject matter expertise in fundamental equity analysis, shareholder activism, mergers and acquisitions, and exchange-traded-funds.

78.    Plaintiff has a Bachelor of Science from The Pennsylvania State University over the course of his career, has worked at major organizations such as Bloomberg L.P., Third Bridge Group, and Reorg Research.

79.    On or about December 9, 2022, Plaintiff purchased a used, 2020 Model Y Tesla Vehicle from IQautos in Marietta, Georgia. At the time of purchase, Plaintiff's Tesla Vehicle was represented to have approximately 36,772 miles on it.

80.    As part of this transaction, Plaintiff received from Tesla Inc. the Basic Warranty, which Defendants represented would protect his Tesla Vehicle until September 5, 2024, or 50,000 miles, whichever came first.

81.    As part of this transaction, Plaintiff also received from Tesla Inc. the Battery and Drive Unit Warranty, which was to expire September 5, 2028, or 120,000 miles, whichever came first; and the Supplemental Warranty, which covered Plaintiff's vehicle for five (5) years or 60,000 miles, whichever came first. Plaintiff's vehicle was also covered by a Body Rust Limited Warranty; Used Vehicle Limited Warranty; and a Parts, Body and Paint Repair Limited Warranty.

82.    In connection with the purchase of the vehicle, Defendants expressly or impliedly

13

represented to Plaintiff that his Tesla Vehicle's odometer would accurately record the number of miles travelled by the vehicle.

83.     Plaintiff understood this the mileage limits tied to the warranty periods described above pertained to the actual distance he would travel in his Tesla Vehicle.

84.     Not long after purchasing his vehicle, in or about February 2023, Plaintiff had to take his Tesla Vehicle to an authorized Tesla Inc. repair center for work on the car's suspension where several suspension parts were replaced. After this service in February, Plaintiff had to bring his Tesla Vehicle in an additional four times between March 2023 and June 2023.

85.     In or around March 2023, Plaintiff observed peculiar patterns in mileage accumulation in his Tesla Vehicle, particularly in relation to Tesla Inc.'s warranty expiration. In reviewing the number of miles recorded on his Tesla Vehicle, Plaintiff observed a daily average of 55.54 miles between December 12, 2022, and February 6, 2023.

86.     Plaintiff then later observed an abnormal spike in average daily miles driven leading up to the warranty's usage time limit on June 28, 2023. Notably, Plaintiff observed that mileage surged to 72.35 miles per day between March 26, 2023, and June 28, 2023.

87.     Plaintiff found the average mileage his Tesla Vehicle accumulated per day and per month to be much higher than his usage, especially because his car was being repaired by Tesla Inc. for many days within this time period.

88.     Plaintiff also had a consistent driving routine from January 2023 to June 2023 that involved a short commute to work and occasional visits to the gym and local restaurants – which should have averaged, by generous estimates, 20 miles per day–much lower than the mileage Plaintiff observed in his Tesla Vehicle.

89.     As a result of this increased mileage accumulation, Plaintiff's Basic Warranty expired well ahead of schedule – when the odometer read that the vehicle had reached 50,000 miles – in or around July 7, 2023.

90.     As a result, on January 24, 2024 when Plaintiff took his Tesla Vehicle for a sixth service visit to an authorized Tesla Inc. repair center to again address the ongoing suspension issues that plagued his Telsa Vehicle (and which were repaired under warranty on February 6, 2023) the

14

1  representatives at the authorized Tesla Inc. repair recenter refused to perform the necessary repairs

2  under warranty, telling Plaintiff that his Tesla Vehicle was no longer under warranty for the

3  necessary repairs.

4       91.    At no point did Defendants or Defendants' representatives inform Plaintiff that the

5  rapid increase in mileage could be caused by the Tesla Odometer System and its predictive

6  algorithms, energy consumption metrics, and driver behavior multipliers.

7       92.    The invoices Plaintiff received from repair center simply identified mileage under a

8  section titled "Odometer".

9       93.    On information and belief, Plaintiff alleges that it was not his driving that caused

10  the components to fail, but rather, the integrity of the components themselves.  Plaintiff believes

11  that the suspension components that failed were the subject of recalls for the same year, make, and

12  model of his Tesla Vehicle. When Plaintiff approached Tesla Inc. with this information, Tesla Inc.

13  ignored him and claimed, without sufficient explanation, that these recalls did not apply to his Tesla

14  Vehicle.

15       94.    Because they would not be covered under warranty, Plaintiff opted to not have the

16  repairs to his Tesla Vehicle's suspension performed at that time.

17       95.    Around the time the Basic Warranty expired, Plaintiff began commuting to Irvine

18  two (2) to three (3) days a week from his residence in Los Angeles – which is roughly a 100-mile

19  total commute.  Notwithstanding the longer commute, Plaintiff observed a **decline** in the vehicle's

20  reported average daily miles to 50.72 miles per day through April 25, 2024.

21       96.    This decrease in average daily miles more closely aligned with his historical data on

22  his other vehicles and Plaintiff's commute at that time.

23       97.    In the years prior to purchasing his Tesla Vehicle, Plaintiff owned several other

24  types of vehicles including two (2) Chevy models and one (1) Mercedes model.  Plaintiff's

25  historical vehicle usage under comparable conditions with these three (3) prior vehicles produced

26  a six-month average mileage benchmark of 6,086 miles. In contrast, Plaintiff's Tesla Vehicle

27  reported 13,228 miles in a similar six-month period of ownership–representing a 117 percent

28  increase over the established benchmark.

1      98.   This disparity is even more alarming considering Plaintiff's Tesla Vehicle was

2  unavailable for use for significant portions of the above-described six-month period due to

3  numerous service visits and its shipment to California between February 13 and February 24, 2023.

4      99.   Plaintiff's historical driving patterns establish a clear benchmark for expected

5  mileage, making his Tesla Vehicle's odometer readings an anomaly.

6      100.   Ultimately, during the first six months of ownership, Plaintiff's Tesla Vehicle

7  accumulated 13,300 miles, which averages approximately 2,217 miles per month.  But in the year

8  following the Basic Warranty expiration, Plaintiff's Tesla Vehicle accumulated roughly 17,000

9  miles.  This averages to about 1,415 miles per month–a decline of almost 1,000 miles per month

10 despite an increase in Plaintiff's commute for work.

11     101.   In short, in the first six (6) months of Plaintiff's ownership of his Tesla Vehicle, he

12 accumulated 80 percent of the miles it took almost a full year to accumulate after the warranty

13 expired.

