**SINGLETON SCHREIBER, LLP**
CHRISTOPHER R. RODRIGUEZ, SB# 212274
  E-Mail: crodriguez@singletonschreiber.com
ANDREW D. BLUTH, SB# 232387
  E-Mail: abluth@singletonschreiber.com
JOHN R. TERNIEDEN, SB# 330343
  E-Mail: jternieden@singletonschreiber.com
1414 K Street, Suite 470
Sacramento, California 95814
Telephone: (916) 248-8478
Facsimile: (619) 255-1515

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NYREE HINTON, an individual; and ANTHONY LEON, an individual; on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TESLA, INC., a Texas corporation,<br><br>Defendant. | No. 2:25-cv-2877-MEMF (JC)<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## **COMPLAINT**

Plaintiffs NYREE HINTON ("Hinton") and ANTHONY LEON ("Leon") (collectively the "Plaintiffs"), by and through their undersigned counsel, on their own behalf and on behalf of all other persons similarly situated, sue TESLA, INC. ("Tesla."); and for this First Amended Complaint, allege upon information and belief, and based on investigation to date, as follows:

## **INTRODUCTION**

1.    This is a class action brought on behalf of all California consumers who purchased a new or used Tesla model 3, Y, or other Tesla vehicle that uses the same odometer system in the Tesla model 3 or Y ("Tesla Vehicles") between December 2022 and the date of class certification.

2.    Notwithstanding Tesla's ability to measure the distances its Tesla Vehicles drive to the millimeter, Tesla uses an odometer system that overstates the distances traveled by Tesla Vehicles.

3.    Rather than purely relying on mechanical or electronic systems to measure distance, Plaintiffs allege on information and belief that Tesla employs an odometer system that utilizes some combination of predictive algorithms, energy consumption metrics, and driver behavior multipliers that manipulate and misrepresent the actual mileage traveled by Tesla Vehicles.

4.    The inaccurate odometer system benefits Tesla. By overstating the miles actually driven, Tesla can shirk its responsibilities under warranties with mileage limits, and charge customers for costly repairs that should, in reality, still be under warranty.  This is a significant benefit to Tesla, as parts and repairs of electric vehicles are costly.  For example, replacing a Tesla battery outside of the warranty window can cost between $15,000 and $22,000.

5.    Moreover, consumers who believe they are approaching the end of their warranty mileage limits are more likely to purchase an extended warranty package, which can cost between $2,000 and $6,500 depending on model and the length of the extended term.

6.    Additionally, the inflated odometer readings help perpetuate Tesla's misrepresentations regarding the range Tesla Vehicles can travel between charges.  When the miles traveled are overstated, consumers are less likely to notice that the range estimates in between charges are much lower than advertised.

7.    While Tesla reaps the benefits of the faulty odometer system, consumers are left holding the bag. At the time of purchase, consumers reasonably believe that Tesla's odometer system accurately tracks miles driven.  Its undisclosed failure to do so impacts everything from the consumer's decision to purchase the car, to the value of the car and any accompanying warranties, to the total cost of maintaining the car. As a result of Tesla's misrepresentations, consumers pay for warranties that are not as advertised and are required to pay out of pocket for costly repairs that should still be within warranty coverage.  If consumers knew the truth about Tesla's odometer system they might have chosen not to purchase a Tesla, or to pay less for a Tesla Vehicle or any accompanying warranty.

8.      These systemic inaccuracies and unfair business practices undermine the value of Tesla Vehicles and their warranties and erode consumer trust while financially benefitting Tesla at the expense of its customers.

9.      In short, Tesla has thus misled consumers about the benefits of Tesla's odometer system and vehicle warranties, inducing them to purchase Tesla Vehicles and spend money on Tesla's extended warranty packages. Tesla harmed consumers through these unfair business practices, misrepresentations, and false advertising.

## JURISDICTION AND VENUE

10.      This lawsuit was initially filed in the California Superior Court (Los Angeles County) and was removed by Tesla on April 2, 2025.  This Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332.  Plaintiffs and Tesla are citizens of different states.  The class size is greater than 100.  According to Tesla's removal papers, more than 600,000 new Tesla Vehicles were registered in California in the last three (3) years. The aggregate amount in controversy exceeds $5,000,000.

11.      Venue is proper in this Court because Tesla actively transacts business in California and in this District. Plaintiffs and the Class purchased and continue to purchase Tesla's products and services in this District. Tesla transacts business in this District based on its vehicle and warranty sales with residents of the state and District; Tesla has committed unlawful acts in the District by and through its products, services, and associated business transactions within the District; and a substantial part of the events giving rise to the claims alleged herein occurred in this District, where Plaintiffs reside.

## THE PARTIES

12.      Plaintiff Hinton is a citizen of the State of California and a resident of Los Angeles. Plaintiff Hinton purchased and now owns a Tesla Vehicle designed, manufactured, and marketed by Tesla containing an odometer system that over-represented the actual number of miles traveled. Plaintiff Hinton has suffered damages as a result of Tesla's conduct.

13.      Plaintiff Leon is a citizen of the State of California and a resident of Thousand Oaks. Plaintiff Leon purchased and now owns a Tesla Vehicle designed, manufactured, and marketed by

the Tesla containing an odometer system that over-represented the actual number of miles traveled. Plaintiff Leon has suffered damages as a result of Tesla's conduct.

14.    Upon information and belief, Plaintiffs allege that Tesla—formerly known as Tesla Motors, Inc.—is a Texas corporation that had its principal place of business in Palo Alto, California, from approximately 2003 until December 1, 2021, at which point it moved its principal place of business to Austin, Texas.

15.    Upon information and belief, Plaintiffs allege that Tesla designs, develops, manufactures, tests, markets, distributes, sells, and leases electric vehicles under the brand name "Tesla" as well as offers services related to those vehicles, including designing, developing and periodically sending over-the-air updates for the advanced driver-assistance system software in Tesla Vehicles.

16.    Upon information and belief, Tesla is comprised of affiliated corporate entities, each of which conducts business in California and across the United States.  These entities, individually or collectively, through an integrated corporate structure (the details of which Plaintiffs are presently unaware), market, sell and provide automobiles and associated products and services.

17.    Upon information and belief, Plaintiffs allege there might be additional defendants, the true names and/or capacities, whether individual, corporate, partnership, associate, governmental, or otherwise, of such are unknown to Plaintiffs at this time.  Plaintiffs will further amend this Complaint to allege the true names and capacities of said defendants when/if they are ascertained.

