1

**TESLA, INC.**
Aengus H. Carr (No. 240953)
    E-Mail: aecarr@tesla.com
3000 Hanover Street
Palo Alto, CA 94304
Telephone: 650.681-5000

2

3

4

5

Attorneys for Defendant, TESLA, INC.

6

7

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11

| | |
|---|---|
| NYREE HINTON, an individual, | Case No. 2:25-cv-02877-MEMF-JC |
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| vs. | |
| TESLA, INC., | Judge:    Hon. Maame Ewusi-Mensah Frimpong |
| Defendant. | Date:    December 11, 2025<br>Time:    10:00 a.m.<br>Crtrm.:    8B, 8th Floor |
| | Trial Date:    None Set |

12

13

14

15

16

17

18

19    / / /

20    / / /

21    / / /

22    / / /

23    / / /

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on December 11, 2025, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Maame Ewusi-Mensah Frimpong, Courtroom 8B of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, CA 90012, Defendant Tesla, Inc. will and hereby does move to dismiss the Second Amended Class Action Complaint filed by Plaintiffs with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion; the supporting Memorandum of Law; the supporting Declaration of Aengus H. Carr and exhibits thereto; Defendant's Request for Judicial Notice, the pleadings, papers, filings, and record in this action; and on such other evidence or argument as may be presented at or before the hearing.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on September 8, 2025.

A proposed order is also being lodged for the Court's consideration.

DATED:  September 12, 2025                TESLA, INC.


By:  _____/s/ Aengus H. Carr_____
     Aengus H. Carr
     Attorneys for Defendant, TESLA, INC.

# **TABLE OF CONTENTS**

Page

Introduction.................................................................................................................1

Procedural History, Informal Discovery and Vehicle Inspection.............................2

I.    ARGUMENT .....................................................................................................4

    A.    All of Plaintiffs' Claims Sound in Fraud and Must Be Dismissed for Failure to Meet Rule 9(b) Pleading Minimums .........................................................4

II.   NEITHER PLAINTIFF WAS DENIED A WARRANTABLE REPAIR, AND SO HAVE NO CLAIMS FOR BREACH ................................................................8

    A.    Pertinent Warranty Facts ...................................................................................8

    B.    Plaintiffs Fail to State Warranty Claims ...........................................................9

III.  HINTON LACKS STANDING TO SUE UNDER CALIFORNIA CONSUMER PROTECTION  STATUTES, AS CALIFORNIA'S GOVERNMENTAL INTEREST ANALYSIS HIGHLIGHTS SIGNIFICANT, MATERIAL DIFFERENCES BETWEEN CA, PA, AND GA CONSUMER PROTECTION LAW ....................................................................................................................9

    A.    State Laws for Plaintiff's Consumer Protection Claims Conflict on Numerous Outcome-Determinative Issues..........................................................10

    B.    The Interests of Foreign Jurisdictions Are Overwhelming ...............................11

    C.    Other States' Interests Would Be More Impaired If California Law Applied ........12

IV.   PLAINTIFFS' FRAUD-BASED AND UNJUST ENRICHMENT CLAIMS ARE INADEQUATELY PLEAD .................................................................................13

    A.    *Sonner* precludes Plaintiffs' claims for equitable relief ...........................................13

    B.    The SAC Contains No Allegations to Establish Tesla's Knowledge of Any "Defect" Prior to Plaintiffs' Various Vehicle Purchases. ....................................14

    C.    Plaintiffs Fail to Plead Unfair Conduct Under the UCL ..........................................16

    D.    The CLRA Damages Claims Fail as Plaintiffs Have No Actual Damages..............17

V.    CONCLUSION ...................................................................................................18

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Adams v. Cole Haan, LLC*,
  2020 WL 5648605 (C.D. Cal. Sept. 3, 2020)...............................................................14

*Antonyan v. Ford Motor Co.*,
  2022 WL 1299964 (C.D.Cal. 2022) .............................................................................7

*In re Apple Processor Litig.*,
  2022 WL 2064975 (N.D. Cal. June 8, 2022) ...............................................................14

*Aquilina v. Certain Underwriters at Lloyd's*,
  407 F. Supp. 3d 978 (D. Haw. 2019) ...........................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................................4

*Baba v. HP*,
  No. C 09-05946 RS, 2011 WL 317650 (N.D. Cal. Jan. 28, 2011).............................15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................................5

*Berenblat v. Apple*,
  No. 08-4969 JF (PVT), 2010 WL 1460297 (N.D. Cal. Apr. 9 2010) .........................16

*Berrin v. Delta Air Lines, Inc.*,
  No. 2:23-CV-04150-MEMF-MRW, 2024 WL 3304815 (C.D. Cal. Mar. 28,
  2024) (Frimpong, J.)...................................................................................................13

*Bird v. First Alert, Inc.*,
  2014 WL 7248734 (N.D. Cal. Dec. 19, 2014) .............................................................14

*Campos v. Bank of Am., Inc.*,
  2012 WL 2862603 (N.D. Cal. July 11, 2012) ..............................................................17

*Cepelak v. HP Inc.*,
  2021 WL 5298022 (N.D. Cal. Nov. 15, 2021) .............................................................13

*Chin v. Chrysler Corp.*,
  182 F.R.D. 448 (D.N.J. 1998) .....................................................................................11

*Chisholm v. House*,
  183 F.2d 698 (10th Cir. 1950).....................................................................................12

*Clark v. Am. Honda Motor Co.*,
    528 F. Supp. 3d 1108 (C.D. Cal. 2021) ................................................................. 13

*Davis v. HSBC Bank Nevada, N.A.*,
    691 F.3d 1152 (9th Cir. 2012) ...................................................................... 16, 17

*Day v. GEICO Cas. Co.*,
    2024 WL 1244481 (N.D. Cal. Mar. 21, 2024) ........................................................ 17

*Edgar v. MITE Corp.*,
    457 U.S. 624 (1982) ............................................................................................ 13

*Eisen v. Porsche Cars N. Am., Inc.*,
    2012 WL 841019 (C.D.Cal. 2012) ......................................................................... 6

*Fisher v. HNA*,
    No. LA CV13-09285 JAK, 2014 WL 2808188 (C.D. Cal. June 12, 2014) ........................ 16

*Garlough v. FCA US LLC*,
    2021 WL 4033177 (E.D.Cal. 2021) ....................................................................... 7

*Gianino v. Alacer Corp.*,
    846 F. Supp. 2d at 1100 ...................................................................................... 10

*Gibson v. Jaguar Land Rover N. Am., LLC*,
    2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) ........................................................ 13

*In re Grand Theft Auto*,
    251 F.R.D. 139 (S.D.N.Y. 2008) ........................................................................... 12

