**TESLA, INC.**
Aengus H. Carr (SB No. 240953)
    E-Mail: aecarr@tesla.com
3000 Hanover Street
Palo Alto, CA 94304
Telephone: 650.681-5000

Attorneys for Defendant, TESLA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NYREE HINTON, an individual,<br><br>            Plaintiff,<br><br>        vs.<br><br>TESLA, INC.,<br><br>            Defendant. | Case No. 2:25-cv-02877-MEMF-JC<br><br>**DEFENDANT TESLA, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Judge:    Hon. Maame Ewusi-Mensah Frimpong<br><br>Date:        February 19, 2026<br>Time:        10:00 a.m.<br>Crtrm.:    8B, 8th Floor<br><br>Trial Date:            None Set |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

170432666.7

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................... 1

II. PLAINTIFFS' FRAUD-BASED CLAIMS REQUIRE MINIMUM PLEADING ALLEGATIONS THAT ARE MISSING IN THE SAC. ............ 2

    A. Rule 9(b) Applies Regardless of Plaintiffs' Strategic Removal of Certain Words From the SAC. ...................................................... 2

    B. Plaintiffs' Omission-Based Claims Fail Because They Do Not Allege Tesla's Knowledge of a Defect at the Time of the Relevant Transactions, Tesla's Duty to Disclose, or Plaintiffs' Reliance. .................................................................................... 3

III. PLAINTIFFS' BREACH OF CONTRACT CLAIM REQUIRES DISMISSAL FOR SEVERAL REASONS. ...................................................... 7

IV. PLAINTIFF HINTON'S CLAIMS HAVE NO CONNECTION TO CALIFORNIA OTHER THAN HINTON CURRENTLY LIVING HERE. .................................................................................................... 8

V. THE UCL, FAL, CLRA, AND UNJUST ENRICHMENT CLAIMS SEPARATELY FAIL FOR A HOST OF REASONS. ................................... 10

VI. CONCLUSION ......................................................................................... 13

1

# **TABLE OF AUTHORITIES**

2

**Page**

3

**Federal Cases**

4

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
    802 F. Supp. 2d 1070 (N.D. Cal. 2011) ................................................. 10

5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................. 2, 3

6

7

*Baba v. HP*,
    2011 U.S. Dist. LEXIS 8527 (N.D. Cal. Jan. 28, 2011) ...................... 4, 5

8

9

*Benkle v. Ford Motor Co.*,
    2017 U.S. Dist. LEXIS 222317 (C.D. Cal. Dec. 22, 2017)...................... 3

10

*Berenblat v. Apple*,
    2010 U.S. Dist. LEXIS 46052 (N.D. Cal. Apr. 9 2010).......................... 4, 5

11

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................... 11

12

13

*Castillo v. Seagate Tech., LLC*,
    2016 U.S. Dist. LEXIS 187428 (N.D. Cal. Sep. 14, 2016).................... 11

14

15

*Eisen v. Porsche Cars N. Am., Inc.*,
    2012 WL 841019 (C.D. Cal. 2012) .......................................................... 6

16

17

*Fisher v. HNA*,
    2014 U.S. Dist. LEXIS 84570 (C.D. Cal. June 12, 2014)......................... 4

18

19

*Grier v. Finjan Holdings, Inc. (In re Finjan Holdings, Inc. Sec. Litig.)*,
    58 F.4th 1048 (9th Cir. 2023)................................................................... 2

20

*Grodzitsky v. Am. Honda Motor Co.*,
    2013 U.S. Dist. LEXIS 33387 (C.D. Cal. Feb. 19, 2013) ........................ 4

21

22

*Hannibal-Fisher v. Grand Canyon Univ.*,
    523 F. Supp. 3d 1087 (D. Ariz. 2021)................................................... 6, 8

23

24

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .............................................................. 2, 3

25

*Marolda v. Symantec Corp.*,
    672 F.Supp.2d 992 (N.D. Cal. 2009) ....................................................... 6

26

27

*In re Nexus 6P Prods. Liab. Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018) ................................................... 11

28

*Oman v. Delta Air Lines, Inc.*,
   889 F.3d 1075 (9th Cir. 2018).........................................................................................8

*Precht v. Kia Motors Am., Inc.*,
   2014 U.S. Dist. LEXIS 185202 (C.D. Cal. Dec. 29, 2014)......................................3

*Raynaldo v. Am. Honda Motor Co.*,
   2022 WL 4358096 (N.D. Cal. 2022)............................................................................6