14     102.   By Plaintiff's own calculations, his Tesla Vehicle consistently exhibited accelerated

15 mileage accumulations of varying percentages ranging from 15 percent to 117 percent higher than

16 Plaintiff's other vehicles and his driving history.

17     103.   Now that his Tesla Vehicle's warranty has prematurely expired, Tesla Inc. refuses

18 to perform any further work under warranty and that all subsequent work would be "customer pay

19 service".

20     104.   As recently as October 30, 2024, Plaintiff had his Tesla Vehicle towed to an

21 authorized Tesla Inc. repair center in Los Angeles, California when, despite now minimal usage,

22 the Tesla Vehicle's suspension seemingly disconnected from the main driving mechanism.

23     105.   Representatives at the repair center confirmed that Plaintiff's Tesla Vehicle's

24 suspension needed significant repairs–which the repair center estimated would cost around

25 $10,000.

26     106.   Interestingly, the representative at this repair center (Javier Romo) told Plaintiff that

27 all Tesla Inc. repairs come with a one-year warranty – meaning that the repairs quoted to Plaintiff

28 in January 2024, and which Tesla Inc. told Plaintiff he would need to pay out-of-pocked because

16

1     his Tesla Vehicle was no longer under warranty, should have been covered by Tesla Inc.'s repair

2     warranty as these new repairs would have been within one year of the suspension work performed

3     back in February 2023.

4          107.    Had Plaintiff known this, he would have elected in January 2024 to have his

5     suspension repaired and avoided the magnitude of damage his suspension later sustained.

6          108.    Given Tesla Inc.'s refusal to honor the previous warranty, and the significant

7     estimated cost of the repairs needed, Plaintiff elected to not have Tesla, Inc. perform any further

8     repairs to his Tesla Vehicle – which is now inoperable.

9          109.    Upon information and belief, Plaintiff alleges that his experiences with Tesla Inc.

10    and the rapid mileage accumulation of his Tesla Vehicle are not unique to him. A quick online

11    review reveals numerous Tesla Vehicle owners who have reported unexplained surges in odometer

12    readings, particularly leading up to warranty expiration, on online forums such as Reddit, and social

13    media platforms. These reports consistently document significant mileage discrepancies between

14    actual travel distances and odometer readings, further substantiating Plaintiff's claims that Tesla's

15    odometer system misrepresents vehicle usage.

16         110.    Reddit users John_Quid2; Crzy4vr; Nice-Put-2940; and others have all publicly

17    noted discrepancies between the distances they have driven and what is reported by the odometers

18    in their Telsa Vehicles. (Attached to this Complaint as Exhibit 1 is a compilation of Reddit postings

19    discussing these discrepancies).

20                    **CLASS ACTION ALLEGATIONS**

21         111.    Pursuant to California Code of Civil Procedure section 382, Plaintiff brings this

22    class action on his own behalf, and on behalf of all other similarly situated consumers in California.

23    The proposed class is defined as follows:

24         a.    During the fullest period allowed by law, all citizens residing in California who

25    purchased a new or used Tesla Vehicle for personal, family, or household purposes ("Class").

26         112.    The members Class are collectively referred to herein as the "Class Members."

27         113.    Excluded from the Class are assigned judges and members of their families within

28    the first degree of consanguinity; Defendants; and Defendants' subsidiaries, affiliates, officers, and

17

1   directors.

2       114.    The requirements of Code of Civil Procedure section 382 are satisfied for the

3   proposed Class.

4       115.    The proposed Class is so numerous that individual joinder of all the members is

5   impracticable because members of the Class number in at least the tens of thousands or hundreds

6   of thousands.  The precise number of Class Members and their identities are unknown to Plaintiff

7   at this time but are objectively ascertainable and will be determined through appropriate discovery

8   and other readily available means.

9       116.    Defendants possess objective evidence as to the identity of each Class Member and,

10  to a reasonable degree of certainty, the harm suffered by each Class Member, including without

11  limitation sales receipts, phone numbers, names, rewards accounts data, credit card data, customer

12  service complaint forms/emails/date, and other evidence which objectively identifies Class

13  Members.

14      117.    Class Members may be notified of the pendency of this action by mail, publication,

15  and/or through the records of Defendants.

16      118.    Like Plaintiff, all Class Members purchased, financed, or leased a new or used Tesla

17  Vehicles with the misunderstanding, caused by their reliance on Defendants' representations and/or

18  omissions that trip details such as mileage were being accurately recorded by the Tesla Vehicles'

19  software and would accurately reflect eligibility for warranty coverage.  Such understanding was

20  reasonable and was a material basis for the decision to purchase a Tesla Vehicle, which Defendants

21  intended to foster through their various marketing activities in connection with the sale of Tesla

22  Vehicles and their accompanying warranties.  Plaintiff is advancing the same claims and legal

23  theories on behalf of himself and all members of the Class.

24      119.    There are common questions of law and fact affecting Plaintiff and Class Members.

25  Common legal and factual questions include, but are not limited to:

26      a.      Whether Defendants market and advertise Tesla Inc.'s warranty policy in a way that

27  is false, deceptive, and/or misleading;

28      b.      Whether Defendants adopted and implemented a uniform odometer performance

1  standard for all of their Tesla Vehicles;

2      c.      Whether Defendants installed (or caused to be installed) a device or software to alter

3  the performance of the odometer system in Tesla Vehicles in violation of federal and state law;

4      d.      Whether Defendants had a practice of overstating the distance traveled in their

5  consumer vehicles, through use of the algorithms in their Tesla Odometer System, to accelerate

6  warranty expiration, justify valid warranty repair rejections, and increase sales of the Extended

7  Service Agreement;

8      e.      Whether Defendants had a practice of tolerating inaccurate mileage reporting in

9  their favor;

10     f.      Whether the performance standards adopted and implemented by Defendants cause

11  errors of odometer over-registration;

12     g.      Whether installation of the device or software causes errors of odometer over-

13  registration beyond acceptable tolerance limits;

14     h.      Whether by the misconduct set forth in this complaint, Defendants engaged and

15  continue to engage in unfair, fraudulent, or unlawful business practices;

16     i.      Whether Defendants' conduct was committed knowingly and/or intentionally;

17     j.      Whether Defendants' conduct constitutes violations of the federal and/or state laws

18  asserted herein;

19     k.      Whether Defendants had a duty to correct their fraudulent conduct and statements;

20     l.      Whether Class Members were harmed by Defendants' fraudulent conduct and false

21  statements;

22     m.      Whether Defendants benefited from the over-registration of the Tesla Odometer

23  System, and if so, in what ways and by how much;

24     n.      Whether Defendants' conduct violates public policy;

25     o.      Whether Plaintiff and Class Members are entitled to actual damages, consequential

26  damages; and statutory penalties, and if so, the proper measure and amounts;

27     p.      Whether Class Members are entitled to punitive damages;

28     q.      Whether Class Members are entitled to recover statutory attorney's fees and

19

1    litigation costs; and

2        r.    Whether, as a result of Defendants' misconduct as alleged herein, Plaintiff and Class

3    Members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and

4    nature of such relief.