## FACTS COMMON TO ALL CLASS MEMBERS

**A.    Tesla's Automotive Products and Services**

18.    Electric vehicle sales are growing faster than ever as more car manufacturers enter the market. Once rare, electric vehicles are now increasingly as available as new gas-engine vehicles.

19.    Tesla manufactures, markets, sells, leases, and/or distributes electric vehicles to consumers and business customers throughout the United States under the brand name "Tesla".

20.    Upon information and belief, Plaintiffs allege that Tesla is the leading producer of

plug-in electric vehicles globally—with some of its models becoming the world's best-selling all-electric vehicles—and sells its vehicles and associated services to consumers across the United States.

21.    Tesla was founded in 2003 by engineers Martin Eberhard and Marc Tarpenning in San Carlos, California as an American automotive and energy company.  It was originally founded as Tesla Motors, Inc., which was truncated to Tesla Inc. in 2017.

22.    The company was named after the 19th-century inventor Nikola Tesla, who discovered the properties of rotating electromagnetic fields.  Today, Tesla engages in the design, development, manufacture, sale, financing and leasing of fully electric vehicles and energy generation and storage systems.  This includes sales of used vehicles, non-warranty after-sales vehicle services, body shop and parts, paid supercharging, vehicle insurance and retail merchandise.

23.    Tesla's consumer vehicles include the Models 3, Y, S, X, and Cybertruck.

24.    Currently, Tesla is among the most influential companies in the electric vehicle space, dominating the electrical vehicle market in the U.S.

25.    Tesla has a vertically integrated business model that largely eliminates the use of third-party support.

26.    Tesla designs, manufactures, and tests its electric vehicles, and its components, and all versions of its advanced driver-assistance system software such as Autopilot, Enhanced Autopilot, and Full Self-Driving Capability Subscriptions.

27.    Tesla markets its vehicles on its website; in its brick-and-mortar galleries and showrooms; through tweets; and public launch events, featuring unique automotive tests and online audience interactions and online buzz, largely created by statements of its representatives including its CEO Elon Musk, whose significant social media presence helps Tesla with its marketing by increasing the company's visibility in the market.

28.    Unlike most other automakers that sell vehicles through franchised dealerships, Tesla sells and leases its electric vehicles directly to consumers through its website and retail stores, which Tesla owns and operates.

29.    Tesla sells used and new vehicles as well as offers financing and leasing programs for its vehicles and purportedly covers these vehicles with various warranties that cover repairs and replacements necessary to correct defects in the materials or workmanship of parts manufactured or supplied by Tesla.

**B.    Tesla's Repair Infrastructure**

30.    Electric vehicles are frequently touted as needing less maintenance than internal combustion vehicles.[1] That is purported to be the case because the electric motors that propel electric vehicles have fewer components, and require far less fluids, that require less maintenance than gas vehicles.  Additionally, electric vehicles use regenerative braking, which purports to reduce the wear and tear on brake pads.

31.    Tesla has stated on its website that it "designs every Tesla vehicle with the goal of eliminating the need for service."[2]

32.    However, Tesla has yet to eliminate the need for its vehicles to be serviced.  In fact, according to consumer research firm J.D. Power, Tesla Vehicle drivers visit service centers at nearly the same rate as the owners of premium gas vehicles, such as Lexus and Audi.[3]

33.    Furthermore, according to Tesla's own filings with the Securities Exchange Commission, suspension failures on several models of Tesla Vehicles pose an ongoing risk to Tesla's operations.[4]

34.    A reflection of Tesla's vertically integrated business model, which aims to eliminate the need for third-party intermediaries, is Tesla's unique approach to vehicle service.

---

[1] Maintenance and safety of electric vehicles, ALTERNATIVE FUELS DATA CENTER: MAINTENANCE AND SAFETY OF ELECTRIC VEHICLES (2023), https://afdc.energy.gov/vehicles/electric-maintenance#:~:text=All%2Delectric%20vehicles%20typically%20require,oil%2C%20that%20require%20regular%20maintenance (last visited May 31, 2024).

[2] Service, TESLA (2024), https://www.tesla.com/service (last visited May 31, 2024).

[3] Rebecca Heilweil, *Missing parts, long waits, and a dead mouse: The perils of getting a Tesla fixed*, VOX, August 24, 2022, https://www.vox.com/recode/23318725/tesla-repair-mechanic-delay-electric-vehicles-ev (last visited May 2024).

[4] Tesla, Inc., Annual Report (Form 10-k) (Feb. 4, 2022) (Page 21); Tesla, Inc., Annual Report (Form 10-k) (Feb. 8, 2021) (Page 21).

35.    While automakers traditionally have a network of thousands of dealerships and independent mechanics to service their vehicles across wide coverage areas, Tesla sells directly to consumers and has built its own service centers, where most repairs on Tesla Vehicles tend to be completed by Tesla technicians who are employed or authorized by Tesla. This has resulted in Tesla having a disproportionately smaller network of repair centers than traditional automakers.[5]

36.    In addition to the limited availability of Tesla service technicians, independent mechanics that service traditional gas vehicles have less expertise and limited or no access to materials or software required to service electrical vehicles like Tesla Vehicles.[6]

37.    Despite its limited number of repair centers, Tesla induces customers to use its service centers, warning Tesla Vehicle owners that damage or failures caused by non-Tesla certified technicians will not be covered under Tesla's warranty policy.

38.    Tesla's largely in-house repair infrastructure has led to long wait times, for even simple repairs, and high costs for customers.[7] In some instances, the vehicle can still be driven while waiting for a repair appointment, with the consumer accruing additional inflated mileage that risks the vehicle being out of warranty limits by the time of the appointment.

39.    Despite issues with its repair service delivery, however, Tesla has opposed "right-to-repair" legislation that would make it easier for people to repair its vehicles by making sure that independent shops have access to the same diagnostic tools, parts, and software as manufacturer-run repair shops.[8]

---

[5] George Paul, BUSINESS INSIDER, November 4, 2019, https://www.businessinsider.com/tesla-owners-dissatisfied-with-wait-for-services-2019-11 (last visited Jun 2, 2024).