*Grodzitsky v. Am. Honda Motor Co.*,
    2:12-CV-1142-SVW-PLA, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ...................... 14, 15

*Hayden v. Bob's Red Mill Nat. Foods, Inc.*,
    2024 WL 1643696 (N.D.Cal. 2024) ....................................................................... 7

*Hodsdon v. Mars*,
    891 F.3d 857 (9th Cir. 2018) ....................................................................... 6, 7, 16

*Huynh v. Quora, Inc.*,
    508 F. Supp. 3d 633 (N.D. Cal. 2020) ................................................................. 13

*IntegrityMessageBoards.com v. Facebook, Inc.*,
    2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) ........................................................ 13

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .............................................................................. 4

*Littlehale v. Hain Celestial Grp., Inc.*,
    No. C 11-6342 PJH, 2012 WL 5458400 (N.D. Cal. July 2, 2012) ............................ 10

iii

*Lusson v. Apple, Inc.*,
  2016 WL 6091527 (N.D. Cal. Oct. 19, 2016) ................................................. 7

*Marolda v. Symantec Corp.*,
  672 F.Supp.2d 992 (N.D.Cal. 2009) ........................................................... 6

*May v. Google LLC*,
  2024 WL 4681604 (N.D. Cal. Nov. 4, 2024) ............................................. 17

*Mazza v. American Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) ...................................................... 9, 10, 11, 12

*Mosqueda v. Am. Honda Motor Co., Inc.*,
  443 F.Supp.3d 1115 (C.D.Cal. 2020) ......................................................... 7

*In re MyFord Touch Consumer Litig.*
  46 F. Supp. 3d 936 (N.D. Cal. 2014) ......................................................... 9

*In re Natera Prenatal Testing Litig*,
  664 F.Supp.3d 995 (N.D.Cal. 2023) ....................................................... 6, 7

*Nese v. Scenario Cokram USA, Inc.*,
  2021 WL 4497893 (C.D. Cal. July 20, 2021) ......................................... 13, 14

*Raynaldo v. Am. Honda Motor Co.*,
  2022 WL 4358096 (N.D.Cal. 2022) ........................................................... 6

*Resnick v. Hyundai Motor Am., Inc.*,
  No. CV1600593BROPJWX, 2017 WL 1531192 (C.D. Cal. Apr. 13, 2017) ......................... 15

*Sarkesian v. Ford Motor Co.*,
  2023 WL 2994117 (S.D.Cal. 2023) ........................................................... 6

*Sharma v. BMW of N. Am. LLC*,
  2016 WL 4395470 (N.D.Cal. 2016) ........................................................... 7

*Shay v. Apple Inc.*,
  2021 WL 1733385 (S.D. Cal. May 3, 2021) ............................................... 14

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ............................................................ 13, 14

*Spence v. Glock Ges.m.b.H.*,
  227 F.3d 308 (5th Cir. 2000) ................................................................ 11

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ................................................................. 5

*In re Toyota Motor Corp.*,
  785 F. Supp. 2d 925 (2011) ................................................................. 10

iv

*Williams v. Tesla, Inc.*,
    2021 WL 2531177 (N.D.Cal. 2021) ................................................................. 6

*Wilson v. HP*,
    668 F.3d 1136 (9th Cir. 2012) .................................................. 14, 15, 17

*Zaback v. Kellogg Sales Co.*,
    2020 WL 6381987 (S.D. Cal. Oct. 29, 2020) ............................................ 13

**State Cases**

*Debbs v. Chrysler Corp.*,
    2002 PA Super 326, 810 A.2d 137 (Pa. Super. 2002) ................................ 10

*Hernandez v. Burger*,
    102 Cal. App. 3d 795 (1980) ...................................................................... 12

*LiMandri v. Judkins*,
    52 Cal. App. 4th 326, 60 Cal.Rptr.2d 539 (1997) ................................... 6, 7

*McCann v. Foster Wheeler LLC*,
    48 Cal. 4th 68, 105 Cal. Rptr. 3d 378 (2010) ..................................... 11, 12

*Meyer v. Sprint Spectrum L.P.*,
    45 Cal. 4th 634, 200 P.3d 295 (2009) ........................................................ 17

*Pat. Scaffolding Co. v. William Simpson Const. Co.*,
    256 Cal. App. 2d 506, 64 Cal. Rptr. 187 (Ct. App. 1967) ......................... 9

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
    72 Cal. App. 4th 861 (1999) ....................................................................... 17

*St. Paul Fire and Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co.*,
    101 Cal. App. 4th 1038 (2002) .................................................................... 9

**Statutes**

49 U.S.C. § 32703(b) ...................................................................................... 16

49 U.S.C. §§ 32703(l)-(2) .............................................................................. 16

Bus. & Prof. Code § 17203 ............................................................................ 10

Cal. Veh. Code § 28050 .................................................................................. 16

Civ. Code § 1780(a)(1)-(5) ............................................................................. 11

Ga. Code Ann., § 10-1-372, § 10-1-373 .................................................. 10, 11

**Court Rules**

Federal Rule of Civil Procedure 12(b)(1) ................................................................. 2, 4, 5

Local Rule 7-3 ............................................................................................................ 2, 2, 4

Rule 8 ............................................................................................................................. 2, 5

Rule 8(a) ............................................................................................................................ 6

Rule 9(b) ................................................................................................................. 2, 5, 6, 7

**Other Authorities**

(https://patentimages.storage.googleapis.com/7f/e3/47/f474c410afe278/US8054038
.pdf) ........................................................................................................................... 1

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

Plaintiffs allege the odometers in their Tesla cars "do not function like commonly accepted odometers, but instead rely on a variety of factors, predictive algorithms, and metrics that result in routine overestimation of the mileage traveled by the vehicle" (SAC ¶ 62), "Tesla's Odometer System integrates data from GPS sensors, energy consumption readings, and historical driving patterns to display distance traveled" (*id.* ¶ 55), and "[u]pon information and belief Tesla's reliance on predictive algorithms, energy consumption metrics, and software recalibrations contributes to these discrepancies and undermines the accuracy of the odometer readings in Tesla Vehicles." *Id.* ¶ 61. None of this is true.

Even if this were assumed true for purposes of motion to dismiss, the Second Amended Complaint ("SAC") does not plead any viable claim. Plaintiffs' theory of how the odometers work is completely conclusory. Nowhere in the SAC do Plaintiffs allege a single fact that would allow the inferences they draw, such as explaining how they determined this information which Tesla supposedly actively concealed. They do not even try to plead any supporting facts and summarily declare that is how Tesla's odometers work. Plaintiffs cannot factually make those claims, and never will, because in reality, Tesla's odometers *do* "function like commonly accepted odometers" using third-party components from common automotive suppliers, are virtually indistinguishable from those used by other OEMs, and *do not* the use "GPS sensors", "predictive algorithms, energy consumption metrics" and etcetera Plaintiffs claim.