*Resnick v. Hyundai Motor Am., Inc.*,
   2016 U.S. Dist. LEXIS 160179 (C.D. Cal. Nov. 14, 2016) ................................4, 5

*San Miguel v. HP Inc.*,
   317 F. Supp. 3d 1075 (N.D. Cal. 2018) ...................................................................12

*Sarkesian v. Ford Motor Co.*,
   2023 WL 2994117 (S.D. Cal. 2023) ...........................................................................6

*Schroeder v. United States*,
   569 F.3d 956 (9th Cir. 2009)......................................................................................10

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020)......................................................................................10

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012) ......................................................................11

*Terpin v. AT&T Mobility, LLC*,
   399 F. Supp. 3d 1035 (C.D. Cal. 2019) .................................................................8, 9

*Vinci v. Hyundai Motor Am.*,
   2018 U.S. Dist. LEXIS 139979 (C.D. Cal. Apr. 10, 2018) ......................................1

*Williams v. Tesla, Inc.*,
   2021 WL 2531177 (N.D. Cal. 2021)...........................................................................6

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ................................................................................4, 5

**State Cases**

*Daugherty v. Am. Honda Motor Co.*,
   144 Cal. App. 4th 824, 51 Cal. Rptr. 3d 118 (2006), *as modified* (Nov. 8, 2006)...................5

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003)..............................................................................................11

**Court Rules**

Rule 9(b).................................................................................................................1, 2, 3

1
Rule 9(b)'s .................................................................................................................. 1

2
Rule 23 ......................................................................................................................... 7

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

## I.    __INTRODUCTION__

Plaintiffs' Opposition (Dkt. 31) (Opp.) offers no credible arguments to salvage from dismissal the six inadequately pled claims for relief in the Second Amended Complaint (Dkt. 21) ("SAC").[1]  Plaintiffs proceed down a path of misdirection by pointing the Court to the absence of their strategically removed key words from the SAC to evade the heightened pleading requirements of Rule 9(b) for their fraud-based claims.  But a close reading of the SAC demonstrates that the crux of Plaintiffs' claims—however deprived of terms typically used in complaints consisting of fraud actions—ultimately still sound in fraud and must satisfy Rule 9(b).  The fundamental premise of Plaintiffs' entire case still hinges on the unsupported conclusion that Tesla's odometer systems are faulty, Tesla knew this, and sold the subject vehicles to Plaintiffs with such knowledge and without proper disclosure.  This is a *classic* fraud allegation.  Yet neither the SAC nor the Opposition provide *any facts* other than Plaintiffs' own mileage calculations and the *ipse dixit* of counsel to demonstrate the core foundation of their claim that the odometer systems are faulty.  If the say-so of Plaintiffs and their attorneys were enough, it would be difficult to imagine any case in which Plaintiffs could not simply plead around Rule 9(b)'s heightened pleading requirements by arguing what is tantamount to a defense of "trust me, we checked" to adequately and thereby state a claim for fraud-based causes of action.  Plaintiffs are required to plead *plausible* allegations that are supported by facts, not just possible theories or speculation, to support their defect and fraud-based claims.  They have not done so, and the Opposition confirms this.

Additionally, Plaintiff Hinton's claims must be dismissed altogether from this class action because California law cannot apply to his Pennsylvania and Georgia based transaction.  Plaintiff Hinton purchased his car and purportedly received warranties and other representations from Tesla in connection with this vehicle *outside* of California, while he was living in Pennsylvania.  The only connection to California is that his Tesla (like Hinton) ended up here years after he purchased it.

---

[1] Tesla also filed a Request for Judicial Notice in support of its Motion to Dismiss (Dkt. 24), which Plaintiffs have not opposed.  Tesla's Request for Judicial Notice must therefore be granted. *Vinci v. Hyundai Motor Am.*, 2018 U.S. Dist. LEXIS 139979, at *11 (C.D. Cal. Apr. 10, 2018) (granting defendant's request for judicial notice where plaintiffs did not oppose the request and thus no party questioned the authenticity of the document attached to the Rule 12(b)(6) motion).

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

That is not a valid basis for the extraterritorial application of California law for his claims.  Since that is the only law Hinton invokes, his claims must be dismissed for this separate, independent basis.  For these reasons and those discussed in Tesla's Motion, the SAC must be dismissed without leave to amend.