5        120.    Plaintiff's claims are typical of the claims of the proposed Class because the rights

6    of Plaintiff and Class Members were violated in the same manner by the same conduct.

7        121.    Plaintiff and Class Members are all entitled to recover statutory penalties and other

8    relief arising out of Defendants' violations of statutory law alleged herein.

9        122.    Plaintiff will fairly and adequately represent and protect the interests of the Class.

10       123.    Plaintiff's interests do not conflict with the interests of the Class they seek to

11   represent. Plaintiff has retained counsel competent and experienced in prosecuting class actions,

12   and Plaintiff intends to vigorously prosecute this action.

13       124.    The class mechanism is superior to other available means for the fair and efficient

14   adjudication of the claims of Plaintiff and Class Members.

15       125.    Given the relative value of statutory penalties available to any of the individual Class

16   Members, individual litigation is not practicable.

17       126.    Individual Class Members will not wish to undertake the burden and expense of

18   individual cases.

19       127.    In addition, individualized litigation increases the delay and expense to all parties

20   and multiplies the burden on the judicial system.  Individualized litigation also presents the

21   potential for inconsistent or contradictory judgments.

22       128.    In contrast, the class action device presents far fewer management difficulties and

23   provides the benefits of single adjudication, economy of scale, and comprehensive supervision by

24   a single court.

25       129.    Questions of law and fact common to all Class Members predominate over any

26   questions affecting only individual Class Members. Injuries sustained by Plaintiff and Class

27   Members flow, in each instance, from a common nucleus of operative facts as set forth above.

28       130.    In each case, Defendants' actions caused harm to all Class Members as a result of

1    such conduct. The resolution of these central issues will be the focus of the litigation and

2    predominate over any individual issues.

3        131.   Proposed Class counsel possesses the knowledge, experience, reputation, ability,

4    skill, and resources to represent the Class and should be appointed lead counsel for the Class.

5                                    <u>**COUNT I**</u>

6              <u>**(VIOLATION OF CALIFORNIA VEHICLE CODE SECTION 28050)**</u>

7        132.   Plaintiff and Class Members reallege and incorporate by reference each allegation

8    set forth above.

9        133.   Defendants' wrongful acts and practices, as described above, violate the California

10   statutes prohibiting odometer tampering, California Vehicle Code section 28050 (the "State Act").

11   Defendants violated (and continue to violate) the State Act in the following manner(s):

12       i.    Designing, manufacturing, selling, calibrating, tolerating and/or installing

13             misleading odometer systems in Tesla Vehicles that register mileage greater

14             than the mileage the vehicles were actually driven as registered by the

15             odometer systems within the designed tolerance of the manufacturer of the

16             odometer systems and industry standard tolerance limits;

17       ii.   Installing or having installed a device (or devices) or software that cause

18             odometer systems in Tesla Vehicles to register mileage greater than the

19             mileage the vehicles were actually driven as registered by the odometer

20             systems within the designed tolerance of the manufacturer of the odometer

21             systems and industry standard tolerance limits; and/or

22       iii.  Tolerating, altering, or having altered the odometers in Tesla Vehicles

23             intending to change or benefit from the mileage registered by the odometer

24             systems.

25       134.  Defendants advertised for sale, and sold, Tesla Vehicles that contained misleading

26   odometers; that contained devices or software that caused odometers; or that had altered odometers,

27   that registered mileage greater than the mileage the vehicles were actually driven and outside the

28   accepted industry standard tolerance for odometers.

                                           21

1    135.    Defendants' wrongful conduct of designing, manufacturing, marketing, financing,

2    selling, and/or leasing vehicles with odometers that over-register miles was engaged in with the

3    intent to defraud California residents and deprive them of the benefits of their bargains.

4    136.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and

5    Class Members were damaged.

6    ## COUNT II

7    ## (UNJUST ENRICHMENT/RESTITUTION)

8    137.    Plaintiff and Class Members reallege and incorporate by reference each allegation

9    set forth above.

10    138.    At all relevant times, Defendants deceptively marketed, financed, leased, advertised,

11    and sold Tesla Vehicles, whose Tesla Odometer Systems overcount miles driven, to Plaintiff and

12    Class Members.

13    139.    As a result of the Tesla Odometer Systems' overcounting, warranties covering the

14    Tesla Vehicles purchased by Plaintiff and Class Members did not provide the promised

15    performance.

16    140.    Plaintiff and Class Members conferred a benefit on Defendants in the form of

17    monies that were paid in exchange for Defendants' Tesla Vehicles and associated warranties.

18    141.    Defendants were aware and had knowledge of these non-gratuitous benefits, and, in

19    fact, intended for this to occur as a result of their fraudulent, deceitful marketing and sales practices.

20    142.    Defendants have been unjustly enriched, and will continue to be unjustly enriched,

21    in retaining the revenues derived from Plaintiff and Class Members' purchases of Tesla Vehicles,

22    whose warranties are prematurely expired by odometer overcounting, which retention under these

23    circumstances is unjust and inequitable because Defendants misrepresented and/or omitted material

24    facts concerning the Tesla Odometer Systems.

25    143.    Defendants have also been unjustly enriched, and will continue to be unjustly

26    enriched, in retaining the revenues derived from charging customers to pay for repairs on their

27    Tesla Vehicles that are covered by warranty periods that Defendants have failed to disclose.

28    144.    Defendants' misrepresentations and/or omissions caused injuries to Plaintiff and

22

1  Class Members because no reasonable consumer would have purchased the Tesla Vehicles if
2  Defendants were honest about the value and the true facts regarding Tesla Odometer Systems and
3  warranties.

4  145.   Because Defendants' retention of the non-gratuitous benefits conferred on them by
5  Plaintiff and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiff
6  and Class Members for their unjust enrichment, as ordered by the Court.