[6] Battery Industry Workforce Needs in North America, CENTER FOR AUTOMOTIVE RESEARCH (2024), https://www.cargroup.org/bietna/?utm_source=Media%2BList&utm_campaign=eecfbe7d81-EMAIL_CAMPAIGN_2023_02_08_09_40_COPY_01&utm_medium=email&utm_term=0_-59328f5e21-%5BLIST_EMAIL_ID%5D (last visited Jun 2, 2024).

[7] Heilweil, *supra* note 3.

[8] Fred Lambert, *Tesla fights new 'Right to Repair' initiative over cybersecurity concerns*, ELECTREK, October 14, 2020, https://electrek.co/2020/10/14/tesla-fights-right-to-repair-initiative-over-cybersecurity-concerns/ (last visited May 31, 2024).

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

### C.    Tesla's Warranties

40.    While maintenance costs for electric vehicles, like Tesla Vehicles, are initially low, repairs, when needed, are expensive. For example, (1) replacing a Tesla battery outside of the warranty window can cost between $15,000 to $22,000; (2) a drive unit replacement can range between $1,200 and $3,500; (3) air suspension replacement can cost between $1,500 and $5,000; and (4) touchscreen and media control unit replacement can cost between $1,300 and $2,000.

41.    As a result, Tesla provides certain warranties for its new and used vehicles. Repairs that occur outside of the prescribed warranty period are costly for consumers.

42.    Upon information and belief, Tesla provides warranties for certain factory defects and separate warranty coverage terms for certain parts, conditions, and repairs. Each warranty includes prescribed warranty periods based on usage time and/or an upper limit for mileage.

43.    Previously, Tesla provided unlimited-mileage warranties for the battery and drive unit. However now, Tesla's warranties now have mileage limits to determine coverage.[9]

44.    All new Tesla Vehicles are covered by a New Vehicle Limited Warranty ("New Vehicle Warranty"), which is a package of several warranty areas, such as the Basic Vehicle Limited Warranty ("Basic Warranty"), the Supplemental Restraint System Limited Warranty ("Supplemental Warranty"), the Battery and Drive Unit Limited Warranty ("Battery and Drive Unit Warranty"); the Body and Rust Limited Warranty ("Body and Rust"), and the Zero-Emissions Vehicle Limited Warranties ("Zero-Emissions"). These warranty areas are summarized in the table below.

---

[9] Elon Musk, INFINITE MILE WARRANTY TESLA (2014), https://www.tesla.com/blog/infinite-mile-warranty (last visited May 31, 2024).

| Warranty Option | Description | Term of Warranty |
|---|---|---|
| *New Vehicle Limited Warranty* | Includes the Basic Vehicle Limited Warranty, the Supplemental Restraint System Limited Warranty, the Battery and Drive Unit Limited Warranty, the Body and Rust Limited Warranty and the Zero-Emissions Vehicle Limited Warranties. | - |
| *Basic Vehicle Limited Warranty* | Covers repairs for defects in materials or workmanship in most parts of the vehicle: electrical systems, HVAC systems, interior components, suspension, body panels and paint & trim. Does NOT cover items such as brake pads, tires and windshield wipers; routine maintenance. | 4 Years or 50,000 Miles (WHICHEVER COMES FIRST) |
| *Supplemental Warranty* | This warranty specifically covers defects in materials or workmanship in the airbags, seat belts, and related components that make up the Supplemental Restraint System. | 5 Years or 60,000 Miles (WHICHEVER COMES FIRST) |
| *Battery and Drive Warranty* | Coverage Depends on Model: | TBD on Car Type |
| | **Model S, Model X, Cybertruck:** | "8 years or 150,000 miles, whichever comes first, with minimum 70% retention of Battery capacity over the warranty period" |

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

| | | |
|---|---|---|
| | ***Model 3 RWD, Model Y RWD:*** | "8 years or 100,000 miles, whichever comes first, with minimum 70% retention of Battery capacity over the warranty period." |
| | ***Model 3 Long Range, Model 3 Long Range RWD, Model 3 Performance, Model Y Launch Series Long Range AWD, Model Y AWD, Model Y Long Range AWD, Model Y Long Range RWD, Model Y Performance:*** | "8 years or 120,000 miles, whichever comes first, with minimum 70% retention of Battery capacity over the warranty period." |
| *Parts, Body and Paint Limited Warranty* | Sheet metal, drive unit, vehicle high voltage battery, wall connectors, touchscreen and media control unit, clear protection film, vinyl wrap. | The Tesla Parts, Body & Paint Repair Limited Warranty begins on the purchase date of the part(s), and coverage extends for a period of 12 months or 12,500 miles, whichever comes first |
| *Body Rust Limited Warranty* | The Body Rust Limited Warranty covers rust perforation (hole through the vehicle's body panel from the inside outward) resulting from a defect in material or workmanship. | 12 Years & Unlimited Miles |
| *Zero-Emissions Vehicle (ZEV) Limited Warranties SELECT STATES: CARB States* | Certain components essential to the electric drive system and emissions performance (e.g., battery, drive unit, onboard charger, inverter, etc.). Often overlaps with Tesla's own Battery & Drive Unit Warranty. | 15 years or 150,000 miles, whichever comes first |
| *High-Priced Propulsion-Related Parts ZEV Limited Warranty* | The High-Priced Propulsion-Related Parts ZEV Limited Warranty covers the repair or replacement necessary to correct defects in the materials or workmanship of High-Priced Propulsion-Related Parts that reach a certain pricing threshold. | 7 Years or 70,000 Miles |
| *Used Vehicle Limited Warranty* | Same warranty as the 'Basic Vehicle Warranty' previously stated. | Remainder of 4 years or 50,000 miles left on original purchase warranty; after expiration, an additional 1 year or 10,000 miles is added onto coverage. |

45.    Eligible customers whose Basic Warranty has not yet expired may extend some of the warranty's protections by purchasing an optional Extended Service Agreement ("ESA").  The price of the ESA varies by model, but, upon information and belief, purchase of the ESA may cost as much as $3,500 for two (2) years or 25,000 miles of additional Basic Warranty coverage.

46.    All used Tesla Vehicles purchased directly from Tesla are covered by shorter of the remainder of the four (4) years or 50,000 miles left on the Basic Warranty.

47.    After the Basic Warranty expires, used Tesla Vehicles purchased from Tesla are covered by the Used Vehicle Limited Warranty, which provides an additional one year (or 10,000 miles of coverage).

48.    The balance of the several warranties, like the Basic Warranty and original Battery and Drive Warranty, also transfer during the purchase of a used Tesla Vehicle – including private, non-Tesla sales.