Plaintiffs in their original Complaint based these theories on a Tesla patent that *did* concern, e.g., energy consumption metrics and predictive algorithms. *See* Dkt. 1-1 (Complaint, ¶ 63). When Tesla provided a copy of that patent during informal discovery and pointed out that it was for trip planning software to optimize recharging stops, and that the patent said nothing about being used for odometer calculations,[1] Plaintiffs deleted references to the patent from their

---

[1] *See* Patent US 8,054,038 B2 ("System for Optimizing Battery Pack Cutoff Voltage") (link), describing "A method and apparatus for optimizing the level of battery charging required by an electric vehicle."

Amended Complaint, but left in *all* of the inferences they used it to draw, without providing *any* new supporting facts.

Plaintiffs allege this is all part of a scheme by Tesla to inflate vehicle mileage and cause its warranties to expire early, so it can bilk its customers out of paying for repairs, or trick them into thinking their cars get better range than they actually do. Plaintiffs' allegations do not meet Rule 8 notice pleading, let alone Rule 9(b), which applies to all of their claims and requires dismissal.

Plaintiffs' claims fail for other reasons. Neither Plaintiff has a valid breach of warranty claim – Leon's because he never brought his car to Tesla for a warranty repair, and Hinton because the repair he sought was for collision damage, which is not covered by any warranty. Hinton bought his used Tesla in Georgia while living in Pennsylvania, so California's consumer protection statutes are not available to him. Plaintiffs' consumer protection claims (UCL, FAL, CLRA) and unjust enrichment claim for injunctive relief are not cognizable because they have adequate remedies at law. Plaintiffs must also plead facts that show Tesla knew of the alleged odometer issue when they bought their cars and did not disclose it. But the SAC relies entirely on conclusory allegations, and only factually cites to a handful complaints in a third-party forum that either (1) post-date Plaintiffs' vehicle purchases, or (2) are so few in number that they could not plausibly establish Tesla's knowledge of an issue. The UCL claim is defective because Plaintiffs cannot factually allege any unfair practice, and the CLRA claim fails because neither Plaintiff has actual damages.

**Procedural History, Informal Discovery and Vehicle Inspection**

Although likely not cognizable in the instant Motion, Tesla feels it should disclose its efforts to avoid this Motion, per Local Rule 7-3 and this Court's related Standing Order. The Parties held several meetings about the Complaint, where Tesla explained Plaintiffs were mistaken as to how the odometer functioned, offered to prove it up, and noted several ways in which the Complaint was vulnerable to a motion to dismiss. The Parties agreed that informal discovery and a vehicle inspection made sense ahead of an amended complaint and so obtained a Stipulated Order to extend the time for Tesla's response to the Complaint. *See* Dkt. 15. Tesla provided

Plaintiffs with relevant specifications for the odometer, a copy of the patent that was used as a basis for Plaintiffs' allegations as to how they thought odometer functioned, industry specifications that described how the odometer in Tesla cars worked, and copies of Hinton's repair orders and Tesla Mobile App text messages he exchanged with Tesla about his January 2024 repair event.

Unbeknownst to Plaintiffs when the original Complaint was filed, Hinton's Tesla (and Leon's) have two backup odometers, one inside each drive unit (the front and rear electric motors) which record the number of times each motor has completed a revolution. *See* Carr Decl. Ex. D; *see also* Tesla's Request for Judicial Notice ("RJN") at 4-5. Each drive unit relies on its own internal sensors; the odometer uses a separate set of sensors and does not use the drive unit data. On July 29, 2025, the Parties conducted a joint inspection of Hinton's car at Plaintiffs' expert's facility, and the drive unit data was read out.

The drive unit data can be used to derive the distance the car has traveled: Unlike the transmission for an internal combustion engine, the gearbox in a Tesla has only one set of gears. *Id.* The front and rear gearboxes are the same – it takes just over 9 revolutions of the motor to turn the axel one time; dividing the number of motor rotations by the gearbox ratio will provide the number of axel rotations, and multiplying the axel rotations by tire circumference will give distance traveled. *Id.* This is basic arithmetic based on the rotation of physical components; no algorithms are involved.[2] This arithmetic showed that on the day of the inspection, the front drive unit showed 68,490.65 miles, the odometer showed 68,574 miles, and the rear drive unit showed 68,695.92 miles. *Id.* Thus, all mileage calculations were within 0.2% of each other, as measured by three completely independent sets of sensors. *Id.* This fraction of a percent variance is well

_____

within the 4% odometer tolerance industry standard identified by Plaintiffs.  SAC ¶ 62.  Tesla's engineers immediately drafted a report on the data, which was given to Plaintiffs within hours of the inspection.  *See* Carr Decl. Ex. D.

When sending the report, the undersigned requested a call with Plaintiffs to discuss the results.  Plaintiffs did not respond and filed their First Amended Complaint days later, which while many material allegations were deleted, did not address or reference any of the things provided by Tesla in informal discovery, or the vehicle inspection.  Tesla then requested an inspection of the drive units in new Plaintiff Leon's car, but Plaintiffs declined.  Plaintiffs filed the SAC to correct an error Tesla noticed, with no other changes.

At the L.R. 7-3 conference of counsel, in hopes of avoiding motion practice, Tesla offered to provide whatever else was needed to verify the operation of its odometers and also that the Parties could get a newly manufactured Tesla from its nearby Fremont factory and take it for joint testing at a test track to test mileage accumulation under controlled conditions.  Plaintiffs declined.

# I. **ARGUMENT**

## A. **All of Plaintiffs' Claims Sound in Fraud and Must Be Dismissed for Failure to Meet Rule 9(b) Pleading Minimums**

All of Plaintiffs' claims are based on an alleged non-disclosure/omission by Tesla that it, e.g., "failed to inform consumers that Tesla Vehicles' odometers do not function like commonly accepted odometers, but instead rely on a variety of factors, predictive algorithms, and metrics that result in routine overestimation of the mileage traveled by the vehicle."  SAC ¶ 62.  Even where fraud is not a necessary element of a claim, where a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of [a] claim," "th[at] claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading ... as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009).  Thus, all of Plaintiffs' claims are subject to Rule 9(b) particularity.