## II.    PLAINTIFFS' FRAUD-BASED CLAIMS REQUIRE MINIMUM PLEADING ALLEGATIONS THAT ARE MISSING IN THE SAC.

### A.    Rule 9(b) Applies Regardless of Plaintiffs' Strategic Removal of Certain Words From the SAC.

Plaintiffs correctly recognize that Rule 9(b) "requires particularity when pleading 'fraud.'" (Opp. at 4:4) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009)).  Indeed, it does.  *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (holding that "[b]ecause the Supreme Court of California has held that nondisclosure is a claim for misrepresentation in a cause of action for fraud, it (as any other fraud claim) must be pleaded with particularity under Rule 9(b).").  Yet they try to avoid these heightened pleading requirements by elevating form over substance—namely, by diverting the Court's attention toward their wordsmithing exercise that "deliberately removed" language from the SAC that points to fraud.  (Opp. at 4:6-8.)  But strategic wordsmithing of a complaint to avoid a "word search" hit (Opp. at 5:8-12 & n.1) does not change the character of the claim.  Rule 9(b) still applies "where a claim is 'grounded in fraud' or 'sound[s] in fraud,' even if fraud is not an essential element of the cause of action."  *Grier v. Finjan Holdings, Inc.* (*In re Finjan Holdings, Inc. Sec. Litig.*), 58 F.4th 1048, 1057 (9th Cir. 2023).  In other words, "if 'a plaintiff . . . choose[s] . . . to allege in the complaint that the defendant has engaged in fraudulent conduct,' then 'the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).'"  *Id.*

The crux of Plaintiffs' allegations remains fraud-based since they claim, without equivocation, that Tesla "omitted and concealed material facts" (SAC ¶ 139), "failed to inform consumers" (*id.* ¶ 62), "fail[ed] to disclose the operation and effects of its odometer system" (*id.* ¶¶ 150, 156), its "undisclosed failure [] impacts everything from the consumer's decision to purchase the car, to the value of the car and any accompanying warranties, to the total cost of maintaining the car" (*id.* ¶ 7), and "[a]s a result of Tesla's misrepresentations, consumers pay for warranties that are not as advertised."  (*Id.*).  While Tesla vehemently denies these unfounded and unsupported

*conclusions* of fraudulent conduct, Plaintiffs make these the foundations for their Second Amended Complaint and are thus held to a higher standard in their pleading, even if they do not have a specific "fraud" cause of action. *See Kearns*, 567 F.3d at 1124 ("Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)").

Yet the fact remains that Plaintiffs' allegations fall woefully short of the Rule 9(b) requirements, which requires dismissal of *all* their claims. Indeed, Plaintiffs failed to plead factual content with *plausible* claims for relief—not just possible claims for relief. *Ashcroft*, 556 U.S. at 663-64, 678. While Plaintiffs attempt to explain away the "who, what, when, where, and how" of their fraud-based allegations (Opp. at 6:1-7:8), the entire premise of their allegations rests on a conclusory and wholly unsupported proposition that is implausible on its face: "Tesla overstates the mileage of the Class Vehicles" and "the odometer system in the Class Vehicles does not function like traditional odometer systems." (*Id.* at 6:9-11). Yet Plaintiffs do not provide any facts other than their self-serving mileage calculations and say-so to support this theory. Plaintiffs allege Tesla has concealed from customers that its odometers presumably use "predictive algorithms, energy consumption metrics, and software recalibrations" (SAC ¶¶ 61-62), but do not cite any facts demonstrating how Tesla's odometers work and how they differ from other odometers equipped in non-Tesla vehicles. The Court need not buy into the fictional world Plaintiffs portray in their SAC where Tesla's vehicles have faulty odometer systems and fail to accurately log mileage, and it may "draw on its experience and common sense" which could easily point to a more plausible explanation for Plaintiffs' experiences (*e.g.*, user error calculating miles driven). *See Ashcroft*, 556 U.S. at 663-64.

**B.    Plaintiffs' Omission-Based Claims Fail Because They Do Not Allege Tesla's Knowledge of a Defect at the Time of the Relevant Transactions, Tesla's Duty to Disclose, or Plaintiffs' Reliance.**

"[T]o successfully allege fraudulent concealment of an automobile defect, Plaintiffs need only allege facts raising 'a plausible inference that Defendant ***knew*** of the [d]efect at the time of the sale.'" *Benkle v. Ford Motor Co.*, 2017 U.S. Dist. LEXIS 222317, at *15 (C.D. Cal. Dec. 22, 2017); *see also, e.g.*, *Precht v. Kia Motors Am., Inc.*, 2014 U.S. Dist. LEXIS 185202, at *6 (C.D. Cal. Dec.

29, 2014) (emphasis added).  The SAC does not do this.  In fact, aside from alleging that Tesla built the vehicles Plaintiffs purchased used from a third party, non-Tesla dealerships (SAC ¶¶ 69, 77), there is not a single allegation in the SAC demonstrating that Tesla knew of a defect in the Subject Vehicles' odometer system at the time of these purchases.