7  **COUNT III**

8  **(NEGLIGENT MISREPRESENTATION)**

9  146.   Plaintiff and Class Members reallege and incorporate by reference each allegation
10  set forth above, which detail Defendants' negligent misrepresentations with specificity.

11  147.   Through their advertising, contractual agreements, and in the course of their regular
12  business, Defendants made representations and/or omissions to Plaintiff and Class Members of
13  material facts concerning the Tesla Odometer System and warranty programs.

14  148.   Defendants made negligently misrepresented how the Tesla Odometer Systems
15  calculate and represent mileage driven by Tesla Vehicles, and how differ from traditional
16  odometers.

17  149.   Notwithstanding the discrepancy between traditional odometers and Tesla
18  Odometer Systems, Defendants continued to use the word "odometer" in vehicle manuals, invoices,
19  marketing, and other materials in such a way that mislead consumers into believing that Tesla
20  Vehicles used traditional odometers.

21  150.   Plaintiff alleges that it is the mileage recorded on their Tesla Odometer Systems,
22  and not actual miles driven, that are used for the purposes of calculating repairs needed and whether
23  a Tesla Vehicle is still within the applicable warranty periods.

24  151.   Defendants represented to Plaintiff and Class Members, expressly or by implication,
25  that the warranties provide more miles of warranty protection than they, in fact, provide due to
26  Defendants' tampering with the odometers, and that leased cars can be driven for more miles
27  without incurring charges than they, in fact, can.

28

23

152.    Defendants also omitted and concealed material facts relating to warranty periods that cover authorized repairs on Tesla Vehicles, and then charged customers for later-performed work that is covered by the applicable warranty period.

153.    Defendants owed Plaintiff and Class Members a duty to provide the Tesla Vehicles and odometers and the accompanying warranties according to Defendants' representations.

154.    Defendants breached their duty owed to Plaintiff and Class Members by failing to provide the vehicles, odometers, and warranty coverage, according to their representations.

155.    Defendants failed to act with reasonable care in making the above-mentioned representations and/or omissions concerning the vehicles' odometers and warranties. Defendants made the above-mentioned representations and/or omissions concerning the operation of the without reasonable grounds for believing them to be true.

156.    Defendants made the above-mentioned representations and/or omissions with the intent to induce Plaintiff and Class Members into purchasing the Maintenance Plan.

157.    Defendants knew or should have known that Plaintiff and Class Members were ignorant as to the true value of the Tesla Vehicle warranties and their vehicles, and that Plaintiff and Class Members would reasonably rely upon Defendants' representations and/or omissions.

158.    Plaintiff and Class Members did justifiably and reasonably rely on Defendants' representations and omissions. Plaintiff and Class Members would not have purchased Tesla Vehicles without such statements and/or omissions made by Defendants.

159.    As a result of Defendants acts and/omissions, Plaintiff and Class Members were damaged and harmed by Defendants in that they have been deprived of their benefit of the bargain, the lost monies they overspent on the maintenance of the Tesla Vehicles, and the greater depreciation on the vehicles.

## COUNT IV

### (VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200)

160.    Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above.

161.    Commencing on a date unknown to Plaintiff and Class Members, and continuing

24

1   thereafter through the present, Defendants committed (and continue to commit) acts of unfair

2   competition, by engaging in the above-described conduct to the extreme detriment of Plaintiff and

3   Class Members.

4        162.   Defendants' wrongful acts and practices, as described above, constitute unlawful,

5   unfair, and fraudulent business acts and practices within the meaning of California Business and

6   Professions Code section 17200, *et seq.*

7        163.   Defendants' wrongful acts and practices, as described above, constitute "fraudulent"

8   business acts and practices in that the representations and omissions described herein are false

9   and/or likely to deceive potential and current customers.

10        164.   Defendants' wrongful acts and practices, as described above, constitute "unfair"

11   business acts and practices in that the harm caused by Defendants' conduct outweighs any utility

12   of such conduct, and such conduct (i) offends public policy including, but not limited to, the public

13   policy articulated in statutes such as 49 U.S.C. §§ 32703(l)-(2); 32710; and California Vehicle Code

14   section 28050; (ii) is immoral, unscrupulous, unethical, deceitful, and offensive; and/or (iii) has

15   caused (and will continue to cause) substantial injury to consumers such as Plaintiff and Class

16   Members.

17        165.   Defendants' wrongful acts and practices are "unlawful" in that they violate, *inter*

18   *alia,* 49 U.S.C. §§ 32703(l);(2); 32710; and California Vehicle Code section 28050.

19        166.   Defendants' failure to disclose the operation and effects of its odometer system

20   constitutes a deceptive practice, as consumers reasonably rely on odometer readings as accurate

21   reflections of distance traveled.

22        167.   Defendants' unlawful and unfair conduct, which continue day to day, has allowed

23   for Defendants to enrich themselves at the expense of Plaintiff and Class Members, including

24   through Plaintiff's and Class Members' payment of monies to Defendants, including without

25   limitation through the purchase of a Tesla Vehicle – whether self-financed or financed and leased

26   from Tesla Inc. via Tesla Finance.

27        168.   Defendants' conduct results in shortened warranty periods, increased repair costs

28   for consumers, and reduced warranty obligations and increased sales of extended warranties – all

1   of which result in financial gain for Defendants.

2   169.   Plaintiff and Class Members are thus entitled to restitutionary and injunctive relief,

3   including without limitation disgorgement of any unlawful gains that Defendants obtained as a

4   result of their unlawful and unfair conduct at the expense of Plaintiff and Class Members.

5   ## COUNT V

6   ## (VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17500)

7   170.   Plaintiff and Class Members reallege and incorporate by reference each allegation

8   set forth above.

9   171.   Commencing on a date unknown to Plaintiff and Class Members, and continuing

10  thereafter through the present, Defendants committed (and continue to commit) deceptive acts and

11  practices by engaging in the above-described conduct to the extreme detriment of Plaintiff and

12  Class Members.

13  172.   Defendants' failure to disclose the operation and effects of its odometer system

14  constitutes a deceptive practice, as consumers reasonably rely on odometer readings as accurate

15  reflections of distance traveled.

16  173.   Defendants' marketing materials and statements concerning the operation of Tesla

17  Vehicle components, including the odometer, and Tesla Vehicle warranties are commercial

18  advertisements that Defendants intended to disseminate across California.

19  174.   By engaging in the above-described conduct, Defendants made false statements in

20  commercial advertisements directed at the public, and have thus engaged in unlawful false or

21  misleading advertising under California Business & Professions Code sections 17500, *et seq.*

22  175.   Defendants' advertising of their warranties is "deceptive" in that it misrepresents

23  the value of the warranty, the true number of miles of warranty protection Defendants will provide,

24  and the true number of miles, at which excess mileage lease charges will be incurred.