49.    Tesla also covers failures that occur under normal use of Tesla-branded replacement or repair parts purchased directly from Tesla under the Parts, Body and Paint Limited Warranty for the shorter of one (1) year or 12,500 miles.

50.    However, some categories of parts have unique warranty mileage periods under the Parts, Body and Paint Limited Warranty: drive unit and high voltage battery (four (4) years or 50,000 miles) and touchscreen and media control unit (two (2) years or 25,000 miles).

51.    Tesla warranties may be voided under certain circumstances including but not limited to failing to comply with any recall advisories, install software updates, or make repairs as well as exceeding load limits.  Additionally, Tesla Vehicles with damaged vehicle identification numbers ("VIN"), possibly indicating theft and those that have been designated as rebuilt or salvage or have been written off as a total loss by an insurance company may be denied warranty coverage.

52.    Upon information and belief, it is the mileage reflected on Tesla Vehicles' odometer system that determines whether a Tesla Vehicle is within the applicable warranty mileage limits, including those described above.

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

1        **D.      Tesla's Odometer System**

2        53.      Plaintiffs allege that Tesla has the technical ability to measure, and does measure,

3   distances traveled by its Tesla Vehicles with incredible precision.

4        54.      Notwithstanding this sophisticated and technical ability to measure distances

5   traveled precisely, Plaintiffs allege that Tesla misrepresents the mileage driven by Tesla Vehicles

6   by way of an odometer system ("Tesla's Odometer System") that unlike traditional vehicles,

7   utilizes a series of other factors, inputs, and metrics to determine mileage traveled.

8        55.      Tesla's Odometer System integrates data from GPS sensors, energy consumption

9   readings, and historical driving patterns to display distance traveled.

10        56.      Thus, upon information and belief, Tesla's Odometer System readings are not direct

11   physical measurements of distance traveled, but rather, estimates derived from these various

12   aforementioned sensor inputs and calculations that do not provide an accurate and immutable

13   measurement of miles traveled.

14        57.      These inputs and calculations, made without disclosure to consumers, deviate

15   significantly from the commonly accepted function of an odometer as an accurate and immutable

16   record of miles traveled.

17        58.      Upon information and belief, Plaintiffs allege that software updates that Tesla

18   pushes out to its Tesla Vehicles may relate to and/or impact the odometer system, including how

19   mileage is calculated.  There have been several software updates during the Class Period.

20        **E.      Discrepancies Between Real-World Data and Tesla's Odometer System**

21        59.      Plaintiffs allege that the Tesla Odometer System inflates the mileage traveled by

22   Tesla Vehicles.

23        60.      Upon information and belief, an analysis of Tesla Vehicle data, including charging

24   logs, energy efficiency metrics, and odometer readings, demonstrates significant discrepancies

25   between reported mileage and actual distance traveled.

26        61.      Upon information and belief Tesla's reliance on predictive algorithms, energy

27   consumption metrics, and software recalibrations contributes to these discrepancies and

28   undermines the accuracy of the odometer readings in Tesla Vehicles.

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

62.     In truth, and without the knowledge of Plaintiffs or consumers, and/or disclosure by Tesla, Tesla failed to inform consumers that Tesla Vehicles' odometers do not function like commonly accepted odometers, but instead rely on a variety of factors, predictive algorithms, and metrics that result in routine overestimation of the mileage traveled by the vehicle.  In some cases, like that of Plaintiff Hinton, the Tesla Odometer System can overstate the actual miles traveled by well over fifteen (15) percent, which far exceeds the four (4) percent industry standard tolerance for measures of inaccuracy in odometers under normal conditions.

63.     The Tesla Odometer System overestimates mileage through computer software and/or an electronic or mechanical device or devices, that alter the odometer system's performance by an amount beyond industry standard tolerances for measures of inaccuracy in odometers.

64.     Upon information and belief, Plaintiffs allege that Tesla's odometer discrepancies are not isolated incidents but rather systemic issues affecting a broad class of consumers.  Due to Tesla's over-registration of miles traveled in Tesla Vehicles, Plaintiffs allege that owners of Tesla Vehicles are deprived of the benefits of their bargains in purchasing and  financing Tesla Vehicles, because: (i) they experience premature expiration of warranties tied to mileage thresholds and must then pay out-of-pocket for costly repairs; (ii) prematurely purchase extended warranties; (iii) experience diminished resale value of Tesla Vehicles; and (iv) believe, based on the odometer system reading, that they are traveling further than they actually are in between charges.

65.     As a result of its faulty odometer system, Tesla reaped, and will continue to reap, financial benefits in the form of (i) warranty repair savings; (ii) increased revenue generated by consumers who have to pay for repairs that would otherwise be under warranty; and/or (iii) increased sales of extended warranties, all to the financial detriment of Tesla Vehicle owners.  The resale value of the vehicles owned by consumers also has been (and will continue to be) diminished.

## **PLAINTIFFS' INDIVIDUAL ALLEGATIONS**

**Plaintiff Leon**

66.     Plaintiff Leon is an information technology professional that specializes in program engineering.

67.     Plaintiff Leon is a Microsoft Services Certified Engineer in network engineering, with additional certifications in home automation.

68.     Plaintiff Leon works primarily from home but will occasionally perform work in the field.

69.     In or about March 2024, Plaintiff Leon purchased a used, 2019 Model 3 Tesla Vehicle from a non-Tesla dealership in Fresno, California.

70.     When Plaintiff Leon purchased his Tesla Vehicle in March 2024, it had about 65,000 miles.

71.     Plaintiff Leon estimates that he drives just over 2,000 miles a month – or about 25,000 miles a year.

72.     Plaintiff Leon uses his Tesla Vehicles' autonomous driving features for most of the driving he does.

73.     According to the odometer in Plaintiff Leon's Tesla Vehicle, he has driven nearly 40,000 miles since he purchased his Tesla Vehicle.

74.     Plaintiff Leon's suspicions that his Tesla Vehicle was incorrectly recording mileage arose when he noticed (1) the high-level of mileage accumulation did not match the driving he does as part of his routine; and (2) when he noticed the tread on his tires did not align with the number of miles his Tesla Vehicle said it had traveled.

**Plaintiff Hinton**

75.     Plaintiff Hinton is a seasoned financial sector professional who specializes in equity research, data analytics, and product management.  He has subject matter expertise in fundamental equity analysis, shareholder activism, mergers and acquisitions, and exchange-traded funds.