Plaintiffs are required to "plead[] factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663-64.  Plaintiffs allege that Tesla has concealed from customers that its odometers use "predictive algorithms, energy consumption metrics, and software recalibrations" (e.g., SAC ¶¶ 61-62), but nowhere do Plaintiffs cite any fact showing how ***they*** know this concealed truth, or in Rule 8 terms, any fact supporting an inference that this is how Tesla's odometers work.  Such unsupported allegations should have been deleted along with the allegations about the inapplicable Tesla patent on which they were based.  The Court must disregard these conclusory allegations.

Plaintiffs also make various unsupported allegations that their cars accumulated more milage than expected, but that is insufficient to support an inference of fraud under Rule 8, let alone Rule 9(b).  As an initial matter, the two backup odometers in Hinton's car are within 0.2% of the instrument display odometer (Carr Decl. Ex. D; RJN at 4-.5), meaning his unsupported inferences that his odometer's mileage is artificially inflated is implausible, and the Court need not credit it. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (A court also need not accept "allegations that contradict matters properly subject to judicial notice or by exhibit.")  This factual defect is fatal to all his claims and requires dismissal with prejudice.

Courts recognize that for concealed fact or conspiratorial -type claims, a plaintiff's subjective beliefs of wrongdoing are insufficient.  *Aquilina v. Certain Underwriters at Lloyd's*, 407 F. Supp. 3d 978, 999 (D. Haw. 2019) (The complaint "alleges no facts to support those characterizations, other than Plaintiffs' dissatisfaction with their insurance coverage and suspicions that a scheme existed. These suspicions are not sufficient for a claim to survive the Rule 8(a) standard, let alone the heightened Rule 9(b) standard." (Citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). These allegations of wrongdoing are particularly insufficient where here, an obvious alternative explanation is that Plaintiffs are not as reliable as they think they are for estimating their miles driven.  *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action" (quoting 5 C. Wright & A. Miller Fed. Prac. &

Proc. § 1216, pp. 235-36 (3d ed. 2004)) (alteration in original))  As an example, the exhibits to Plaintiffs' own SAC show the fallibility of these kinds of estimates.  In the first internet complaint they reference (SAC .pdf pp. 30-31), user "JohnnyQuid2" complains that he has accumulated 6,500km in just 3 months, driving his Tesla 100km per day.  Two commenters point out that if he had driven 100km per day, he would have 9,000km in 90 days, and that if he was driving 100km day during the work week, he would over about three months accumulate the exact 6,500km his odometer showed.  *See id.*

To state an omission-based fraud claim, a plaintiff must also provide representative samples of the materials that they relied upon to make their purchase that failed to include the purportedly withheld information, *Raynaldo v. Am. Honda Motor Co.*, 2022 WL 4358096, *7-8 (N.D.Cal. 2022); *Williams v. Tesla, Inc.*, 2021 WL 2531177, *7 (N.D.Cal. 2021); *Marolda v. Symantec Corp.*, 672 F.Supp.2d 992, 1002 (N.D.Cal. 2009); *Sarkesian v. Ford Motor Co.*, 2023 WL 2994117, *7 (S.D.Cal. 2023); *Eisen v. Porsche Cars N. Am., Inc.*, 2012 WL 841019, *3 (C.D.Cal. 2012). Here, neither Plaintiffs' individual allegations claim they reviewed anything from Tesla before making their used-car purchases from third parties and thus cannot factually allege they relied on the accuracy of anything provided by Tesla before making their purchases. See SAC ¶¶ 66-74 (Leon) and ¶¶ 75-102 (Hinton).

Plaintiffs plead claims for violations of California's FAL, CLRA, UCL, as well as common law negligent misrepresentation, on a theory of fraud by omission. Under California law, "to be actionable[,] the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars*, 891 F.3d 857, 861 (9th Cir. 2018).  To plead their omission-based fraud claims, Plaintiffs must establish, with facts, that Tesla had duty to disclose, i.e., that:

> (1) … [T]he omission was material; (2) the alleged defect was central to the product's function; and (3) the defendant (a) is plaintiff's fiduciary, (b) has 'exclusive knowledge' of material facts, (c) 'actively conceals' a material fact, or (d) makes misleading partial representations [the LiMandri factors].

*In re Natera Prenatal Testing Litig,* 664 F.Supp.3d 995, 1008 (N.D.Cal. 2023) (emphases added)

(quoting *Hodsdon,* 891 F.3d at 863) (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337, 60 Cal.Rptr.2d 539 (1997)).  Failure to plead any is alone sufficient to warrant dismissal on duty to disclose grounds. See *Hayden v. Bob's Red Mill Nat. Foods, Inc.,* 2024 WL 1643696, *10 (N.D.Cal. 2024) ("[T]he failure to satisfy the 'central function' prong resolves the question of whether Defendant has a duty to disclose …"); *In re Natera*, 664 F. Supp. 3d at 1009 (no authority "suggesting that the nature of a plaintiff's theory of consumer fraud alters the pleading requirements for establishing a duty to disclose omitted facts" under *Hodsdon*).  Plaintiffs here plead none of them.

*Materiality:* No Plaintiff alleges that the omission was material to **their** purchasing decision, nor do they explain why such misrepresentations were material to **them**, which they must do under Rule 9(b).

*Central Function:* "A defect affects the central function of a product when it renders the product incapable of use by any consumer." *Garlough v. FCA US LLC*, 2021 WL 4033177, *5 (E.D.Cal. 2021) (emphasis added). Here, no Plaintiff alleges that the defect renders their vehicle unusable (nor could they), or even that it affects its central functionality in some manner.  Instead, they report only potential out of pocket costs for repairs.  SAC ¶ . "Under California law, a manufacturer has 'no duty to disclose' where the "risk posed by the alleged defect [is] the cost to repair the product." *Sharma v. BMW of N. Am. LLC*, 2016 WL 4395470, *5 (N.D.Cal. 2016); *compare, e.g., Antonyan v. Ford Motor Co.*, 2022 WL 1299964, *4 (C.D.Cal. 2022) ("[Plaintiff] allege[d] that due to the defect, his [vehicle] stalled and could not be restarted … Therefore, the defect affected the [vehicle]'s central functionality.") (emphasis added).