Rather than highlight allegations in the SAC to support a showing of Tesla's knowledge of a defect at the time of Plaintiffs' used car vehicle purchases (though none exist), Plaintiffs double down on their guesswork and argue that "[w]hile Plaintiffs may not possess all knowledge at this stage as to the intricate workings of Tesla's odometer systems, Plaintiffs have alleged how they belief [sic] the systems function."  (Opp. at 7:25-27) (citing SAC ¶¶ 55-56, 63).  And based on this "belief," they claim their "allegations demonstrate Plaintiffs [sic][2] knowledge of how the odometer system works, and how they failed to disclose that information in their materials and by way of their service representatives."  (Opp. at 9:16-18).   This circular reasoning does not show Tesla's knowledge of a defect in Plaintiffs' cars when they bought them used from third party dealers. Indeed, while Plaintiffs allege in the SAC that others have purportedly experienced the same issue and posted their complaints online (SAC ¶¶ 103-104), their Opposition does not attempt to explain how such few complaints are enough to plausibly show knowledge.  The law requires more.  *Baba v. HP*, 2011 U.S. Dist. LEXIS 8527, at *9-10 (N.D. Cal. Jan. 28, 2011) ("[a]wareness of a few customer complaints, however, does not establish knowledge of an alleged defect"); *Berenblat v. Apple*, 2010 U.S. Dist. LEXIS 46052, at *24-27 (N.D. Cal. Apr. 9 2010) (350 complaints made directly to Apple did not show knowledge of a defect); *Fisher v. HNA*, 2014 U.S. Dist. LEXIS 84570, at *14 (C.D. Cal. June 12, 2014) (single consumer complaint did not plausibly show Honda was on notice of the defect "*at the time of sale*").[3]  And it requires that a sufficient number of complaints *pre-date* the Plaintiffs' vehicle purchases.  *Grodzitsky v. Am. Honda Motor Co.*, 2013 U.S. Dist. LEXIS 33387,

---

[2] Tesla assumes Plaintiffs meant to say "Tesla" and not "Plaintiffs."  In any event, the argument fails for the reasons discussed herein.

[3] *See also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146-47 (9th Cir. 2012) ("customer complaints in and of themselves [do not] adequately support an inference that a manufacturer was aware of a defect"); *Resnick v. Hyundai Motor Am., Inc.,* 2016 U.S. Dist. LEXIS 160179, at *44 (C.D. Cal. Nov. 14, 2016) (finding "these few various complaints to dealerships all over the country are insufficient to establish Defendants' knowledge").

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

at *16-18 (C.D. Cal. Feb. 19, 2013) (plaintiffs must sufficiently allege defendant was aware of a defect "*at the time of sale* to survive a motion to dismiss.'") (citing *Wilson*, 668 F.3d at 1145). The six forum posts in Exhibit 1 to the SAC are not only insufficient in number, but none pre-date Hinton's December 9, 2022 used vehicle purchase (SAC ¶ 77). While the six Reddit posts pre-date Plaintiff Leon's March 2024 purchase (*id.* ¶ 69), a total of six complaints on a forum that Tesla does not monitor can hardly be said to charge Tesla with knowledge of a widespread defect at the time of Plaintiff Leon's used car purchase from a third-party dealer. *See, e.g.*, *Baba v. HP*, 2011 U.S. Dist. LEXIS 8527, at *9-10; *Berenblat*, 2010 U.S. Dist. LEXIS 46052, at *24-27.

Even *assuming* Plaintiffs had shown Tesla's knowledge of a defect in Plaintiffs' vehicles at the time of their purchases (they have not), Plaintiffs do not explain why Tesla would have any duty to disclose the alleged defect to Plaintiffs. As an initial matter, "a manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." *Wilson*, 668 F.3d at 1141 (citing *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 51 Cal. Rptr. 3d 118 (2006), *as modified* (Nov. 8, 2006)). Plaintiffs have not identified any affirmative misrepresentation Tesla made, nor have they alleged a safety issue. In no stretch of the imagination could a purported odometer discrepancy constitute a safety risk while driving a car. This alone is detrimental to their duty to disclose theory.