25  176.   Defendants' false statements in their commercial advertisements deceived or had

26  the tendency to deceive a substantial segment of their audience and Class Members.

27  177.   Defendants' deception through their commercial advertisements was material and a

28  substantial reason that Plaintiff and Class Members purchased Tesla Vehicles.

26

178.   Plaintiff and Class Members were harmed as a result of Defendants' false statements, and are thus entitled to restitutionary and injunctive relief, including without limitation disgorgement of any unlawful gains that Defendants obtained as a result of their unlawful and unfair conduct at the expense of Plaintiff and Class Members.

## COUNT VI

### (BREACH OF CONTRACT)

179.   Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above.

180.   Plaintiff and Class Members entered into agreements with Defendants for the purchase of Tesla Vehicles, repairs, and their accompanying warranties.

181.   Under the Tesla Vehicle warranties, coverage was to be provided up to a certain date or milage.

182.   For example, as part of his transaction to purchase his Tesla Vehicle, Plaintiff received from Tesla the Basic Warranty, which was to protect his vehicle until September 5, 2024, or 50,000 miles, whichever came first.

183.   But because of Defendants' uniform standard to use Tesla Odometer Systems that can over-register mileage in Tesla Vehicles, like Plaintiff's vehicle, Plaintiff's Basic Warranty expired well ahead of schedule – when the odometer read that the vehicle had reached 50,000 miles in or around July 7, 2023.

184.   As a result, Tesla Inc. refused to cover maintenance on Plaintiff's vehicle that would have been covered under the Basic Warranty had the odometer counted miles correctly.

185.   Tesla Inc. also charged Plaintiff for work performed on his Tesla Vehicle that was within the applicable warranty period that covers authorized repairs on Tesla Vehicles.

186.   Thus, Defendants breached their agreements with Plaintiff by failing to provide him with the promised warranty coverage due to the overcounting of mileage expedited the warranty's expiration.

187.   Plaintiff is informed and believes, and thereon alleges, that Defendants engaged in similar breaches of the agreements Defendants had with Class Members by failing to provide Class

27

1   Members with services covered under the Tesla Vehicle warranties that were included in their

2   purchase of a Tesla Vehicle – including purchases that were self-financed or financed and leased

3   from Tesla Inc. via Tesla Finance.

4         188.   Plaintiff and Class Members fully, completely, and competently performed and

5   fulfilled their obligations under their agreement with Defendants for the Tesla Vehicles and their

6   accompanying warranties, except for those that have been excused or otherwise discharged by

7   Defendants or Defendants' conduct.

8         189.   Conversely, Defendants breached their agreement with Plaintiff and Class Members

9   by systematically failing and refusing to provide all services that were included in the warranties.

10       190.   As a result of Defendants' breaches of their obligations to Plaintiff and Class

11   Members under the purchases agreement and warranty programs, Plaintiff and Class Members have

12   been damaged in an amount to be proven at trial.

13                        **COUNT VII**

14            **(MONEYS HAD AND RECEIVED)**

15       191.   Plaintiff and Class Members reallege and incorporate by reference each allegation

16   set forth above.

17       192.   Defendants' business acts and practices, in part, were centered in, carried out,

18   effectuated and/or perfected within the State of California. Defendants' conduct within California

19   injured Plaintiff and all members of the Class. Therefore, this claim for relief under California law

20   is brought on behalf of Class Members.

21       193.   Defendants have obtained money from Plaintiff and Class Members by the exercise

22   of undue influence, menace or threat, compulsion or duress, and/or mistake of law and/or fact.

23       194.   As a result, Defendants have in their possession money, which in equity belongs to

24   Plaintiffs and Class Members and should be refunded to Plaintiff and Class Members pursuant to

25   the California equitable principle of money had and received.

26          **TOLLING OF THE STATUTES OF LIMITATIONS**

27          **(ALL CLAIMS AND ALL CAUSES OF ACTION)**

28       195.   Plaintiff and Class Members reallege and incorporate by reference each allegation

PLAINTIFF'S CLASS ACTION COMPLAINT

1    set forth above.

2    196. **EQUITABLE ESTOPPEL (FRAUDULENT CONCEALMENT).** Defendants

3    took active steps to surreptitiously design, manufacture, market, finance, sell tolerated, and/or lease

4    Tesla Vehicles with misleading odometer systems. Defendants' wrongful conduct was engaged in

5    with the intention, among other things, to obtain an unjust economic advantage from (and over)

6    Plaintiff and Class Members. The details of Defendants' scheme to conceal their unlawful conduct

7    are in their possession, custody and control and await discovery. At such time as Plaintiff learned

8    that the odometer system installed in his vehicles manipulated, misrepresented, and over-register

9    the actual number of miles driven, he exercised due diligence to protect their rights by retaining

10   counsel and initiating this litigation. As such, all applicable statutes of limitation (if any) are tolled

11   under the doctrine of equitable estoppel.

12   197. **EQUITABLE TOLLING.** Defendants surreptitiously designed, manufactured,

13   marketed, financed, tolerated, sold and/or leased vehicles with misleading odometer systems, and

14   continue to do so. The details of the Defendants' scheme to conceal their unlawful conduct are in

15   their possession, custody and control and await discovery. Plaintiff and Class Members, even

16   exercising reasonable diligence, could not have discovered essential information bearing on their

17   claims. However, when Plaintiff ultimately learned about Defendants' wrongful conduct, he

18   exercised due diligence by retaining counsel and initiating this litigation. As such, all applicable

19   statutes of limitation (if any) also are tolled under the doctrine of equitable tolling.

## PRAYER FOR RELIEF

21   WHEREFORE, Plaintiff, on behalf of himself and the putative Class Members, pray for a

22   judgment:

23   a.    Determining that this action is a proper class action and certifying the Class, as

24   defined herein;

25   b.    Appointing Plaintiff as Class Representative;

26   c.    Appointing the undersigned as Class Counsel;

27   d.    Finding Defendants liable to Plaintiff and Class Members for actual damages in such

28   amount(s) as the Court or Jury may determine;

1    e.    Awarding statutory damages as appropriate;

2    f.    Awarding disgorgement of gross profits and all other forms of equitable monetary

3  relief;

4    g.    Awarding punitive damages based on Defendants' malicious, oppressive,

5  fraudulent, wanton and reckless behavior;

6    h.    Awarding pre- and post-judgment interest;

7    i.    Awarding injunctive relief, as claimed herein or as the Court may deem proper;

8    j.    Awarding Plaintiff and Class Members attorney fees and all litigation costs;

9    k.    Awarding Plaintiff and Class Members such other relief as may be just and proper;

10    l.    Awarding compensatory damages against Defendant in favor of Plaintiff and the

11  Class for damages sustained as a result of Defendant's wrongdoing; and

12    m.    Awarding such other and further relief as may be just and proper.