76.     Plaintiff Hinton has a Bachelor of Science from The Pennsylvania State University over the course of his career, has worked at major organizations such as Bloomberg L.P., Third Bridge Group, and Reorg Research.

77.     On or about December 9, 2022, Plaintiff Hinton purchased a used, 2020 Model Y Tesla Vehicle from IQautos in Marietta, Georgia and shipped it to Pennsylvania where Plaintiff

1  Hinton was staying with his mother. At the time of purchase, Plaintiff Hinton's Tesla Vehicle was

2  represented to have approximately 36,772 miles on it.

3      78.    He took possession of the Tesla Vehicle on December 14, 2022.

4      79.    As part of this transaction, Plaintiff Hinton received from Tesla the Basic Warranty,

5  which Tesla represented would protect his Tesla Vehicle until September 5, 2024, or 50,000 miles,

6  whichever came first.

7      80.    As part of this transaction, Plaintiff Hinton also received from Tesla the Battery and

8  Drive Unit Warranty, which was to expire September 5, 2028, or 120,000 miles, whichever came

9  first; and the Supplemental Warranty, which covered Plaintiff Hinton's vehicle for five (5) years

10 or 60,000 miles, whichever came first.  Plaintiff Hinton's vehicle was also covered by a Body Rust

11 Limited Warranty (twelve (12) years); Used Vehicle Limited Warranty (remainder of four (4) years

12 or 50,000 miles on original purchase warranty plus one (1) year or 10,000 after expiration); and a

13 Parts, Body and Paint Repair Limited Warranty (twelve (12) months or 12,500 miles).

14     81.    In connection with the purchase of the vehicle, Tesla expressly or impliedly

15 represented to Plaintiff Hinton that his Tesla Vehicle's odometer would accurately record the

16 number of miles traveled by the vehicle.

17     82.    Plaintiff Hinton understood that the mileage limits tied to the warranty periods

18 described above pertained to the actual distance he would travel in his Tesla Vehicle.

19     83.    Not long after purchasing his Tesla Vehicle, on or about February 6, 2023, Plaintiff

20 Hinton took his Tesla Vehicle to an authorized Tesla repair center in Lawrence Township, New

21 Jersey for work on the car's suspension where several suspension parts were replaced.  At this time,

22 the recorded mileage was 39,882 miles.

23     84.    After this service in early February, Plaintiff Hinton returned to California and had

24 the car shipped to California.

25     85.    Following Plaintiff Hinton's return to California, he had to bring his Tesla Vehicle

26 in for service an additional four times between March 2023 and June 2023.

27

28

86.     Plaintiff Hinton observed an abnormal spike in average daily miles driven leading up to the Basic Warranty's usage time limit on June 28, 2023.  Notably, Plaintiff Hinton observed that mileage surged to about 72.35 miles per day between March 26, 2023, and June 28, 2023.

87.     Plaintiff Hinton had a consistent driving routine from March 2023 to June 2023 that involved a short, six-mile commute to work and occasional visits to the gym and local restaurants – which should have averaged, by generous estimates, 20 miles per day – much lower than the mileage Plaintiff Hinton observed in his Tesla Vehicle.

88.     The abnormality of the mileage accumulation during this time period was also apparent given that Plaintiff Hinton's car was being repaired by Tesla for approximately twelve (12) days within this time period.  Plaintiff Hinton would also have to wait several days before each service appointment before a visit could be scheduled, further limiting the number of days he could drive his Tesla Vehicle.

89.     As a result of this increased mileage accumulation, Plaintiff Hinton's Basic Warranty expired well ahead of schedule – when the odometer read that the vehicle had reached 50,000 miles – in or around July 7, 2023.

90.     As a result, on January 24, 2024 when Plaintiff Hinton took his Tesla Vehicle for a sixth service visit to an authorized Tesla repair center to again address the ongoing suspension issues that plagued his Telsa Vehicle (and which were repaired under warranty on February 6, 2023) the representatives at the authorized Tesla repair recenter refused to perform the necessary repairs under the Basic Limited Warranty, telling Plaintiff Hinton that his Tesla Vehicle was no longer under warranty for the necessary repairs because the car's mileage was beyond the mileage limits for the Basic Limited Warranty.

91.     Interestingly, the invoice for this visit did not report the mileage.

92.     At no point did Tesla or Tesla's representatives inform Plaintiff Hinton that the rapid increase in mileage could be caused by the Tesla Odometer System and its predictive algorithms, energy consumption metrics, and driver behavior multipliers.

93.     The invoices Plaintiff Hinton received from repair centers simply identified mileage under a section titled "Odometer".

94.    Plaintiff Hinton believes that the suspension components that failed were the subject of recalls for the same year, make, and model of his Tesla Vehicle. When Plaintiff Hinton approached Tesla with this information, Tesla ignored him and claimed, without sufficient explanation, that these recalls did not apply to his Tesla Vehicle.

95.    Because they would not be covered under any applicable warranty, Plaintiff Hinton opted to not have the repairs to his Tesla Vehicle's suspension performed at that time.

96.    Ultimately, during the first six months of ownership, Plaintiff Hinton's Tesla Vehicle accumulated 13,300 miles, which averages approximately 2,217 miles per month.  But in the year following the Basic Warranty expiration, Plaintiff Hinton's Tesla Vehicle accumulated roughly 17,000 miles.  This averages to about 1,415 miles per month–a decline of almost 1,000 miles per month despite an employment change that lengthened Plaintiff Hinton's commute for work.

97.    In short, in the first six (6) months of Plaintiff Hinton's ownership of his Tesla Vehicle, he accumulated 80 percent of the miles it took almost a full year to accumulate after the warranty expired.

98.    In or around October 2024, while in California, Plaintiff Hinton purchased a Jaguar model vehicle.  Plaintiff Hinton drove his Jaguar under comparable conditions and commutes as his Tesla Vehicle.  His Jaguar vehicle produced a ten-month mileage accumulation of approximately 6,000 miles.  In contrast, Plaintiff Hinton's Tesla Vehicle reported more than 13,228 miles in its first six months of ownership.

99.    This disparity is even more alarming considering Plaintiff Hinton's Tesla Vehicle was unavailable for use for significant portions of the above-described six-month period due to numerous service visits.