*LiMandri Factors:* Plaintiffs assert Tesla's alleged exclusive knowledge, and active concealment, all trigger a duty to disclose. E.g., SAC, ¶¶ 140-141. But, again, Plaintiffs plead no **facts** showing concealment, and "bare legal conclusions" do not suffice. *Mosqueda v. Am. Honda Motor Co., Inc.,* 443 F.Supp.3d 1115, 1130–31 (C.D.Cal. 2020). But that is all that Plaintiffs offer. Plaintiffs must but fails to "allege deliberate concealment or failure to comply with a duty to disclose." *Lusson v. Apple, Inc.*, 2016 WL 6091527, at *3 (N.D. Cal. Oct. 19, 2016). Plaintiffs fail to allege with specificity, for example, how Tesla "took affirmative steps to cover up" how the

1 odometer functions. *Id.*

2 **II.**   **NEITHER PLAINTIFF WAS DENIED A WARRANTABLE REPAIR, AND SO**

3   **HAVE NO CLAIMS FOR BREACH**

4   **A.**   **Pertinent Warranty Facts**

5   The Basic Vehicle Limited Warranty ("BVLW") applies to "defects in the materials or

6 workmanship", expires at 4 years or 50,0000 miles (SAC ¶44), and requires that "To obtain

7 warranty service, you must notify Tesla within the applicable warranty period, and deliver the

8 vehicle … to a Tesla Service Center …." Carr Decl. Ex. C, pdf p.2; RJN pp. 3-4.

9
10   Leon does not allege that he has been denied a repair covered by any warranty, much less

11 that he even presented his car to Tesla for repair. *See* SAC ¶¶ 66-74. Hinton alleges he presented

12 his car for warranty repair in January 2024. *Id.* ¶¶ 90-95. However, he leaves out that the service

13 center told him the repair was not eligible for warranty coverage as the problem was caused by

14 collision damage:

15
16   Tesla:    Hey Nyree, looking at the vehicle, the damage isn't from a part defect, something had hit the front right tire, either a pothole or road debris, the force
17           is what twisted the strut and broke the bolt, at this time it would be a customer pay item

18   Hinton:   After reviewing the estimate, it[']s almost the exact identical replacements made a few months ago under warranty. Does this not matter at all?
19

20   Tesla:    With the vehicle out of warranty any repairs needed will have no coverage, additionally even if the vehicle had warranty it still wouldnt be covered as it is
21           due to outside influence not a defect in the part

22   Carr Decl. Ex.B, Lines 1, 3, 16 (sic); and RJN at 3-4. Plaintiffs allege the odometer "can

23 overstate the actual miles traveled by well over fifteen (15) percent". SAC ¶ 62. I.e., if Plaintiffs'

24 fraudulent odometer claims are assumed true the BVLW would not expire by mileage until the

25 odometer read around 57,500 miles, to account for the "inflated" miles (50000+(50000×(15%)) =

26 57,500). However, Hinton's car had 60,029 miles when he presented it for repair in January 2024.

27 Carr Decl.. Ex A. Thus, even if Plaintiffs' odometer allegations are true, (a) his BVLW was still

28 expired by mileage, and (b) the repairs sought were not covered by the warranty anyway because

they were caused by an outside influence, not a defect.

### B.    Plaintiffs Fail to State Warranty Claims

Even if Plaintiffs' fraud allegations are true, Section II(A) demonstrates that both Plaintiffs (a) have failed to allege the presentation requirement of a breach of warranty claim, and (b) have no damages. *See In re MyFord Touch Consumer Litig.* 46 F. Supp. 3d 936, 970 (N.D. Cal. 2014) (recognizing presentation as a condition-precedent for a breach of an automobile warranty); *St. Paul Fire and Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co.*, 101 Cal. App. 4th 1038, 1060 (2002) ("An essential element of a claim for breach of contract is damages resulting from the breach."); *Pat. Scaffolding Co. v. William Simpson Const. Co.*, 256 Cal. App. 2d 506, 511, 64 Cal. Rptr. 187 (Ct. App. 1967) ("A breach of contract without damage is not actionable.").

Both Plaintiffs' breach of contract claims must be dismissed.

### III.    HINTON LACKS STANDING TO SUE UNDER CALIFORNIA CONSUMER PROTECTION STATUTES, AS CALIFORNIA'S GOVERNMENTAL INTEREST ANALYSIS HIGHLIGHTS SIGNIFICANT, MATERIAL DIFFERENCES BETWEEN CA, PA, AND GA CONSUMER PROTECTION LAW

Hinton was living in Pennsylvania when he purchased his used Tesla from a car dealer in Georgia. SAC ¶ 77. California law may only extend nationwide if "the interests of other states are not found to outweigh California's interest in having its law applied." *Mazza v. American Honda Motor Co., Inc.,* 666 F.3d 581, 590 (9th Cir. 2012) (citations omitted). To determine whether the interests of other states outweigh California's, this Court must (1) determine if the laws of other states materially differ from California law; (2) if the laws materially differ, determine each state's respective interest in application of its law; and (3) if the laws materially differ and both states have an interest in the litigation, apply the law of the state whose interest would be more impaired if its law were not applied. *See id.* This test demonstrates that the consumer-protection laws of the state where Hinton resided or purchased the car apply here, not California law.

///

///

A.    **State Laws for Plaintiff's Consumer Protection Claims Conflict on Numerous Outcome-Determinative Issues**

States consumer protection laws for California, Georgia, and Pennsylvania vary in outcome determinative ways.  Indeed, *Mazza* and several other courts have readily recognized multiple variations in state consumer protection laws on several key issues including:

*Scienter*—California's UCL/CLRA and Georgia's Uniform Deceptive Trade Practices Act do not require scienter (intent to deceive) whereas Pennsylvania requires knowledge or reckless disregard. *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d at 591 (citing *Debbs v. Chrysler Corp.*, 2002 PA Super 326, 810 A.2d 137, 155 (Pa. Super. 2002) (knowledge or reckless disregard)); Ga. Code Ann., § 10-1-372, § 10-1-373 (neither "actual confusion or misunderstanding" or "intent to deceive" are required).

*Reliance*—California and Pennsylvania law require proof of reliance under their consumer protection laws (*Mazza*, 666 F.3d at 591; *Gianino v. Alacer Corp.,* 846 F. Supp. 2d at 1100).  In contrast, Georgia law afford relief to "[a] person likely to be damaged by a deceptive trade practice …." Ga. Code Ann. § 10-1-373.  Thus, Georgia (unlike California and Pennsylvania) does not require reliance.

*Statutes of Limitations*: Statutes of limitations for consumer protection laws vary significantly also.  For example, the statute of limitations for California's CLRA is 3 years, for Georgia's consumer protection law is 4 years, and Pennsylvania's law is 6 years.  See *In re Toyota Motor Corp.,* 785 F. Supp. 2d 925, 933 (2011); *Gianino*, 846 F. Supp. 2d at 1101.

*Remedies*—Even if a violation is established, material differences permeate the remedies available under each state's consumer protection law. *Mazza*, 666 F.3d at 591.  For example, under the CLRA, a plaintiff can recover actual damages (at least $1000), an injunction, restitution, punitive damages and "any other relief that the court deems proper" (Civ. Code § 1780(a)(1)-(5)), while a plaintiff can only recover restitution and injunctive relief under the UCL (Bus. & Prof. Code § 17203). In contrast, Georgia law limits remedies to equitable or restitutionary relief *Gianino*, 846 F. Supp. 2d at 1101. Pennsylvania allows for treble damages, but California law does not.  *Littlehale v. Hain Celestial Grp., Inc.,* No. C 11-6342 PJH, 2012 WL 5458400, at *2

10

(N.D. Cal. July 2, 2012).