Second, neither Plaintiff alleges the defect renders their *vehicle* (which is all Plaintiffs allege in the SAC that they purchased) unusable or that it affects its central functionality in some manner. In a last ditch attempt to salvage their duty to disclose theory, Plaintiffs argue "the products alleged are not just the vehicle, but the Class Vehicle's odometer system and the warranty packages offered by Tesla" and the "defects omitted affect the central function of those products because the odometer does not accurately calculate miles traveled and the warranties are not actually tied to miles traveled." (Opp. at 9:11-15). But Plaintiffs are not suing Tesla for a separate odometer system they purchased or an extra warranty they purchased. Their claims arise from their used *vehicle* purchases. The fact that the vehicles (like any vehicle on the road) come equipped with an odometer system does not mean Plaintiffs purchased the odometer system separately such that the central function of the odometer system could be said to be affected. *See, e.g.*, *Resnick*, 2016 U.S. Dist. LEXIS 160179,

5

at *37 (holding that "Plaintiffs purchased pre-assembled vehicles from Hyundai; Plaintiffs did not purchase the plastic used to create the vehicle's door handles, the screws holding the transmission together, or the paint used on the car" and reasoning that while "there may be multiple consumer goods that compose the vehicle, to parse the inquiry so finely as to whether each of the individual components is itself merchantable would create absurd results."). The same reasoning equally applies to the central functionality inquiry of Tesla's duty to disclose. Plaintiffs bought Tesla cars, *not* odometer systems and/or extended warranties. In short, even assuming Tesla had knowledge of a defect in the vehicles (it did not), it cannot be reasonably argued the central function of Plaintiffs' *vehicles* was affected in any way such that Tesla would have a duty to disclose.

Lastly, and equally unavailing, is Plaintiffs' attempt to demonstrate reliance. To plausibly assert an omission-based fraud claim, Plaintiffs must provide representative samples of the materials *they* relied on to make their purchases that failed to include the purportedly withheld information. (Mot. at 6:8-17) (citing *Raynaldo v. Am. Honda Motor Co.*, 2022 WL 4358096, *7-8 (N.D. Cal. 2022); *Williams v. Tesla, Inc.*, 2021 WL 2531177, *7 (N.D. Cal. 2021); *Marolda v. Symantec Corp.*, 672 F.Supp.2d 992, 1002 (N.D. Cal. 2009); *Sarkesian v. Ford Motor Co.*, 2023 WL 2994117, *7 (S.D. Cal. 2023); *Eisen v. Porsche Cars N. Am., Inc.*, 2012 WL 841019, *3 (C.D. Cal. 2012)). Plaintiffs remarkably claim that they have met their burden here of alleging reliance because they alleged "consumers looked to the materials that should have contained the information prior to purchase or making warranty decisions." (Opp. at 8:21-23). It is entirely irrelevant what *other consumers* have viewed before buying *their* cars. *Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1093 (D. Ariz. 2021) (courts "generally consider only the claims of a named plaintiff in ruling on a motion to dismiss a class action complaint prior to class certification."). The two named Plaintiffs here—Leon and Hinton—have not alleged reviewing any materials from Tesla prior to purchasing their used Tesla vehicles from third party dealers such that had the allegedly omitted information been disclosed, thy would have been aware of it and behaved differently. (*See* SAC ¶¶ 66-74 (Leon) and ¶¶ 75-102 (Hinton)). Plaintiffs' failure to adequately allege reliance on any materials from Tesla is a separate and independent reason to dismiss all their fraud-based claims.

### III.    <u>PLAINTIFFS' BREACH OF CONTRACT CLAIM REQUIRES DISMISSAL FOR SEVERAL REASONS.</u>

Plaintiffs' arguments for salvaging the breach of contract claim here are equally futile.  As a threshold matter, the only "contract" Plaintiffs allege they entered with Tesla is the Basic Vehicle Limited Warranty ("BVLW") that came with the car, which covers "defects in the materials or workmanship" and provides coverage for 4 years or 50,000 miles.  (SAC ¶¶ 44, 164-65 & p.9).  Thus, whether the claim is couched as a breach of contract claim or a breach of warranty claim is a play on semantics.  (*See* Opp. at 9:28-10:2).