13

14                    **DEMAND FOR JURY TRIAL**

15      Plaintiff hereby demands a trial by jury on all issues so triable.

16

17  Dated: February 10, 2025                SINGLETON SCHREIBER, LLP

18

19                                By: _____

20                                    Christopher R. Rodriguez
                                      Attorneys for Plaintiffs

21

22

23

24

25

26

27

28

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Christopher R. Rodriguez SBN 212274, Andrew D. Bluth SBN 232387 <br> SINGLETON SCHREIBER, LLP, 1414 K Street, Suite 470, Sacramento, CA 95814 <br><br> TELEPHONE NO.: (916) 248-8478     FAX NO.: (619) 255-1515 <br> EMAIL ADDRESS: crodriguez@singletonschreiber.com <br> ATTORNEY FOR *(Name):* Plaintiffs, Nyree Hinton, et al. | Electronically FILED by <br> Superior Court of California, <br> County of Los Angeles <br> 2/10/2025 4:22 PM <br> David W. Slayton, <br> Executive Officer/Clerk of Court, <br> By J. Nunez, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Nyree Hinton, et al. v. Tesla, Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] Unlimited    [ ] Limited <br> (Amount      (Amount <br> demanded    demanded is <br> exceeds $35,000)   $35,000 or less) | [ ] Counter    [ ] Joinder <br><br> Filed with first appearance by defendant <br> (Cal. Rules of Court, rule 3.402) | 25STCV03746 |
| | | JUDGE: |
| | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation <br> (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Mass tort (40) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Product liability (24) | **Real Property** | [ ] Insurance coverage claims arising from the |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | above listed provisionally complex case |
| [ ] Other PI/PD/WD (23) | condemnation (14) | types (41) |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [x] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition *(not specified above)* (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [x] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [x] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action *(specify):* 7
5. This case [x] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: February 10, 2025
Christopher R. Rodriguez
_____
(TYPE OR PRINT NAME)                             (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.    **Page 1 of 2**

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; <br> Cal. Standards of Judicial Administration, std. 3.10 <br> *www.courts.ca.gov* |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET                                CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*
**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death) Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
  Other Professional Health Care
    Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel) (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
      or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner
      Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic
    relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

| SHORT TITLE | CASE NUMBER |
|---|---|
| Nyree Hinton, et al. v. Tesla, Inc., et al. | 25STCV03746 |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court |
|---|

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1. Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7. Location where petitioner resides. |
| 2. Permissive filing in Central District. | 8. Location wherein defendant/respondent functions wholly. |
| 3. Location where cause of action arose. | 9. Location where one or more of the parties reside. |
| 4. Location where bodily injury, death or damage occurred. | 10. Location of Labor Commissioner Office. |
| 5. Location where performance required, or defendant resides. | 11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6. Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Nyree Hinton, et al. v. Tesla, Inc., et al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☑ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE | CASE NUMBER |
|---|---|
| Nyree Hinton, et al. v. Tesla, Inc., et al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract (Continued)** | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br>                         Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE | CASE NUMBER |
|---|---|
| Nyree Hinton, et al. v. Tesla, Inc., et al. | |

| | A<br>Civil Case Cover<br>Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation (Continued)** | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

| SHORT TITLE<br>Nyree Hinton, et al. v. Tesla, Inc., et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON:<br>☑ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | | | ADDRESS: |
|---|---|---|---|
| CITY: | STATE: | ZIP CODE: | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: _02/10/2025_

_CB_

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.



## Superior Court of California, County of Los Angeles
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS MUST SERVE THIS ADR INFORMATION PACKAGE ON ANY NEW PARTIES NAMED TO THE ACTION WITH THE CROSS-COMPLAINT.**

**WHAT IS ADR?**

Alternative Dispute Resolution (ADR) helps people find solutions to their legal disputes without going to trial. The Court offers a variety of ADR resources and programs for various case types.

**TYPES OF ADR**

- **Negotiation.** Parties may talk with each other about resolving their case at any time. If the parties have attorneys, they will negotiate for their clients.

- **Mediation.** Mediation may be appropriate for parties who want to work out a solution but need help from a neutral third party. A mediator can help the parties reach a mutually acceptable resolution. Mediation may be appropriate when the parties have communication problems and/or strong emotions that interfere with resolution. Mediation may not be appropriate when the parties want a public trial, lack equal bargaining power, or have a history of physical or emotional abuse.

- **Arbitration.** Less formal than a trial, parties present evidence and arguments to an arbitrator who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.

- **Settlement Conferences.** A judge or qualified settlement officer assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Mandatory settlement conferences may be ordered by a judicial officer. In some cases, voluntary settlement conferences may be requested by the parties.

**ADVANTAGES OF ADR**

- **Save time and money.** Utilizing ADR methods is often faster than going to trial and parties can save on court costs, attorney's fees, and other charges.
- **Reduce stress and protect privacy.** ADR is conducted outside of a courtroom setting and does not involve a public trial.
- **Help parties maintain control.** For many types of ADR, parties may choose their ADR process and provider.

**DISADVANTAGES OF ADR**

- **Costs.** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial.** ADR does not provide a public trial or decision by a judge or jury.

**WEBSITE RESOURCES FOR ADR**

- **Los Angeles Superior Court ADR website:** www.lacourt.org/ADR
- **California Courts ADR website:** www.courts.ca.gov/programs-adr.htm

**Los Angeles Superior Court ADR Programs for Unlimited Civil (cases valued over $35,000)**
Litigants should closely review the requirements for each program and the types of cases served.