100.    Now that his Tesla Vehicle's Basic Warranty has prematurely expired, Tesla refuses to perform any further work under warranty and that all subsequent work would be "customer pay service".

101.    As recently as October 30, 2024, Plaintiff Hinton had his Tesla Vehicle towed to an authorized Tesla repair center in Los Angeles, California when, despite now minimal usage, the Tesla Vehicle's suspension seemingly disconnected from the main driving mechanism.

102.    Representatives at the repair center confirmed that Plaintiff Hinton's Tesla Vehicle's suspension needed significant repairs–which the repair center estimated would cost around $10,000.

103.    Upon information and belief, Plaintiffs allege that their experiences with Tesla and the rapid mileage accumulation of their Tesla Vehicles are not unique to them. A quick online review reveals numerous Tesla Vehicle owners who have reported unexplained surges in odometer readings, particularly leading up to warranty expiration, on online forums such as Reddit, and social media platforms. These reports consistently document significant mileage discrepancies between actual travel distances and odometer readings, further substantiating Plaintiffs' claims that Tesla's odometer system misrepresents vehicle usage.

104.    Reddit users John_Quid2; Crzy4vr; Nice-Put-2940; and others have all publicly noted discrepancies between the distances they have driven and what is reported by the odometers in their Telsa Vehicles. (Attached to this Complaint as Exhibit 1 is a compilation of Reddit postings discussing these discrepancies).

## CLASS ACTION ALLEGATIONS

105.    Plaintiffs bring this class action on their own behalf, and on behalf of all other similarly situated consumers in California pursuant to Federal Rule of Civil Procedure 23(b)(3). The proposed class is defined as follows:

a.    During the fullest period allowed by law, all citizens residing in California who purchased a new or used Tesla model 3, Y, or other Tesla Vehicle that uses the same odometer system in the Tesla model 3 or Y ("Tesla Vehicles") between December 2022 and the date of class certification.

106.    Excluded from the Class are assigned judges and members of their families within the first degree of consanguinity; Tesla; and Tesla's subsidiaries, affiliates, officers, and directors.

107.    The members Class are collectively referred to herein as the "Class Members."

108.    The proposed Class is so numerous that individual joinder of all the members is impracticable.  The precise number of Class Members and their identities are unknown to Plaintiffs at this time but are estimated to be in the tens or hundreds of thousands.  Class Members are objectively ascertainable and will be determined through appropriate discovery and other readily available means.

109.    Tesla possesses objective evidence as to the identity of each Class Member and, to a reasonable degree of certainty, the harm suffered by each Class Member, including without limitation sales receipts, phone numbers, names, rewards accounts data, credit card data, customer service complaint forms/emails/date, Vehicle Identification Number ("VINs") and other evidence which objectively identifies Class Members.

110.    Class Members may be notified of the pendency of this action by mail, publication, and/or through the records of Tesla.

111.    All Class Members purchased or financed new or used Tesla Vehicles with the misunderstanding, caused by their reliance on Tesla's representations and/or omissions that trip details such as mileage were being accurately recorded by the Tesla Vehicles' software and would accurately reflect eligibility for warranty coverage and/or distance traveled between charges.  Such understanding was reasonable and was a material basis for the decision to purchase a Tesla Vehicle, which Tesla fostered through its various marketing activities in connection with the sale of Tesla Vehicles and the accompanying warranties. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

112.    There are common questions of law and facts affecting Plaintiffs and Class Members. Common legal and factual questions include, but are not limited to:

a.    Whether Tesla markets and advertises Tesla's warranty policy in a way that is false, deceptive, and/or misleading;

b.    Whether Tesla had a practice of overstating the distance traveled in its consumer vehicles, through use of the algorithms in its Tesla Odometer System, to accelerate warranty expiration, justify valid warranty repair rejections, and increase sales of the ESA;

c.    Whether Tesla had a practice of tolerating inaccurate mileage reporting in its favor;

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

d.      Whether the performance standards adopted and implemented by Tesla cause errors of odometer over-registration;

e.      Whether installation of the device or software causes errors of odometer over-registration beyond acceptable tolerance limits;

f.      Whether by the misconduct set forth in this complaint, Tesla engaged and continues to engage in unfair practices;

g.      Whether Tesla's conduct constitutes violations of the state laws asserted herein;

h.      Whether Tesla had a duty to correct its conduct and statements;

i.      Whether Class Members were harmed by Tesla's conduct and false statements;

j.      Whether Tesla benefited from the over-registration of the Tesla Odometer System, and if so, in what ways and by how much;

k.      Whether Tesla's conduct violates public policy;

l.      Whether Plaintiffs and Class Members are entitled to actual damages, consequential damages; and statutory penalties, and if so, the proper measure and amounts;

m.      Whether Class Members are entitled to punitive damages;

n.      Whether Class Members are entitled to recover statutory attorney's fees and litigation costs; and

o.      Whether, as a result of Tesla's misconduct as alleged herein, Plaintiffs and Class Members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

113.    Plaintiffs' claims are typical of the claims of the proposed Class because the rights of Plaintiffs and Class Members were violated in the same manner by the same conduct.

114.    Plaintiffs and Class Members are all entitled to recover statutory penalties and other relief arising out of Tesla's violations of statutory law alleged herein.

115.    Plaintiffs will fairly and adequately represent and protect the interests of the Class.

116.    Plaintiffs' interests do not conflict with the interests of the Class they seek to represent.  Plaintiffs have retained counsel competent and experienced in prosecuting class actions, and Plaintiffs intend to vigorously prosecute this action.

117. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class Members.

118. Given the relative value of statutory penalties available to any of the individual Class Members, individual litigation is not practicable.

119. Individual Class Members will not wish to undertake the burden and expense of individual cases.

120. In addition, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system. Individualized litigation also presents the potential for inconsistent or contradictory judgments.

121. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

122. Questions of law and fact common to all Class Members predominate over any questions affecting only individual Class Members. Injuries sustained by Plaintiffs and Class Members flow, in each instance, from a common nucleus of operative facts as set forth above.

123. In each case, Tesla's actions caused harm to all Class Members as a result of such conduct. The resolution of these central issues will be the focus of the litigation and predominate over any individual issues.

124. Proposed Class counsel possesses the knowledge, experience, reputation, ability, skill, and resources to represent the Class and should be appointed lead counsel for the Class.