## B.    The Interests of Foreign Jurisdictions Are Overwhelming

Because material state-law conflicts exist, California's choice of law rules require the Court to next determine each state's respective interests in applying its own laws. "Every state has an interest in having its law applied to its resident claimants." *Mazza*, 666 F.3d 581, 591-592.[3] Allowing each state to apply its own laws "assure[s] individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future.[4]

Although Hinton alleges that he presently lives in California (FAC ¶ 12), he claims he bought his Tesla vehicle while he was a Pennsylvania resident *from Georgia* and then had the car shipped to Pennsylvania.  (FAC ¶ 77.)  While both plaintiffs here invoke California law, at least for Hinton, no less than three states have a material interest in this litigation:

(1)    The state where Plaintiff Hinton currently lives (CA);

(2)    The state where Plaintiff Hinton lived at the time when he bought the car and where the alleged "express and implied" representations *were received* by him (PA); and

(3)    The state where the relevant purchase transaction giving rise to Plaintiff Hinton's purported damages took place and where the alleged "express and implied" representations were made to Hinton (GA).

As among the three, California's interests are the least important.  California is simply the latest state where Plaintiff Hinton lives.  Yet none of the relevant facts giving rise to Hinton's claims occurred in California.  Hinton was living in Pennsylvania when he made the vehicle purchase and

---

[3] *See also*, e.g., *Pilgrim*, 660 F.3d at 946-47 ("[T]he State with the strongest interest in regulating such conduct is the State where the consumers—the residents protected by its consumer-protection laws—are harmed by it . . . .To conclude otherwise would frustrate the basic policies underlying consumer protection laws."); *Spence v. Glock Ges.m.b.H.*, 227 F.3d 308, 314 (5th Cir. 2000) (rejecting application of Georgia law to the claims of a nationwide class because all "51 relevant jurisdictions are likely to be interested in ensuring that their consumers are adequately compensated in cases of economic loss"); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1998) ("Each Plaintiffs home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws.").

[4] *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 91, 105 Cal. Rptr. 3d 378 (2010).

allegedly relied on the representations giving rise to his claims. Hinton's claims are essentially for fraud. Yet "[f]raud in the air, so to speak, is not actionable. It is the operative effect of the fraud that gives rise to the cause of action and conditions the extent of recovery." *Chisholm v. House*, 183 F.2d 698, 703 (10th Cir. 1950). Stated differently, no consumer fraud could occur until an omission or misrepresentation is made and then someone hears and acts upon the allegedly deceptive representations or omissions by buying a product that (plaintiff claims) did not live up to its billing. *See In re Grand Theft Auto*, 251 F.R.D. 139, 149 (S.D.N.Y. 2008). These acts, as they relate to non-resident class members, occurred in Pennsylvania and Georgia—not California. Yet Hinton invokes California law for his claims. Pennsylvania's and Georgia's interests are far more paramount and easily outweigh California's attenuated interests as the latest home state for Hinton.

### C.    Other States' Interests Would Be More Impaired If California Law Applied

The final inquiry requires the Court to determine which state's interest would be most impaired if its law is not applied. California law recognizes that "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest." *Mazza*, 666 F.3d at 593-94 (quoting *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980)). California considers the "place of the wrong" to be the state where the last event necessary to make the actor liable occurred. *Id*. And the geographic location of the omission or where the misrepresentations were communicated to the consumer is the place of the wrong. *See McCann*, 48 Cal. 4th at 94 n.12

The gravamen of plaintiff Hinton's claim here is that he suffered damages at the point and time of purchase. Plaintiffs claim that "[a]s a result of Tesla's misrepresentations, consumers pay for warranties that are not as advertised and are required to pay out of pocket for costly repairs that should still be within warranty coverage" and that "[i]f consumers knew the truth about Tesla's odometer system they might have chosen not to purchase a Tesla, or to pay less for a Tesla Vehicle or any accompanying warranty." SAC ¶ 7. The last events necessary for this point of sale liability – i.e. alleged misrepresentations or omissions *at the point and time of sale* and consumers' alleged reliance on it in purchasing/leasing vehicles – took place (if at all) where the vehicle transactions occurred. *See Mazza*, 666 F.3d at 594 (adopting same reasoning). For Hinton, this

1    was in Pennsylvania and Georgia—in no case was it in California.  These foreign states then have

2    a predominant and "strong interest in the application of their laws to transactions between their

3    citizens and corporations doing business within their state."  *Id.*  As such, here, "California's

4    interest in applying its law to foreign residents is attenuated."  *Id.* (citing *Edgar v. MITE Corp.*,

5    457 U.S. 624, 644 (1982) ("While protecting local investors is plainly a legitimate state objective,

6    the State has no legitimate interest in protecting nonresident shareholders.")).

7    **IV.    PLAINTIFFS' FRAUD-BASED AND UNJUST ENRICHMENT CLAIMS ARE**

8        **INADEQUATELY PLEAD**

9        **A.    *Sonner* precludes Plaintiffs' claims for equitable relief**

10       Plaintiffs fail to plead they have an inadequate remedy at law, a prerequisite to seeking

11   equitable relief under the UCL, FAL, CLRA or unjust enrichment.  *Sonner v. Premier Nutrition*

12   *Corp.,* 971 F.3d 834, 842-43 (9th Cir. 2020). Under *Sonner*, plaintiffs must "plead the basic

13   requisites of the issuance of equitable relief." *Cepelak v. HP Inc.,* 2021 WL 5298022, at *2 (N.D.