Second, and importantly, there can be no breach of contract here where Tesla has fulfilled its promise exactly as outlined in the BVLW.  Plaintiffs argue again, without any support, that "the class vehicles lose warranty coverage quicker than they should" due to the purported odometer issue. (Opp. at 10:8-11).  Putting aside the issues discussed in Section II relating to the lack of any plausible facts to support Plaintiffs' "defect" theory of faulty odometer measurements for mileage traveled by the subject vehicles, neither Plaintiff alleges he or she actually tried to use the BVLW for a *covered* vehicle repair and were denied a repair by Tesla due to prematurely lapsed warranty coverage.  As outlined in the Motion, Plaintiff Leon does not allege presenting his car to Tesla for repair at all (SAC ¶¶ 66-74) and Plaintiff Hinton presented his car for repair due to a collision, not a defect in material or workmanship (*id.* ¶¶ 90-95 & Carr Decl. Ex. A & B to Motion & RJN at 3-4).[4]

Lastly, Plaintiffs argue (albeit mistakenly), that "this is a class claim – not a claim brought uniquely by Plaintiff Leon" (Opp. at 10:12) and "this is a class claim – not a claim brought solely by Plaintiff Hinton" (Opp. at 11:20-21) and therefore arguments about Plaintiffs and their breach of contract claims are best for Rule 23 adequacy and typicality and "are appropriate at class certification—not a motion to dismiss" (*id.* at 11:21-12:1).  According to Plaintiffs, they "have alleged that they *and Class Members* were denied warranty coverage when 'Tesla refused to cover maintenance on Plaintiffs' *and Class Members' vehicles'* that would have been covered under the

---

[4] As discussed in FN. 1, *supra*, Plaintiffs did not oppose Tesla's separately filed Request for Judicial Notice in support of the Motion (Dkt. 24), and have therefore waived any arguments for admission of the documents Tesla sought judicial notice of, including the correspondence between Plaintiff Hinton and the Tesla service center employee.

applicable warranties had the odometer counted miles correctly." (Opp. at 10:12-15) (citing SAC ¶ 163, 166). This again ignores the basic premise of any class action case that courts consider "only the claims of a named plaintiff in ruling on a motion to dismiss a class action complaint prior to class certification." *Hannibal-Fisher*, 523 F. Supp. 3d at 1093. It is entirely irrelevant what other putative Class Members experienced in connection with their vehicles. The focus here is on Plaintiffs Leon and Hinton only, and they have not adequately alleged a breach of contract claim. For these reasons and those addressed in Tesla' Motion, the breach of contract claim fails and requires dismissal.

## IV. PLAINTIFF HINTON'S CLAIMS HAVE NO CONNECTION TO CALIFORNIA OTHER THAN HINTON CURRENTLY LIVING HERE.

The Opposition acknowledges Plaintiff Hinton was living in Pennsylvania when he bought his used Tesla from a non-Tesla dealership in Georgia. (Opp. at 13:1-17); (*see also* SAC ¶ 77). Yet Plaintiffs insist that "because Plaintiff Hinton is a California resident, California has an interest in having their law applied to its resident claimants, and [because] the wrongful events that serve as the basis of Plaintiff Hinton's claims vastly occurred in California, Plaintiff Hinton has standing to sue in California." (Opp. at 14:1-3). But the events giving rise to Plaintiffs' claims here did *not* vastly occur in California—they occurred in Pennsylvania and Georgia. And Plaintiff Hinton's *current* residency in California is wholly irrelevant.

*First*, unless the legislature explicitly indicates otherwise, "if the liability-creating conduct occurs outside of California, California law generally should not govern that conduct." *Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1047 (C.D. Cal. 2019) (citing *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018)). This includes claims under the UCL and CLRA. *Id.* The SAC is crystal clear in alleging that Plaintiff Hinton has had the most connection to the State of Pennsylvania with his Tesla vehicle purchase—not California. Indeed, Plaintiff Hinton, a Pennsylvania State University graduate (SAC ¶ 76), was living in Pennsylvania in December 2022 when he purchased the used 2020 Tesla Model Y from IQautos located in Georgia (*id.* ¶ 77), and he took possession of the vehicle in Pennsylvania on December 14, 2022 (*id.* ¶ 78). Importantly, Plaintiff Hinton alleges that as "part of this transaction" which took place *outside of California* while

he was living in Pennsylvania, he received from Tesla numerous warranties. (*Id.* ¶ 80). He further claims that in "connection with the purchase of the vehicle" which took place *outside of California* while he was living in Pennsylvania, "Tesla expressly or impliedly represented to Plaintiff Hinton that his Tesla Vehicle's odometer would accurately record the number of miles traveled by the vehicle. (*Id.* ¶ 81). All the claims in the SAC are born not through any activities that occurred in California, but because of the primary events that allegedly occurred when Plaintiff bought his car while living in Pennsylvania, *outside California*. While Tesla denies it is liable under any of the six causes of action for a plethora of reasons as discussed in its Motion, they each can be asserted, if at all, in light of the vehicle purchase Plaintiff Hinton made while living outside California. For example, any negligent misrepresentation or unfair business practice would have occurred at the time Plaintiff Hinton purchased his car while living in Pennsylvania, not years later when he moved to California. After all, Plaintiff Hinton claims he "would not have purchased Tesla Vehicles, or would have paid less for Tesla Vehicles and their accompanying warranties, without such statements and/or omissions made by Tesla" (SAC ¶ 144)—but such a choice could only have been made at the time of Plaintiff Hinton's vehicle purchase transaction when he was living *outside* of California. Indeed, Plaintiff is unambiguously that whatever "damage" he sustained originated at the point and time of sale, all of which occurred outside California. (SAC ¶ 7) (""*At the time of purchase*, consumers reasonably believe that Tesla's odometer system accurately tracks miles driven" and that this "undisclosed failure to do so impact everything *from the consumer's decision to purchase the car, to the value of the car and any accompanying warranties ....*") (emphasis added.)