- **Civil Mediation Vendor Resource List.** Litigants in unlimited civil cases may use the Civil Mediation Vendor Resource List to arrange voluntary mediations without Court referral or involvement. The Resource List includes organizations that have been selected through a formal process that have agreed to provide a limited number of low-cost or no-cost mediation sessions with attorney mediators or retired judges. Organizations may accept or decline cases at their discretion. Mediations are scheduled directly with these organizations and are most often conducted through videoconferencing. The organizations on the Resource List target active civil cases valued between $50,000-$250,000, though cases outside this range may be considered. *For more information and to view the list of vendors and their contact information, download the Resource List Flyer and FAQ Sheet at www.lacourt.org/ADR/programs.html.*
  **RESOURCE LIST DISCLAIMER:** The Court provides this list as a public service. The Court does not endorse, recommend, or make any warranty as to the qualifications or competency of any provider on this list. Inclusion on this list is based on the representations of the provider. The Court assumes no responsibility or liability of any kind for any act or omission of any provider on this list.

- **Mediation Volunteer Panel (MVP).** Unlimited civil cases referred by judicial officers to the Court's Mediation Volunteer Panel (MVP) are eligible for three hours of virtual mediation at no cost with a qualified mediator from the MVP. Through this program, mediators volunteer preparation time and three hours of mediation at no charge. If the parties agree to continue the mediation after three hours, the mediator may charge their market hourly rate. When a case is referred to the MVP, the Court's ADR Office will provide information and instructions to the parties. The Notice directs parties to meet and confer to select a mediator from the MVP or they may request that the ADR Office assign them a mediator. The assigned MVP mediator will coordinate the mediation with the parties. *For more information or to view MVP mediator profiles, visit the Court's ADR webpage at www.lacourt.org/ADR or email ADRCivil@lacourt.org.*

- **Mediation Center of Los Angeles (MCLA) Referral Program.** The Court may refer unlimited civil cases to mediation through a formal contract with the Mediation Center of Los Angeles (MCLA), a nonprofit organization that manages a panel of highly qualified mediators. Cases must be referred by a judicial officer or the Court's ADR Office. The Court's ADR Office will provide the parties with information for submitting the case intake form for this program. MCLA will assign a mediator based on the type of case presented and the availability of the mediator to complete the mediation in an appropriate time frame. MCLA has a designated fee schedule for this program. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

- **Resolve Law LA (RLLA) Virtual Mandatory Settlement Conferences (MSC).** Resolve Law LA provides three-hour virtual Mandatory Settlement Conferences at no cost for personal injury and non-complex employment cases. Cases must be ordered into the program by a judge pursuant to applicable Standing Orders issued by the Court and must complete the program's online registration process. The program leverages the talent of attorney mediators with at least 10 years of litigation experience who volunteer as settlement officers. Each MSC includes two settlement officers, one each from the plaintiff and defense bars. Resolve Law LA is a joint effort of the Court, Consumer Attorneys Association of Los Angeles County (CAALA), Association of Southern California Defense Counsel (ASCDC), Los Angeles Chapter of the American Board of Trial Advocates (LA-ABOTA), Beverly Hills Bar Foundation (BHBF), California Employment Lawyers Association (CELA), and Los Angeles County Bar Association (LACBA). *For more information, visit https://resolvelawla.com.*

- **Judicial Mandatory Settlement Conferences (MSCs).** Judicial MSCs are ordered by the Court for unlimited civil cases and may be held close to the trial date or on the day of trial. The parties and their attorneys meet with a judicial officer who does not make a decision, but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For more information, visit https://www.lacourt.org/division/civil/CI0047.aspx.

**Los Angeles Superior Court ADR Programs for Limited Civil (cases valued below $35,000)**
Litigants should closely review the requirements for each program and the types of cases served.

- **Online Dispute Resolution (ODR).** Online Dispute Resolution (ODR) is a free online service provided by the Court to help small claims and unlawful detainer litigants explore settlement options before the hearing date without having to come to court. ODR guides parties through a step-by-step program. After both sides register for ODR, they may request assistance from trained mediators to help them reach a customized agreement. The program creates settlement agreements in the proper form and sends them to the Court for processing. Parties in small claims and unlawful detainer cases must carefully review the notices and other information they receive about ODR requirements that may apply to their case. *For more information, visit https://my.lacourt.org/odr.*

- **Dispute Resolution Program Act (DRPA) Day-of-Hearing Mediation.** Through the Dispute Resolution Program Act (DRPA), the Court works with county-funded agencies, including the Los Angeles County Department of Consumer & Business Affairs (DCBA) and the Center for Conflict Resolution (CCR), to provide voluntary day-of-hearing mediation services for small claims, unlawful detainer, limited civil, and civil harassment matters. DCBA and CCR staff and trained volunteers serve as mediators, primarily for self-represented litigants. There is no charge to litigants. *For more information, visit https://dcba.lacounty.gov/countywidedrp.*

- **Temporary Judge Unlawful Detainer Mandatory Settlement Conference Pilot Program.** Temporary judges who have been trained as settlement officers are deployed by the Court to designated unlawful detainer court locations one day each week to facilitate settlement of unlawful detainer cases on the day of trial. For this program, cases may be ordered to participate in a Mandatory Settlement Conference (MSC) by judicial officers at Stanley Mosk, Long Beach, Compton, or Santa Monica. Settlement rooms and forms are available for use on the designated day at each courthouse location. There is no charge to litigants for the MSC. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

 **Superior Court of California, County of Los Angeles**

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

### What is ADR?
ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR
1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

## How to Arrange Mediation in Los Angeles County

Mediation for **civil cases** is voluntary and parties may select any mediator they wish. Options include:

a.  **The Civil Mediation Vendor Resource List**
    If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

    - **ADR Services, Inc.** Case Manager Elizabeth Sanchez, elizabeth@adrservices.com (949) 863-9800
    - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

**These organizations cannot accept every case and they may decline cases at their discretion**. They may offer online mediation by video conference for cases they accept. Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

**NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate or small claims cases.**

b.  **Los Angeles County Dispute Resolution Programs**
    https://hrc.lacounty.gov/wp-content/uploads/2020/05/DRP-Fact-Sheet-23October19-Current-as-of-October-2019-1.pdf

    Day of trial mediation programs have been paused until further notice.