## <u>COUNT I</u>

## <u>(UNJUST ENRICHMENT/RESTITUTION)</u>

125. Plaintiffs and Class Members reallege and incorporate by reference each allegation set forth above.

126. At all relevant times, Tesla marketed, financed, advertised, and sold Tesla Vehicles, whose Tesla Odometer Systems overcount miles driven, to Plaintiffs and Class Members.

127. As a result of the Tesla Odometer Systems' overcounting, warranties covering the Tesla Vehicles purchased by Plaintiffs and Class Members did not provide the promised coverage.

21

128.    Plaintiffs and Class Members conferred a benefit on Tesla in the form of monies that were paid in exchange for Tesla's Tesla Vehicles and associated warranties.

129.    Tesla has been unjustly enriched, and will continue to be unjustly enriched, in retaining the revenues derived from Plaintiffs' and Class Members' purchases of Tesla Vehicle warranties that prematurely expired by odometer overcounting, which retention under these circumstances is unjust and inequitable.

130.    Tesla has also been unjustly enriched, and will continue to be unjustly enriched, in retaining the revenues derived from charging customers to pay for repairs on its Tesla Vehicles that were still within warranty coverage based on actual miles traveled.

131.    Tesla's misrepresentations and/or omissions caused injuries to Plaintiffs and Class Members because a reasonable consumer would have either declined to purchase a Tesla Vehicle warranty, or would have paid less for the warranty and/or the Tesla Vehicle if the consumer knew the true facts regarding Tesla Odometer Systems and warranties.

132.    Because Tesla's retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class Members is unjust and inequitable, Tesla must pay restitution to Plaintiffs and Class Members for their unjust enrichment, as ordered by the Court.

## COUNT II

## (NEGLIGENT MISREPRESENTATION)

133.    Plaintiffs and Class Members reallege and incorporate by reference each allegation set forth above, which detail Tesla's negligent misrepresentations with specificity.

134.    Through its advertising, contractual agreements, and in the course of its regular business, Tesla made representations and/or omissions to Plaintiffs and Class Members of material facts concerning the Tesla Odometer System and warranty programs.

135.    Tesla negligently misrepresented how the Tesla Odometer Systems calculate and represent mileage driven by Tesla Vehicles, and how it differs from traditional odometers.

136.    Notwithstanding the discrepancy between traditional odometers and Tesla Odometer Systems, Tesla continued to use the word "odometer" in vehicle manuals, invoices,

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

marketing, and other materials in such a way that mislead consumers into believing that Tesla Vehicles used traditional odometers.

137.    Plaintiffs allege that it is the mileage recorded on their Tesla Odometer Systems, and not actual miles driven, that are used for the purposes of calculating repairs needed and whether a Tesla Vehicle is still within the applicable warranty periods.

138.    Tesla represented to Plaintiffs and Class Members, expressly or by implication, that the warranties provide more miles of warranty protection than they, in fact, provide due to Tesla's inaccurate odometer system.

139.    Tesla also omitted and concealed material facts relating to warranty periods that cover authorized repairs on Tesla Vehicles, and then charged customers for later-performed work that is covered by the applicable warranty period.

140.    Tesla owed Plaintiffs and Class Members a duty to provide the Tesla Vehicles and odometers and the accompanying warranties according to Tesla's representations.

141.    Tesla breached its duty owed to Plaintiffs and Class Members by failing to provide the vehicles, odometers, and warranty coverage, according to its representations.

142.    Tesla failed to act with reasonable care in making the above-mentioned representations and/or omissions concerning the vehicles' odometers and warranties.  Tesla made the above-mentioned representations and/or omissions concerning the operation of the odometer systems without reasonable grounds for believing them to be true.

143.    Tesla knew or should have known that Plaintiffs and Class Members were ignorant as to the true value of the Tesla Vehicle warranties and Tesla Vehicles, and that Plaintiffs and Class Members would reasonably rely upon Tesla's representations and/or omissions.

144.    Plaintiffs and Class Members did justifiably and reasonably rely on Tesla's representations and omissions. Plaintiffs and Class Members would not have purchased Tesla Vehicles, or would have paid less for Tesla Vehicles and their accompanying warranties, without such statements and/or omissions made by Tesla.

145.    As a result of Tesla's acts and/omissions, Plaintiffs and Class Members were damaged and harmed by Tesla in that they have been deprived of their benefit of the bargain, the

1    lost monies they overspent on the maintenance of the Tesla Vehicles, and the greater depreciation

2    on the vehicles.

3                                              **COUNT III**

4    **(VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200**

5                                      **UNFAIR COMPETITION)**

6          146.    Plaintiffs and Class Members reallege and incorporate by reference each allegation

7    set forth above.

8          147.    Commencing on a date unknown to Plaintiffs and Class Members, and continuing

9    thereafter through the present, Tesla committed (and continues to commit) acts of unfair

10   competition, by engaging in the above-described conduct to the extreme detriment of Plaintiffs and

11   Class Members.

12         148.    Tesla's wrongful acts and practices, as described above, constitute unfair business

13   acts and practices within the meaning of California Business and Professions Code section 17200,

14   *et seq.*

15         149.    Tesla's wrongful acts and practices, as described above, constitute "unfair" business

16   acts and practices in that the harm caused by Tesla's conduct outweighs any utility of such conduct,

17   and such conduct (i) offends public policy including, but not limited to, the public policy articulated

18   in statutes such as 49 U.S.C. §§ 32703(l)-(2); 32710; and California Vehicle Code section 28050;

19   (ii) is immoral, unscrupulous, unethical, deceitful, and offensive; and/or (iii) has caused (and will

20   continue to cause) substantial injury to consumers such as Plaintiffs and Class Members.

21         150.    Tesla's failure to disclose the operation and effects of its odometer system

22   constitutes an unfair practice, as consumers reasonably rely on odometer readings as accurate

23   reflections of distance traveled.

24         151.    Tesla's unfair conduct, which continues day to day, has allowed for Tesla to enrich

25   themselves at the expense of Plaintiffs and Class Members, including through Plaintiffs' and Class

26   Members' payment of monies to Tesla, including without limitation through the purchase of a Tesla

27   Vehicle.

28         152.    Tesla's conduct results in shortened warranty periods, increased repair costs for

                                                  24

consumers, and reduced warranty obligations and increased sales of extended warranties – all of which result in financial gain for Tesla.