14   Cal. Nov. 15, 2021). In *Sonner*, the Ninth Circuit explained plaintiffs "must establish that [they]

15   lack[] an adequate remedy at law before securing equitable restitution for past harm under the

16   UCL and CLRA." 971 F.3d 834, 844 (9th Cir. 2020).  This Court has recognized that "*Sonner* is

17   clear that equitable restitution specifically cannot be sought where an adequate legal remedy

18   exists—therefore, to the extent that [plaintiff] seeks equitable restitution [], the Court finds that

19   [plaintiff] has actually alleged that there is an adequate legal remedy." *Berrin v. Delta Air Lines,*

20   *Inc.,* No. 2:23-CV-04150-MEMF-MRW, 2024 WL 3304815, at *7 (C.D. Cal. Mar. 28, 2024)

21   (Frimpong, J.).  Other Courts applying *Sonner* have also routinely held that they lack jurisdiction

22   over equitable claims where an adequate remedy at law exists, regardless of the form of relief

23   sought. *Zaback v. Kellogg Sales Co.,* 2020 WL 6381987, at *4 (S.D. Cal. Oct. 29, 2020)

24   (dismissing UCL, CLRA, FAL, and unjust enrichment claims); *Nese v. Scenario Cokram USA,*

25   *Inc.,* 2021 WL 4497893, at *3 (C.D. Cal. July 20, 2021) (restitution and injunctive relief); *Clark v.*

26   *Am. Honda Motor Co.,* 528 F. Supp. 3d 1108, 1121-22 (C.D. Cal. 2021) (all equitable relief,

27   including prospective injunctive relief); *Huynh v. Quora, Inc.,* 508 F. Supp. 3d 633, 662 (N.D.

28   Cal. 2020) (injunctive relief); *Gibson v. Jaguar Land Rover N. Am., LLC,* 2020 WL 5492990, at

13

*3-4 (C.D. Cal. Sept. 9, 2020) (all equitable relief); cf. *IntegrityMessageBoards.com v. Facebook, Inc.,* 2020 WL 6544411, at *8 (N.D. Cal. Nov. 6, 2020) (rejecting "any distinction among the various forms of equitable relief when requiring the absence of a 'plain, adequate, and complete remedy at law' to obtain it" and applying Sonner to declaratory relief). Here, Plaintiffs do not allege they lack an adequate remedy at law, and in any event fail to allege facts demonstrating such. *See Sonner*, 971 F.3d at 844 ("[T]he operative complaint does not allege that *Sonner* lacks an adequate legal remedy."). The SAC makes no effort to allege or explain why these legal remedies—all based on the same conduct as their equitable claims—are or may be inadequate. Sonner thus compels their dismissal. See, e.g., *Nese*, 2021 WL 4497893, at *3 (dismissing UCL claim); *TML Recovery, LLC,* 2021 WL 3730168, at *7 (dismissing UCL claim); *Shay v. Apple Inc.,* 2021 WL 1733385, at *5 (S.D. Cal. May 3, 2021) (dismissing UCL claim and equitable relief sought in CLRA claim).

The requests for prospective injunctive relief should also be dismissed under Rule 12(b)(1) because Plaintiffs lack standing given that they "will clearly not purchase the product again." *Bird v. First Alert, Inc.,* 2014 WL 7248734, at *5 (N.D. Cal. Dec. 19, 2014). Indeed, they allege no irreparable harm or injury justifying injunctive relief beyond conclusory statements that cannot survive Iqbal. *Adams v. Cole Haan, LLC*, 2020 WL 5648605, at *3 (C.D. Cal. Sept. 3, 2020).

The requests for retrospective injunctive relief also fail because, as explained herein, Plaintiffs fail to identify any actionable misrepresentation or omission. *In re Apple Processor Litig.*, 2022 WL 2064975, at *12 (N.D. Cal. June 8, 2022).

**B.      The SAC Contains No Allegations to Establish Tesla's Knowledge of Any "Defect" Prior to Plaintiffs' Various Vehicle Purchases.**

Plaintiffs' UCL, FAL, CLRA and negligent misrepresentation claims must be dismissed for failure to factually allege Tesla's knowledge. A duty to disclose an omitted fact arises only if Tesla knew of it at the time of the relevant transaction (here, when Plaintiffs purchased their used cars). *Wilson v. HP*, 668 F.3d 1136, 1145 (9th Cir. 2012). Indeed, it is axiomatic a defendant has no duty to disclose "at the time of sale" that which it does not know. *Id.*; *see also, e.g., Grodzitsky v. Am. Honda Motor Co.*, 2:12-CV-1142-SVW-PLA, 2013 WL 690822, at *6 (C.D. Cal. Feb. 19,

2013) (plaintiffs must sufficiently allege defendant was aware of a defect "at the time of sale to survive a motion to dismiss.'") (citing *Wilson*, 668 F.3d at 1145).

While the thrust of Plaintiffs' negligent misrepresentation and consumer protection claims is that Tesla failed to disclose the how the odometer functioned (e.g., SAC ¶¶ 61-62), they plead no facts to establish Tesla knew of any issue when Plaintiffs purchased their used cars. Most of Plaintiffs' knowledge allegations are conclusory assumptions in the form of incendiary allegations that Tesla deliberately designed an odometer that artificially inflated mileage (e.g.,*id*.), although they also include some generic allegations of Tesla knowingly making misrepresentations in communications to customers. E.g., *id*. ¶¶ 134-136.

Plaintiffs also claim Tesla knew of a defect from a handful of internet forum posts as well as social media posts (though none are provided). SAC ¶ 103 and exhibits. Other courts have unambiguously held similar (if not identical) omnibus allegations do not demonstrate knowledge of any defect in the first instance. *See, e.g., Grodzitsky*, 2013 WL 690822, at **6-7 (rejecting "knowledge" allegations on claims that Honda knew of a defect based on "pre-release testing data, early consumer complaints to Honda and dealers, testing done in response to complaints, replacement part sales data, aggregate data from Honda dealers, and other internal sources"). Additionally, there is nothing in the SAC to suggests Tesla would have known an issue with the odometers would emerge after years of use, and in Plaintiffs' cases after the \BVLW had expired. *See, e.g., Resnick v. Hyundai Motor Am., Inc*., No. CV1600593BROPJWX, 2017 WL 1531192, at *16 (C.D. Cal. Apr. 13, 2017) ("even if Defendants had performed this alleged testing, Plaintiffs' allegations fail to adequately establish that it would have informed Hyundai of a possible, post-warranty failure of its paint [in the subject vehicles]").

In total, Plaintiffs identify about half a dozen anonymous customer complaints about Tesla odometers on Reddit and only a few appear to pre-date either Plaintiff's vehicle purchases. This is not enough to show knowledge of a widespread problem in the odometers affecting *all* model and model year Teslas. Critically, it is not enough to show Tesla's knowledge of an issue in each Plaintiff's car at the time of their vehicles purchases. Indeed, the volume of complaints – six – is far lower than those courts have held do not confer knowledge. *Baba v. HP*, No. C 09-05946 RS,

2011 WL 317650, at *3  (N.D. Cal. Jan. 28, 2011) ("[a]wareness of a few customer complaints,

however, does not establish knowledge of an alleged defect"); *Berenblat v. Apple*, No. 08-4969 JF

(PVT), 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9 2010) (350 complaints made directly to Apple

did not show knowledge of a defect, "[a]t most the posting establishes knowledge that there were

*complaints* about the memory card problem." (original emphasis)); *Fisher v. HNA*, No. LA CV13-

09285 JAK, 2014 WL 2808188, at *5 (C.D. Cal. June 12, 2014) (single consumer complaint did

not plausibly show Honda was on notice of the defect "at the time of sale").

Without showing knowledge, Plaintiffs cannot maintain their fraud-based claims.

### C.    Plaintiffs Fail to Plead Unfair Conduct Under the UCL

Plaintiffs allege that Tesla violated the "unfair" prongs of the UCL (SAC ¶¶ 146-153, but

they have not stated a plausible UCL claim.  California courts have generally coalesced around

two tests for unfairness in consumer cases under the UCL: a public policy test and a balancing

test. The public policy test requires an unfair practice to be "tethered to some legislatively declared

policy or proof of some actual or threatened impact on competition." *Davis v. HSBC Bank

Nevada, N.A.,* 691 F.3d 1152, 1170 (9th Cir. 2012). "California courts require a close nexus

between the challenged act and the legislative policy." *Hodsdon v. Mars, Inc.,* 891 F.3d 857, 866

(9th Cir. 2018).  Here, Plaintiffs allege Tesla's conduct violated 49 U.S.C. §§ 32703(l)-(2); 32710;

and Cal. Veh. Code Sec. 28050. However, both of these statutes relate to post-manufacture

odometer tampering, [5] expressly recognize the true vehicle mileage as that registered by the

odometer operating as designed by its manufacturer (here, Tesla), [6] and make it unlawful for a

person to make the odometer "register a mileage different from the mileage the vehicle was

driven, as registered by the odometer within the designed tolerance of the manufacturer of the

odometer." 49 U.S. Code § 32703(1).  Here, Plaintiffs' allegation is that their Tesla's odometers

are operating as designed; there are no well-pled allegations that Tesla has "tampered" with the

---

[5] *See* 49 U.S.C. § 32703(b) ("The purposes of this chapter are (1)to prohibit tampering with motor vehicle
odometers"); *see also* Cal. Veh. Code Sec. 28050.

[6] 49 U.S. Code § 32703(1)); *see also* Cal. Veh. Code Sec. 28050 ("For the purposes of this section the true mileage
driven is that mileage driven by the car as registered by the odometer within the manufacturer's designed tolerance.")

odometers post-sale and so these statutes are inapplicable.

Because Plaintiffs identify no "legislatively declared policy" that Tesla has violated, they can succeed only on the balancing test, where a court "weigh[s] 'the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Davis*, 691 F.3d at 1169. "A business practice is 'unfair' under this test 'when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Day v. GEICO Cas. Co.,* 2024 WL 1244481, at *8 (N.D. Cal. Mar. 21, 2024) (quoting *S. Bay Chevrolet v. Gen. Motors Acceptance Corp*., 72 Cal. App. 4th 861, 886-87 (1999)). *see also Campos v. Bank of Am., Inc.,* 2012 WL 2862603, at *8-9 (N.D. Cal. July 11, 2012) (allegations that foreclosures were unfair did not satisfy tethering test due to lack of "an articulated public policy").

Plaintiffs' unfounded speculation about Tesla's motivations and conduct (*see, e.g.,* SAC ¶ 61-62) is entitled to no weight, even at the motion to dismiss stage. *See May v. Google LLC,* 2024 WL 4681604, at *12 (N.D. Cal. Nov. 4, 2024) (dismissing "unfair" prong UCL claim even though the plaintiff made general allegations that Google kept scam victims' money, that it knew it was stolen, and that it discouraged scam victims from seeking refunds).[7]  Stripped of Plaintiffs' unsupported mischaracterizations of Tesla's conduct, Plaintiffs' lack any well-pled allegations that Tesla has engaged in any "unfair" conduct and so there is nothing for the court to "weigh" in the balancing test.  *Davis*, 691 F.3d at 1169.

### D.    The CLRA Damages Claims Fail as Plaintiffs Have No Actual Damages

The California Supreme Court held a plaintiff must have suffered actual damages at the time the complaint was filed to be able to plead a claim for damages under the CLRA.  *Meyer v. Sprint Spectrum L.P*., 45 Cal. 4th 634, 643, 200 P.3d 295, 301 (2009).  The Court confirmed that merely because Plaintiffs may have some future warranty coverage dispute with Tesla is insufficient to confer standing to sue.  *See id.* ("Although the allegedly unconscionable terms may at some future time require plaintiffs to expend greater costs and legal fees should a dispute arise

---

[7] *See Wilson,* 668 F.3d at 1145 n.5 ("failure to disclose a fact that a manufacturer does not have a duty to disclose … does not constitute an unfair or unlawful practice").

that requires arbitration or resort to other remedial provisions, it would contort the statutory language to conclude that the preemptive expenditure of fees for this litigation means that Sprint's alleged unlawful practices had caused 'damage' at the time the lawsuit was filed.").  As shown in Section III, as neither Plaintiff has a claim for breach of warranty (nor have they alleged any other cost), they have not suffered actual damages, and so the CLRA damages claims must be dismissed.

## V.    **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' SAC.

DATED:  September 12, 2025             Respectfully submitted,
                                       TESLA, INC.


By:    _____*/s/ Aengus H. Carr*_____
       Aengus H. Carr
       Attorneys for Defendant, TESLA, INC.

DEFENDANT'S MEMO OF POINTS AND AUTHORITIES

**Local Rule 7-3 Certification**

The undersigned certifies that the Parties conducted the Local Rule 7-3 Conference of Counsel, including as modified by this Court's standing order, on September 8, 2025 but could not reach agreement. As part of efforts to avoid this motion, Defendant provided relevant specifications for the odometers used in Tesla vehicles, relevant industry standards, as well as repair orders and communications with Plaintiffs and various other materials and conducted a joint inspection of Plaintiff Hinton's car.  At the Local Rule 7-3 conference of counsel, Tesla also offered to provide whatever else was needed to verify the operation of its odometers and also that the Parties could get a newly manufactured Tesla from its nearby Fremont factory and take it for joint testing at a test track to test mileage accumulation under controlled conditions.  Plaintiffs declined.

DATED:  September 12, 2025          TESLA, INC.


By:          */s/ Aengus H. Carr*
      Aengus H. Carr
      Attorneys for Defendant, TESLA, INC.


**Local Rule 11-6.1 Certification**

The undersigned, counsel of record for Tesla, Inc., certifies that this brief contains 6948 words, which complies with the word limit of L.R. 11-6.1.

DATED:  September 12, 2025          TESLA, INC.


By:          */s/ Aengus H. Carr*
      Aengus H. Carr
      Attorneys for Defendant, TESLA, INC.

19