*Second*, "a plaintiff's residence alone is not sufficient to bring claims under [California law] where the injuries occur outside of California." *Terpin*, 399 F. Supp. 3d at 1047 (holding that UCL and CLRA claims could not be brought by plaintiff because he did not adequately allege that the liability-creating conduct occurred in California or how his California statutory claims apply extraterritorially). The fact that Plaintiff Hinton chose to relocate from Pennsylvania to California and continue driving his Tesla in California therefore has no bearing on the applicability of California law to his claims. If this were not the case, Plaintiff Hinton could move to any state and invoke the laws of those States, even though there has been zero connection between those States

1   and Plaintiff Hinton's Pennsylvania and Georgia based used Tesla vehicle purchase. This would
2   create absurd results and would render meaningless the caselaw that dictates against the
3   extraterritorial application of California law to claims like those asserted here.

4       In short, "California law embodies a presumption against the extraterritorial application of
5   its statutes" (*In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1076
6   (N.D. Cal. 2011)) and the fact that Plaintiff Hinton simply resides here now does not change the
7   analysis. Plaintiff Hinton's claims must all be dismissed.

## V.   THE UCL, FAL, CLRA, AND UNJUST ENRICHMENT CLAIMS SEPARATELY FAIL FOR A HOST OF REASONS.

10      While the Opposition attempts to save Plaintiffs' UCL, FAL, CLRA, and unjust enrichment
11  claims from dismissal (Opp. Sec. III.D.), each of the arguments advanced by Plaintiffs are easily
12  dispelled by both case law and the allegations in the operative SAC.

13      *First*, Plaintiffs cannot seek equitable relief under the UCL, FAL, CLRA, or unjust
14  enrichment since they admit they have adequate legal remedies (Opp. at 18:15-25) and do not allege
15  in the SAC they lack adequate legal remedies, as required. (Mot. at 13:7-14:20). Nor can they.
16  Instead, they look past the core holding of the 9th Circuit's decision in *Sonner v. Premier Nutrition
17  Corp.*, 971 F.3d 834 (9th Cir. 2020) and argue they can allege "'legal and equitable claims in the
18  alternative'" (Opp. at 14:18-22) and under the UCL, FAL, and CLRA, they "are entitled to
19  restitution and injunctive relief" (*id.* at 15:5-6). But Plaintiffs are in *federal court* in a diversity
20  action. Indeed, "'[t]hat a State may authorize its courts to give equitable relief unhampered by' the
21  'restriction[]' that an adequate remedy at law be unavailable 'cannot remove th[at] fetter[] from the
22  federal courts.'" *Sonner*, 971 F.3d at 843-44 (holding "the traditional principles governing equitable
23  remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party
24  requests restitution under the UCL and CLRA in a diversity action."). Plaintiffs do not even attempt
25  to allege that they lack an adequate remedy at law such that they can seek equitable relief. *See also,
26  e.g.*, *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009) ("equitable relief is not
27  appropriate where an adequate remedy exists at law."). Since the 9th Circuit's binding authority
28  from *Sonner* squarely applies here, it forecloses Plaintiffs' claims for equitable relief under the UCL,

1    FAL, CLRA, and unjust enrichment.

2         Separately for Plaintiffs' UCL claim, they seek injunctive relief and restitution, which are

3    the only remedies available under the UCL.  *In re Sony Gaming Networks & Customer Data Sec.*

4    *Breach Litig.*, 903 F. Supp. 2d 942, 970 (S.D. Cal. 2012).  But Plaintiffs have not alleged any "threat

5    of impending harm …."  *Castillo v. Seagate Tech., LLC*, 2016 U.S. Dist. LEXIS 187428, at *25

6    (N.D. Cal. Sep. 14, 2016).  Nor have they alleged facts to entitle them to restitution.  Restitution

7    would require Tesla to "return money obtained through an unfair business practice to those persons

8    in interest from whom the property was taken."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29

9    Cal. 4th 1134, 1144-45 (2003); *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 952-53

10   (N.D. Cal. 2018) (dismissing restitution claim because plaintiff did not allege how Google got

11   money as a result of purchases from the product manufacturer and retailer).  Plaintiffs do not allege

12   they paid any money to Tesla in connection with their used car purchases.  Thus, there is no money

13   to be returned, and their restitution claim fails.  The UCL claim separately fails for want of a remedy.

14        *Second*, Plaintiffs' arguments regarding Tesla's pre-sale knowledge of the purported

15   odometer "defect" fail for the same reasons already discussed in Section II, *supra*.  Additionally,

16   Plaintiffs' other allegations in the SAC such as Tesla's "technical ability to measure … distances

17   travelled by its Tesla Vehicles with incredible precision" (Opp. at 17:8-10) (citing SAC ¶ 53) and

18   that "Tesla designed the odometer system that utilizes other factors besides pure distance traveled

19   to determine mileage" (Opp at 17:10-12) (citing SAC ¶¶ 54-55) also do not demonstrate Tesla's

20   knowledge of a "defect" in the odometer system or knowledge that the odometer systems in

21   Plaintiffs' subject vehicles were different from the odometer systems in other non-Tesla vehicles.

22   These unremarkable facts simply confirm that Tesla designed sophisticated vehicles with state-of-

23   the-art technology—they are not evidence or well-pled facts of knowledge of a defect in the subject

24   vehicles or their odometer systems at the point and time of Plaintiffs' vehicle purchases.

25        *Third*, Plaintiffs have yet to identify any "unfair" conduct under the UCL.  "Under the

26   unfairness prong of the UCL, a practice may be deemed unfair even if not specifically proscribed

27   by some other law."  *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1115

28   (N.D. Cal. 2015) (citing *Korea Supply Co.*, 29 Cal. 4th at 1143) (internal quotation marks omitted).

1    Under the "balancing test" analyzed in Tesla's Motion, "courts analyze whether the alleged business

2    practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers'

3    and 'weigh the utility of the defendant's conduct against the gravity of the harm to the alleged

4    victim.'" *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1091 (N.D. Cal. 2018). Plaintiffs fail to

5    state with reasonable particularity any facts showing how their purchase of used Teslas from third

6    party non-Tesla dealerships, followed by what they believe was a discrepancy in logged mileage by

7    their vehicles' odometer systems, without any plausible facts to demonstrate the Subject Vehicles'

8    odometer systems operate differently from other vehicles' odometer systems, constitutes any of

9    these descriptions. The Opposition merely repeats the same conclusory allegations from the SAC

10   (Opp. at 18:6-14) as the basis for its unfairness analysis, divorced of any plausible factual support

11   for their self-diagnosed "defect" theory relating to the Subject Vehicles' odometer system.

12       *Fourth*, Plaintiffs once again point to *other* owners of putative Class Vehicles to try to

13   demonstrate actual damages for their CLRA claim. (Opp. at 18:20-25). Rather than identify the

14   specific damages Plaintiffs themselves have incurred in connection with the alleged odometer

15   "defect" and Tesla's purported "fraud," they point once again to unknown and yet-to-be-identified

16   putative "Class Members" to argue they have incurred out-of-pocket expenses on vehicle

17   maintenance and repairs. (*Id.* at 18:23-25). These allegations do not save their CLRA claim.

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1  VI.    **CONCLUSION**

2         For the foregoing reasons and those discussed in Tesla's Motion, the Court should dismiss

3  Plaintiffs' SAC.   And because Plaintiffs have now had *three* opportunities to plead their best

4  possible case, and have fallen short, they should not be given a fourth bite at the apple to amend

5  their SAC yet again.   Tesla respectfully asks that its Motion be granted and the SAC be dismissed

6  in full without any further leave to amend.

7

8  DATED: February 2, 2026                    TESLA, INC.

9

10                                      By:   */s/ Aengus H .Carr*

11                                            Aengus H. Carr
                                              Attorney for Defendant, TESLA, INC.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

**Local Rule 11-6.1 Certification**

The undersigned, counsel of record for Tesla, Inc., certifies that this brief contains 4,953 words, which complies with the word limit of L.R. 11-6.1.


DATED:  February 2, 2026                TESLA, INC.


                                    By:  */s/ Aengus H .Carr*
                                         Aengus H. Carr
                                         Attorney for Defendant, TESLA, INC.