    **Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.

c.  Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration**: Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC)**: MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/C10047.aspx

Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/C10109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California**
**County of Los Angeles**



**Los Angeles County**
**Bar Association**
**Litigation Section**

**Los Angeles County**
**Bar Association Labor and**
**Employment Law Section**



**Consumer Attorneys**
**Association of Los Angeles**



**Southern California**
**Defense Counsel**



**Association of**
**Business Trial Lawyers**



**California Employment**
**Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association**
**Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                          FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lacourt.org** under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the  complaint, and _____ for the cross-
   (INSERT DATE)                    (INSERT DATE)
   complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case.  The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____        ➢  _____
            (TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)

Date:

_____        ➢  _____
            (TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____        ➢  _____
            (TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____        ➢  _____
            (TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____        ➢  _____
            (TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____        ➢  _____
            (TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____        ➢  _____
            (TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

 

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:      FAX NO. (Optional): <br> E-MAIL ADDRESS (Optional): <br> ATTORNEY FOR (Name): | | |

### SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

  

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                         FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐  Request for Informal Discovery Conference
   ☐  Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

---

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

  

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:  FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES |
|---|
| COURTHOUSE ADDRESS: |
| PLAINTIFF: |
| DEFENDANT: |

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER



1
2
3
4
5
6

**FILED**

LOS ANGELES SUPERIOR COURT

MAY 1 1 2011

JOHN A. CLARKE, CLERK

*N. Navarro*

BY NANCY NAVARRO, DEPUTY

7       **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8            **FOR THE COUNTY OF LOS ANGELES**

9

10    General Order Re                    )   ORDER PURSUANT TO CCP 1054(a),
      Use of Voluntary Efficient Litigation )   EXTENDING TIME TO RESPOND BY
11    Stipulations                         )   30 DAYS WHEN PARTIES AGREE
                                           )   TO EARLY ORGANIZATIONAL
12                                         )   MEETING STIPULATION
                                           )
13    _____ )

14
15          Whereas the Los Angeles Superior Court and the Executive Committee of the

16    Litigation Section of the Los Angeles County Bar Association have cooperated in

17    drafting "Voluntary Efficient Litigation Stipulations" and in proposing the stipulations for

18    use in general jurisdiction civil litigation in Los Angeles County;

19          Whereas the Los Angeles County Bar Association Litigation Section; the Los

20    Angeles County Bar Association Labor and Employment Law Section; the Consumer

21    Attorneys Association of Los Angeles; the Association of Southern California Defense

22    Counsel; the Association of Business Trial Lawyers of Los Angeles; and the California

23    Employment Lawyers Association all "endorse the goal of promoting efficiency in

24    litigation, and ask that counsel consider using these stipulations as a voluntary way to

25    promote communications and procedures among counsel and with the court to fairly

26    resolve issues in their cases;"

27
28

                                   -1-

                    ORDER PURSUANT TO CCP 1054(a)

Whereas the Early Organizational Meeting Stipulation is intended to encourage cooperation among the parties at an early stage in litigation in order to achieve litigation efficiencies;

Whereas it is intended that use of the Early Organizational Meeting Stipulation will promote economic case resolution and judicial efficiency;

Whereas, in order to promote a meaningful discussion of pleading issues at the Early Organizational Meeting and potentially to reduce the need for motions to challenge the pleadings, it is necessary to allow additional time to conduct the Early Organizational Meeting before the time to respond to a complaint or cross complaint has expired;

Whereas Code of Civil Procedure section 1054(a) allows a judge of the court in which an action is pending to extend for not more than 30 days the time to respond to a pleading "upon good cause shown";

Now, therefore, this Court hereby finds that there is good cause to extend for 30 days the time to respond to a complaint or to a cross complaint in any action in which the parties have entered into the Early Organizational Meeting Stipulation. This finding of good cause is based on the anticipated judicial efficiency and benefits of economic case resolution that the Early Organizational Meeting Stipulation is intended to promote.

IT IS HEREBY ORDERED that, in any case in which the parties have entered into an Early Organizational Meeting Stipulation, the time for a defending party to respond to a complaint or cross complaint shall be extended by the 30 days permitted

-2-

ORDER PURSUANT TO CCP 1054(a)

by Code of Civil Procedure section 1054(a) without further need of a specific court

order.

DATED: May 11, 2011

_Carolyn B. Kuhl_

Carolyn B. Kuhl, Supervising Judge of the
Civil Departments, Los Angeles Superior Court

-3-

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

**MAY 03 2019**

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE LOS ANGELES SUPERIOR COURT )<br>— MANDATORY ELECTRONIC FILING )<br>FOR CIVIL )<br> )<br> )<br> )<br>_____ ) | FIRST AMENDED GENERAL ORDER |

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

   a) **"Bookmark"**  A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

   b) **"Efiling Portal"**  The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

   c) **"Electronic Envelope"**  A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

   d) **"Electronic Filing"**  Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

e) **"Electronic Filing Service Provider"**  An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**  For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**  An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**  A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

a) Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) EXEMPT LITIGANTS

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) EXEMPT FILINGS

a) The following documents shall not be filed electronically:

   i)   Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

   ii)  Bonds/Undertaking documents;

   iii) Trial and Evidentiary Hearing Exhibits

   iv)  Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

   v)   Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

2019-GEN-014-00

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

a) Electronic documents must be electronically filed in PDF, text searchable format **when** technologically feasible without impairment of the document's image.

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

  i) Depositions;

  ii) Declarations;

  iii) Exhibits (including exhibits to declarations);

  iv) Transcripts (including excerpts within transcripts);

  v) Points and Authorities;

  vi) Citations; and

  vii) Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

Each document accompanying a single pleading must be electronically filed as a **separate** digital PDF document.

g) Multiple Documents

Multiple documents relating to one case can be uploaded in one envelope transaction.

h) Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

  i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted.    (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

  ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of: (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing. A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) PRINTED COURTESY COPIES

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled. If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

    i)    Any printed document required pursuant to a Standing or General Order;

    ii)   Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

    iii)  Pleadings and motions that include points and authorities;

    iv)   Demurrers;

    v)    Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

    vi)   Motions for Summary Judgment/Adjudication; and

    vii)  Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents. Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver. (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

2019-GEN-014-00

1  11) SIGNATURES ON ELECTRONIC FILING

2      For purposes of this General Order, all electronic filings must be in compliance with California

3      Rules of Court, rule 2.257. This General Order applies to documents filed within the Civil

4      Division of the Los Angeles County Superior Court.

5

6          This First Amended General Order supersedes any previous order related to electronic filing,

7  and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

8  Supervising Judge and/or Presiding Judge.

9

10  DATED: May 3, 2019



11                                              KEVIN C. BRAZILE
                                                Presiding Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES**<br><br>COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012<br><br>**NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Los Angeles<br>02/10/2025<br>David W. Slayton, Executive Officer/Clerk of Court<br>By _____ J. Nunez _____ Deputy |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>25STCV03746 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✓ | Stuart M. Rice | 1 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record    David W. Slayton, Executive Officer / Clerk of Court

on 02/11/2025 _____    By J. Nunez _____, Deputy Clerk
    (Date)

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.