153.    Plaintiffs and Class Members are thus entitled to restitutionary and injunctive relief, including without limitation disgorgement of any unlawful gains that Tesla obtained as a result of its unlawful and unfair conduct at the expense of Plaintiffs and Class Members.

<u>**COUNT IV**</u>

<u>**(VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17500**</u>

<u>**FALSE ADVERTISING)**</u>

154.    Plaintiffs and Class Members reallege and incorporate by reference each allegation set forth above.

155.    Commencing on a date unknown to Plaintiffs and Class Members, and continuing thereafter through the present, Tesla committed (and continue to commit) unfair acts and practices by engaging in the above-described conduct to the extreme detriment of Plaintiffs and Class Members.

156.    Tesla's failure to disclose the operation and effects of its odometer system constitutes an unfair practice, as consumers reasonably rely on odometer readings as accurate reflections of distance traveled.

157.    Tesla's marketing materials and statements concerning the operation of Tesla Vehicle components, including the odometer, and Tesla Vehicle warranties are commercial advertisements that Tesla intended to disseminate across California.

158.    By engaging in the above-described conduct, Tesla made false statements in commercial advertisements directed at the public, and have thus engaged in unlawful false or misleading advertising under California Business & Professions Code sections 17500, *et seq.*

159.    Tesla's advertising of its warranties is misleading in that it misrepresents the value of the warranty, the true number of miles of warranty protection Tesla will provide, and the true number of miles, at which excess mileage lease charges will be incurred.

160.    Tesla's false statements in its commercial advertisements mislead or had the tendency to mislead a substantial segment of its audience and Class Members.

161.    Tesla's deception through its commercial advertisements was material and a substantial reason that Plaintiffs and Class Members purchased Tesla Vehicles.

162.    Plaintiffs and Class Members were harmed as a result of Tesla's false statements, and are thus entitled to restitutionary and injunctive relief, including without limitation disgorgement of any unlawful gains that Tesla obtained as a result of its unlawful and unfair conduct at the expense of Plaintiffs and Class Members.

## COUNT V

## (BREACH OF CONTRACT)

163.    Plaintiffs and Class Members reallege and incorporate by reference each allegation set forth above.

164.    Plaintiffs and Class Members entered into agreements with Tesla for the repairs and warranties on the Tesla Vehicles.

165.    Under the Tesla Vehicle warranties, coverage was to be provided up to a certain date or milage.

166.    As a result, Tesla refused to cover maintenance on Plaintiffs' and Class Members' vehicles that would have been covered under the Basic Warranty had the odometer counted miles correctly.

167.    Plaintiffs are informed and believes, and thereon alleges, that Tesla engaged in similar breaches of the agreements Tesla had with Class Members by failing to provide Class Members with services covered under the Tesla Vehicle warranties that were included in their purchase of a Tesla Vehicle.

168.    Plaintiffs and Class Members fully, completely, and competently performed and fulfilled their obligations under their agreement with Tesla for the Tesla Vehicles and their accompanying warranties, except for those that have been excused or otherwise discharged by Tesla or Tesla's conduct.

169.    Conversely, Tesla breached its agreement with Plaintiffs and Class Members by systematically failing and refusing to provide all services that were included in the warranties.

170.    As a result of Tesla's breaches of its obligations to Plaintiffs and Class Members under the purchases agreement and warranty programs, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

**COUNT VI**

**(VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CCLRA"),
CAL. CIV. CODE § 1750, et. seq.)**

171.    Plaintiffs and Class Members reallege and incorporate by reference each allegation set forth above.

172.    Tesla is a "person" within the meaning of California Civil Code §§ 1761(c) and 1770, and provides "goods" and "services" within the meanings of Civil Code §§ 1761(a), 1761(b), and 1770.

173.    Tesla's customers, including Plaintiffs and the Class members are "consumers" within the meaning of §§ 1761(d) and 1770.

174.    Each purchase of a Tesla Vehicle and any accompanying warranty constitutes a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

175.    Plaintiffs and each Class Member purchased goods and services from Tesla that was primarily for personal, family, or household purposes.

176.    The CCLRA makes it unlawful for a Company to:

    a.    Misrepresent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or correction that the person does not have. Cal Civ. Code § 1770(a)(5).

    b.    Misrepresent that goods for services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. Cal. Civ. Code § 1770(a)(7).

    c.    Advertise goods or services with an intent not to sell them as advertised. Cal. Civ. Code § 1770(a)(9).

    d.    Represent that a part, replacement, or repair service is needed when it is not.

177.    Tesla violated and continues to violate each of the above-mentioned provisions.

178.    As a direct and proximate cause of Tesla's violations, Plaintiffs and Class Members have suffered and are continuing to suffer injuries.

179.    Tesla's wrongful business practices constituted and constitute a continuing course of conduct in violate of the CCLRA because Tesla is still representing that Tesla Vehicles and their warranties have characteristics that they do not, which is false and misleading and harms Plaintiffs and Class Members.

180.    Plaintiffs seek injunctive relief and damages for Tesla's violations of the CCLRA. Plaintiffs and the Class also seek reasonable attorneys' fees, costs and expenses, and all other remedies permitted by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the putative Class Members, pray for a judgment:

a.    Determining that this action is a proper class action and certifying the Class, as defined herein;

b.    Appointing Plaintiffs as Class Representatives;

c.    Appointing the undersigned as Class Counsel;

d.    Finding Tesla liable to Plaintiffs and Class Members for actual damages in such amount(s) as the Court or Jury may determine;

e.    Awarding statutory damages as appropriate;

f.    Awarding disgorgement of gross profits and all other forms of equitable monetary relief;

g.    Awarding punitive damages based on Tesla's malicious, oppressive, fraudulent, wanton and reckless behavior;

h.    Awarding pre- and post-judgment interest;

i.    Awarding injunctive relief, as claimed herein or as the Court may deem proper;

j.    Awarding Plaintiffs and Class Members attorney fees and all litigation costs;

k.    Awarding Plaintiffs and Class Members such other relief as may be just and proper;

l.      Awarding compensatory damages against Tesla in favor of Plaintiffs and the Class
for damages sustained as a result of Tesla's wrongdoing; and

m.      Awarding such other and further relief as may be just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.


Dated: August 28, 2025                              SINGLETON SCHREIBER, LLP


                                                    By:   /s/ Christopher R. Rodriguez
                                                          Christopher R. Rodriguez
                                                          Attorneys for Plaintiffs

PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT