UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NYREE HINTON,

Plaintiff,

v.

TESLA, INC. et al,

Defendants.

Case No.: 2:25-cv-02877-MEMF-JC

**ORDER GRANTING IN PART MOTION TO DISMISS AND GRANTING IN PART REQUEST FOR JUDICIAL NOTICE [DKT. NOS. 22, 24]**

Before the Court are a Motion to Dismiss and Request for Judicial Notice filed by Tesla, Inc. Dkt. Nos. 22 ("Motion"), 24 ("RJN"). For the reasons stated herein, the Court GRANTS IN PART the Motion and GRANTS in Part the RJN.

/ / /

/ / /

/ / /

/ / /

# I. Background

## A. Factual Background[1]

### i. The Parties

Plaintiff Nyree Hinton is a citizen of the State of California and a resident of Los Angeles. 2AC ¶ 12. Plaintiff Anthony Leon is a citizen of the State of California and a resident of Thousand Oaks. *Id.* ¶ 13. Tesla Motors, Inc.—is a Texas corporation that had its principal place of business in Palo Alto, California, from approximately 2003 until December 1, 2021, at which point it moved its principal place of business to Austin, Texas. *Id.* ¶ 14. Tesla sells used and new vehicles as well as offers financing and leasing programs for its vehicles, and it purportedly covers these vehicles with various warranties that cover repairs and replacements necessary to correct defects in the materials or workmanship of parts manufactured or supplied by Tesla. *Id.* ¶ 29.

Plaintiffs Hinton and Leon purchased, and now own Tesla Vehicles designed, manufactured, and marketed by Tesla containing an odometer system that over-represented the actual number of miles traveled. *Id.* ¶¶ 12-13.

### ii. Tesla's Warranties

Tesla provides certain warranties for its new and used vehicles. *Id.* ¶ 41. Tesla provides warranties for certain factory defects and separate warranty coverage terms for certain parts, conditions, and repairs. *Id.* ¶ 42. Each warranty includes prescribed warranty periods based on usage time and/or an upper limit for mileage. *Id.* All new Tesla Vehicles are covered by a New Vehicle Limited Warranty ("New Vehicle Warranty"), which is a package of several warranty areas, such as the Basic Vehicle Limited Warranty ("Basic Warranty"), the Supplemental Restraint System Limited Warranty ("Supplemental Warranty"), the Battery and Drive Unit Limited Warranty ("Battery and Drive Unit Warranty"); the Body and Rust Limited Warranty ("Body and Rust"), and the Zero-Emissions Vehicle Limited Warranties ("Zero-Emissions"). *Id.* ¶ 44. All used Tesla Vehicles purchased directly from Tesla are covered by shorter of either the remainder of the four (4) years or

---

[1] Except as otherwise indicated, the following factual background is derived from Plaintiffs' Second Amended Complaint. Dkt. No. 21 ("2AC"). The Court includes these allegations only as background and makes no finding on whether they are true.

50,000 miles left on the Basic Warranty. *Id.* ¶ 46. Tesla warranties may be voided under certain circumstances including but not limited to failing to comply with any recall advisories, install software updates, or make repairs as well as exceeding load limits. *Id.* ¶ 51.

The mileage reflected on Tesla Vehicles' odometer system that determines whether a Tesla Vehicle is within the applicable warranty mileage limits. *Id.* ¶ 52.

iii. Tesla's Odometer System

Tesla has the technical ability to measure, and does measure, distances traveled by its Tesla Vehicles with incredible precision. *Id.* ¶ 53. Tesla misrepresents the mileage driven by Tesla Vehicles by way of an odometer system ("Tesla's Odometer System") that unlike traditional vehicles, utilizes a series of other factors, inputs, and metrics to determine mileage traveled. *Id.* ¶ 54. Tesla's Odometer System integrates data from GPS sensors, energy consumption readings, and historical driving patterns to display distance traveled. *Id.* ¶ 55. Tesla's Odometer System readings are not direct physical measurements of distance traveled, but rather, estimates derived from these various aforementioned sensor inputs and calculations that do not provide an accurate and immutable measurement of miles traveled. *Id.* ¶ 56. These inputs and calculations, made without disclosure to consumers, deviate significantly from the commonly accepted function of an odometer as an accurate and immutable record of miles traveled. *Id.* ¶ 57. Software updates that Tesla pushes out to its Tesla Vehicles may relate to and/or impact the odometer system, including how mileage is calculated. There have been several software updates during the Class Period. *Id.* ¶ 58.

iv. Discrepancies Between Real-World Data and Tesla's Odometer System

Tesla's Odometer System inflates the mileage traveled by Tesla Vehicles. *Id.* ¶ 59. An analysis of Tesla Vehicle data, including charging logs, energy efficiency metrics, and odometer readings, demonstrates significant discrepancies between reported mileage and actual distance traveled. *Id.* ¶ 60. Tesla's reliance on predictive algorithms, energy consumption metrics, and software recalibrations contributes to these discrepancies and undermines the accuracy of the odometer readings in Tesla Vehicles. *Id.* ¶ 61. Tesla failed to inform consumers that Tesla Vehicles' odometers do not function like commonly accepted odometers, but instead rely on a variety of factors, predictive algorithms, and metrics that result in routine overestimation of the mileage

traveled by the vehicle. *Id.* ¶ 62. In some cases, like that of Plaintiff Hinton, the Tesla Odometer System can overstate the actual miles traveled by well over fifteen (15) percent, which far exceeds the four (4) percent industry standard tolerance for measures of inaccuracy in odometers under normal conditions. *Id.*

The Tesla Odometer System overestimates mileage through computer software and/or an electronic or mechanical device or devices, that alter the odometer system's performance by an amount beyond industry standard tolerances for measures of inaccuracy in odometers. *Id.* ¶ 63. Tesla's odometer discrepancies are not isolated incidents but rather systemic issues affecting a broad class of consumers. *Id.* ¶ 64. Due to Tesla's over-registration of miles traveled in Tesla Vehicles, Plaintiffs allege that owners of Tesla Vehicles are deprived of the benefits of their bargains in purchasing and financing Tesla Vehicles, because: (i) they experience premature expiration of warranties tied to mileage thresholds and must then pay out-of-pocket for costly repairs; (ii) they prematurely purchase extended warranties; (iii) they experience diminished resale value of Tesla Vehicles; and (iv) they believe, based on the odometer system reading, that they are traveling further than they actually are in between charges. *Id.*

Tesla reaped, and will continue to reap, financial benefits in the form of (i) warranty repair savings; (ii) increased revenue generated by consumers who have to pay for repairs that would otherwise be under warranty; and/or (iii) increased sales of extended warranties, all to the financial detriment of Tesla Vehicle owners. *Id.* ¶ 65. The resale value of the vehicles owned by consumers also has been (and will continue to be) diminished. *Id.*

**B. Procedural History**

On February 10, 2025, Plaintiffs filed suit against Tesla in the Los Angeles County Superior Court. Dkt. Nos. 1-1 to -2. On April 2, 2025, Tesla removed the action to this Court. Dkt. No. 1.

On August 1, 2025, Plaintiffs filed a First Amended Complaint. Dkt. No. 17. On August 28, 2025, Plaintiffs filed a Second Amended Complaint. 2AC. The Second Amended Complaint alleged: (1) Unjust Enrichment/Restitution; (2) Negligent Misrepresentation; (3) Violation of California Business & Professions Code Section 17200; (4) Breach of Contract; and (5) Violation of California Consumer Legal Remedies Act ("CLRA"). *See generally id.*

On September 12, 2025, Tesla filed the instant Motion and RJN. Motion; RJN. On September 26, 2025, the Court granted the parties' stipulation to modify the briefing schedule on Tesla's Motion. Dkt. Nos. 26-27. Per the Court's Order, Plaintiffs' Opposition was due on January 12, 2026, and Tesla's Reply was due on February 5, 2026. Dkt. No. 27. On January 12, 2026. Plaintiffs filed an Opposition. Dkt. No. 31 ("Opposition"). On February 2, 2026, Tesla filed a Reply. Dkt. No. 32 ("Reply").

On February 19, 2026, the Court held a hearing on the Motion.

## **REQUEST FOR JUDICIAL NOTICE (DKT. NO. 24)**

### **I. Applicable Law**

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

On a motion to dismiss, courts are generally prohibited from "consider[ing] any material beyond the pleadings." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee*, 250 F.3d at 688). Courts generally only consider the complaint and other materials "submitted with and attached to the Complaint." *Id.* at 999. Documents not attached to the complaint—including documents that might otherwise be subject to judicial notice—may only be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006)).

### **II. Discussion**

In support of its Motion, Tesla requests the Court judicially notice four (4) documents. RJN at 2. The requests are listed below (with descriptions based on Tesla's description of the documents):

1. Exhibit A – A true and correct copy of a Tesla repair order dated January 24, 2024, bearing invoice 3000S0009127676A, for a 2020 Tesla Model Y (vehicle

identification number 5YJYGDEE1LF040216) and bates stamped (TESLA_0000095 to TESLA_0000097);

2. Exhibit B – A true and correct copy of Tesla mobile app text messages between Plaintiff Hinton and Tesla Service re January 24, 2024 Repair. These are excerpts from materials produced in discovery and have been modified to make clear which messages are being sent by Plaintiff Hinton and Tesla;

3. Exhibit C – A true and correct copy of an excerpt from the New Vehicle Limited Warranty for Plaintiff Leon's vehicle; and

4. Exhibit D – A true and correct copy of the Tesla engineer report summarizing the results of the inspection of Plaintiff Hinton's vehicle on July 29, 2025, and provided to Plaintiffs that day.

*See* RJN.

Plaintiffs do not object to judicial notice of Exhibits A and C, which are relevant to Tesla's claims and relied on in the 2AC. 2AC ¶¶ 90-91, 95. And because Exhibits A and C are documents whose accuracy and authenticity cannot be reasonably questioned, the Court takes notice of those Exhibits.

Plaintiffs do object to judicial notice of Exhibits B and D to establish the truth of facts contained therein, rather than merely to ascertain information that was in the public record. *See* Opposition at 8 n.2, 11 n.4.

Exhibit B contains excerpts of a text exchange between Plaintiff Hinton and Tesla. Dkt. No. 23-2. As Exhibit B includes a *part* of the exchange, Plaintiffs argue that the Court does not have full understanding of the exchange. Opposition at 11, n.4. Because Plaintiffs do not contest the accuracy or authenticity of the excerpts, pursuant to Fed. R. Evid. 201(b), the Court will grant Tesla's RJN for Exhibit B only for the purposes of showing information is authentic and whose accuracy cannot reasonably be questioned. The Court does not take notice of the disputed facts therein.

Exhibit D is an engineering report related to Plaintiff Hinton's vehicle inspection. Dkt. No. 23-4. Since the report was prepared by Tesla, Plaintiffs assert that its accuracy and authenticity can be reasonably questioned. Opposition at 8 n.2. Tesla responds that the report derived from an

expert's inspection at the expert's facility, and the report relies on vehicle data readily available. Because Plaintiffs do contest the accuracy or authenticity of the excerpts and there is no showing that the numerical quantities in the report derived from Plaintiff Hinton's vehicle (i.e. evidence of the vehicle itself illustrating the odometer amount), pursuant to Fed. R. Evid. 201(b), the Court will deny Tesla's RJN for Exhibit D.

### III. Conclusion

Accordingly, the Court GRANTS in Part Tesla's Request for Judicial Notice as to Exhibits A-D and ORDERS as follows:

1. The Court judicially notices Exhibit A;
2. The Court judicially notices Exhibit B but not the disputed facts contained therein;
3. The Court judicially notices Exhibit C; and
4. The Court does not judicially notice Exhibit D.

## MOTION TO DISMISS (DKT. NO. 31)

### I. Applicable Law

#### A. Failure to State a Claim

Tesla brings its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Federal Rule of Civil Procedure 12(b)(6) allows a party to seek to dismiss a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Labels, conclusions, and "formulaic recitation of a cause of action's elements" are insufficient. *Twombly*, 550 U.S. at 545.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Soo Park v. Thompson*, 851 F.3d 910, 918

(9th Cir. 2017); Lee, 250 F.3d at 679. But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## II. Discussion

Tesla argues that Plaintiffs have failed to state a claim for relief as to the following claims: (1) Unjust Enrichment/Restitution; (2) Negligent Misrepresentation; (3) Violation of California Business & Professions Code Section 17200; (4) Breach of Contract; and (5) Violation of California Consumer Legal Remedies Act ("CLRA"). *See generally* Motion. For the reasons stated below, the Court finds that Plaintiff has sufficiently stated claims upon which relief can be granted on all claims except for their Negligent Misrepresentation and Breach of Contract claims.

### A. Only Plaintiffs' Negligent Misrepresentation Claim Is Subject to Rule 9(b)'s Heightened Pleading Standards.

Tesla contends that "[a]ll of Plaintiffs' claims" sound in fraud, thereby being subject to Rule 9(b)'s heightened pleading standard. Motion at 4-7; Reply at 2-3. Plaintiffs respond that Tesla mischaracterizes their allegations, which "describe non-fraudulent conduct" that should be reviewed under Rule 8 pleading standards. Opposition at 4-7.

When a party claims "fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011) (explaining the "heightened pleading standard of Rule 9(b)" and how fraud must state with particularity the circumstances constituting fraud).

This action derives from Tesla's failure to "inform consumers that Tesla Vehicles' odometers do not function like commonly accepted odometers," which resulted in inflated mileage and accelerated warranty expirations. 2AC ¶¶ 52-58, 62-65. Tesla emphasizes that "Plaintiffs allege that tesla has concealed" the odometer's function from consumers, which supports an inference of fraud.

Motion at 5. The 2AC, however, only alleges concealment under the Negligent Misrepresentation claim. 2AC ¶ 139. As concealment infers Tesla's intent and knowledge to misrepresent the odometer's function and warranties, Plaintiffs' Negligent Misrepresentation claim is subject to Rule 9(b). *Cafasso*, 637 F.3d at 1054-55.

Plaintiffs' remaining claims for Unjust Enrichment/Restitution, Violation of California Business & Professions Code Section 17200, Breach of Contract, and Violation of California Consumer Legal Remedies Act ("CCLRA") are predicated on Tesla's failure to disclose. 2AC ¶¶ 133-80; Opposition at 4-7. Tesla contends that the 2AC includes "fraud-based" allegations, pointing to paragraph 139 of the 2AC where Plaintiffs state that Tesla "omitted and concealed material facts." Motion at 4-6; Reply at 2-3. As stated, the alleged concealment is only a part of Plaintiffs' negligent misrepresentation claims. Plaintiffs' Unjust Enrichment/Restitution and Violation of Business & Professions Code Section 17200 causes of action assert that Tesla did not inform consumers of its odometer system but do not posit Tesla's conduct involved concealment or a fraudulent intent. 2AC ¶¶ 125-32, 146-53. The Breach of Contract claims pertain to Tesla's refusal to provide Class Members services pursuant to the warranty coverages without reference to concealment. *Id.* ¶¶ 162-70. And the CCLRA claim concerns Tesla's failure to disclose the odometer system functions. *Id.* ¶¶ 171-80. In sum, these claims do not allege fraud or mistake under the meaning of Rule 9(b) and thus, are not subject to Rule 9(b).

### B. Plaintiff Hinton Has Standing to Sue in California.

Tesla argues that Georgia's and Pennsylvania's interests outweigh California because Hinton was living in Pennsylvania and purchased the vehicle in Georgia and thus, Hinton lacks standing in California. Motion at 9-13; Reply at 8-9. Plaintiffs explain that Tesla mischaracterizes their claims, and California has a significant interest "in having their law applied to their resident claimants." Opposition at 12.

"California law may only be used on a classwide basis if 'the interests of other states are not found to outweigh California's interest in having its law applied.'" To determine whether the interests of other states outweigh California's interest, the court looks to a three-step governmental interest test:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.
>
> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.
>
> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590 (9th Cir. 2012) (citing *McCann v. Foster Wheeler LLC,* 105 Cal. Rptr. 3d 320, 378 (Cal. Ct. App. 2010) (citations and quotations omitted)), *overruled on other grounds in Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 (9th Cir. 2022).

Here, it is undisputed that consumer protection laws of California, Georgia, and Pennsylvania vary. Motion at 10; Opposition at 13. First, the intent to deceive is not required for California's UCL and CLRA, and Georgia's Uniform Deceptive Trade Practices Act—but Pennsylvania requires knowledge or reckless disregard. *Mazza*, 666 F.3d at 591 (citing *Debbs v. Chrysler Corp.*, 810 A.2d 137, 155 (Pa. Super. Ct. 2002); Ga. Code Ann., § 10-1-372, § 10-1-373 (requiring neither "actual confusion or misunderstanding" or "intent to deceive"). Second, California and Pennsylvania require reliance under consumer protection laws, *Mazza*, 666 F.3d at 591; *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1100 (C.D. Cal. 2012), whereas Georgia requires a likelihood to be damaged finding, *see* Ga. Code Ann. § 10-1-373. Third, the statute of limitations for California's CLRA is three (3) years, Georgia's consumer protection law is four (4) years, and Pennsylvania's is six (6) years. *See In re Toyota Motor Corp.*, 785 F. Supp. 2d 925, 933 (C.D. Cal. 2011); *Gianino*, 846 F. Supp. 2d at 1101. Finally, remedies differ under each state's consumer protection laws. *See* Cal. Civ. Code § 1780(a)(1)-(5) (providing actual damages of at least $1,000); Cal. Bus. & Prof. Code § 17203 (providing restitution or injunctive relief); *Gianino*, 846 F. Supp. 2d at 1101 (California provides only equitable or restitution); *Mazza,* 666 F.3d at 591 (finding that Pennsylvania provides treble

damages and California does not). Taken together, the relevant law of each potentially affected jurisdiction is different.

"California recognizes that 'with respect to regulating or affecting conduct *within its borders*, the place of the wrong has the predominant interest.'" *Mazza*, 666 F.3d at 593 (citing *Hernandez v. Burger*, 162 Cal. Rptr. 564, 568 (Cal. Ct. App. 1980)) (emphasis added). Tesla claims California's interests are minimal because Plaintiff Hinton, while living in Pennsylvania, purchased his used Tesla Vehicle from a car dealer in Georgia. Motion at 11; Reply at 8-9; 2AC ¶ 77. Tesla posits that the alleged misrepresentations occurred during his purchase, implicating Pennsylvania and Georgia. However, the gravamen of Plaintiff Hinton's claims are the misrepresentation *and* the subsequent mileage accumulation *and* premature warranty expirations. Opposition at 13; 2AC ¶¶ 4, 5, 7, 127-28, 130, 144, 150, 159, 169, 179. He received more Tesla services in California than Pennsylvania and Georgia, 2AC ¶¶ 83-85, accumulated more miles in California than Pennsylvania and Georgia, *id.* ¶¶ 83, 89, and was denied warranty coverage in California, *id.* ¶¶ 89-90. In sum, Plaintiff Hinton is a California resident and the pertinent circumstances and last event giving rise to this action occurred in California. *Mazza*, 666 F.3d at 593 ("California considers the 'place of the wrong' to be the state where the last event necessary to make the actor liable occurred.").

Accordingly, California's interests predominate, and Plaintiff Hinton has standing to sue in California.

### C. Plaintiffs Sufficiently Plead a Claim for Unjust Enrichment/Restitution.

Tesla contends that Plaintiffs did not plead an inadequate remedy at law, foreclosing equitable relief. Motion at 13-14; Reply at 10-11. Plaintiffs respond that a complaint may set forth legal and equitable claims. Opposition at 14.

Under California law, there is no "standalone cause of action" for unjust enrichment, but when a plaintiff makes such a claim, "a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citation omitted). Unjust enrichment is "just a restitution claim." *De Havilland v. FX Networks, LLC*, 230 Cal. Rptr. 3d 625, 646 (Cal. Ct. App. 2018). Restitution "will be denied where

application of the doctrine would involve a violation or frustration of the law or opposition to public policy." *McBride v. Boughton*, 20 Cal. Rptr. 3d 115, 122 (Cal. Ct. App. 2004).

The 2AC alleges that the odometer system overstates mileage, 2AC ¶ 63, which results in "prematurely expired" warranties, *id.* ¶¶ 129-30. With prematurely expired warranties, Plaintiffs claim that Tesla "has been unjustly enriched" by retaining the revenue from vehicle and warranty purchases, as well as repairs no longer covered by warranties. *Id.* In a consumer misrepresentation action, an unjust enrichment claim on the theory alleged here, i.e., that the defendant was unjustly enriched through a failure to disclose material information, the Court may construe the claim as a quasi-contract claim for restitution. *See Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

In *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), the Ninth Circuit held that a party "must establish that [the party] lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." *Id.* at 844. The 2AC lacks allegations discussing an inadequate remedy at law. *See generally* 2AC. In their Opposition, Plaintiffs claim that they alleged adequate facts for equitable relief and that a party can allege "legal and equitable claims in the alternative." Opposition at 14; *see id.* (citing 2AC ¶¶ 7, 11, 65, 112, 129, 136, 150, 151, 155, 177, 179). Although their citations to the 2AC do not explain an inadequate remedy at law, *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015) holds that a party may set out two or more statements of a claim or defense alternatively. There, the plaintiff alleged unjust enrichment based on the defendant's false and misleading labeling, which the Ninth Circuit held was not subject to dismissal. *Id.* Here, Plaintiffs similarly allege that by failing to disclose the odometer system's function, Tesla was unjustly enriched through Plaintiffs' purchase of Tesla's vehicles and warranties, and Plaintiffs' payment for uncovered repaired costs. 2AC ¶¶ 7, 125-32. As a result, despite the fact that Plaintiffs do not allege an inadequate remedy under *Sonner*, Plaintiffs are permitted to plead in the alternative as concluded in *Astiana*. *Astiana*, 783 F.3d at 762-63. Therefore, concludes that Plaintiffs sufficiently plead their Unjust Enrichment/Restitution claim.

Accordingly, the Motion is DENIED as to Plaintiffs' Unjust Enrichment/Restitution claim.

**D. Plaintiffs Do Not Sufficiently Plead a Claim for Negligent Misrepresentation.**

Tesla asserts that the 2AC fails to sufficiently plead an omission theory for a Negligent Misrepresentation claim because Plaintiffs "plead no facts to establish Tesla knew of any issue when Plaintiffs purchased their used cars." Motion at 14-15; Reply at 3. Plaintiffs argue that they sufficiently pled Rule 9(b) particularity requirements under *Cafasso*. Opposition at 5-6.

To meet Rule 9(b)'s particularity standard, "a pleading must identify 'the who, what, when, where, and how of the misconduct charged[.]'" *Cafasso*, 637 F.3d at 1055.

i. Plaintiffs Adequately Plead Tesla's Misconduct Under *Cafasso*.

The elements of negligent misrepresentation are: "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *B.L.M. v. Sabo & Deitsch*, 64 Cal. Rptr. 2d 335, 342 (Cal. Ct. App. 1997 (internal quotation marks omitted).

Tesla suggests that Plaintiffs' allegations are conclusory because: (1) they do not set forth the who, what, when, where, and how of their negligent misrepresentation action; (2) they do not cite any fact indicating that the odometers function as alleged in the 2AC; and (3) "there is not a single allegation in the 2AC demonstrating that Tesla knew of a defect" regarding the odometer systems. Motion at 5; Reply at 3-4.

Here, the 2AC does not set forth the *Cafasso* who, what, when, where, and how allegations as to Tesla's negligent misrepresentation. First, the 2AC alleges that Tesla is responsible for the mileage misrepresentations—addressing the "who" requirement. 2AC ¶ 6; *Cafasso*, 637 F.3d at 1055. Second, Plaintiffs contend that Tesla failed to disclose "how the odometer system . . . function[s]," 2AC ¶¶ 54-55, 62, 64-65, as Tesla's written and in-person marketing did not reveal the odometer system's function, *id.* ¶¶ 90, 93, 136— addressing the "what" requirement. Third, the 2AC alleges that Tesla's misrepresentations occurred when: (1) Plaintiffs purchased the vehicles and warranties; (2) Plaintiffs checked the mileage on their vehicles; and (3) seeking repairs, *id.* ¶¶ 64, 73-74, 90-95, 111— addressing the "when" requirement. Lastly, the 2AC states that the misrepresentations were contained in Tesla's marketing materials, operator manuals, and invoices. *Id.* ¶¶ 73-74, 90-93, 136. Thus, Plaintiffs address the "where" and "how" requirements.

Although Plaintiffs appear to address each *Cafasso* requirement, the 2AC does not satisfy *Cafasso*. Specifically, the 2AC does not allege that Tesla *knew* of the odometer system's issues when making the alleged misrepresentations to consumers. While Rule 9(b) particularity standards are relaxed where "matters are within the opposing party's knowledge," the 2AC lacks allegations explicitly asserting that Tesla *knew* about the odometer system's issues. 2AC ¶¶ 53-58; *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir. 1989). The 2AC explains that Tesla did not disclose how the odometer system functioned but not that Tesla *knew* the odometer system *did not properly function*. As such, Plaintiffs' allegations do not satisfy the requirements under *Cafasso*, in particular, the "what" requirement. *See Cafasso*, 637 F.3d at 1055.

Similarly, the 2AC does not satisfy the elements under *B.L.M.* A negligent misrepresentation claim is derived from a misrepresentation and a culpable mental state by the defendant which the plaintiff relied upon and was damaged as a result. *B.L.M.*, 64 Cal. Rptr. 2d at 342. As discussed, the 2AC details the alleged misrepresentation—a failure to disclose how the odometer system functions, 2AC ¶¶ 53-58—satisfying the first element under *B.L.M.* But the 2AC does not sufficiently assert facts regarding Tesla's culpable mental state. The 2AC is absent of allegations establishing Tesla's intent or knowledge as to the misrepresentation. Plaintiffs do not discuss how or if Tesla knew about the malfunctioning odometer system. The 2AC does indicate that online forums discussed "discrepancies between the distances . . . driven and what is reported by the odometers in [] Tesla Vehicles." 2AC ¶ 104. But awareness of consumer complaints does not equate to knowledge or intent to misrepresent and induce reliance. Therefore, the 2AC does not sufficiently allege facts to the second, third, and fourth element under *B.L.M.*

Taken together, the 2AC does not sufficiently allege facts required under *Cafasso* or *B.L.M.*[2] as to their negligent misrepresentation cause of action. The 2AC thus fails to plead a negligent misrepresentation claim with particularity.

---

[2] The Court notes that Plaintiffs posit that they were "deprived of the benefits of their bargains in purchasing and financing Tesla Vehicles"—satisfying the fifth element under *B.L.M.* 2AC ¶ 64; *B.L.M.*, 64 Cal. Rptr. 2d at 342.

ii. Plaintiffs Adequately Plead Tesla's Omissions.

In California, "to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018). The *Hodsdon* court explained that a party has a duty to disclose when the "omission was material," "central to the product's function," and the party is a fiduciary, has exclusive knowledge of the material facts, actively conceals the material facts, or makes misleading partial representations. *Id.* at 863-64.

Tesla claims that Plaintiffs have not sufficiently plead an omission theory because there is not a single fact demonstrating that Tesla knew of a defect in the Subject Vehicles. Motion at 7-8; Reply at 4. Plaintiffs, in response, explain that the 2AC meets the *Hodsdon* standard. Opposition at 9-10.

The 2AC discusses that the omissions were material to Plaintiffs' purchasing decisions as well as their decisions to purchase extended warranties or repair their vehicles. 2AC ¶¶ 90-95 (stating that Plaintiff Hinton decided against repairing Hinton's vehicle due to Tesla's warranty and odometer representations), 144 (asserting that Plaintiffs would not have purchased the Tesla Vehicles and warranties if Tesla did not omit information related to the warranties and odometer system), 152 (detailing the increased repair costs and reduced warranty coverage), 161 (claiming that Tesla's deception was a "substantial reason" that Plaintiffs purchased Tesla Vehicles).

As to the central function clause, Tesla argues that Plaintiffs cannot plausibly plead that the failure to disclose defects renders the vehicles "unusable." Motion at 7; Reply at 5-6. Tesla's argument misinterprets the central function prong. Under *Hodsdon*, the central function prong pertains to "only physical defects . . . that relate to a product's central function and arise during the warranty period." *Hodsdon*, 891 F.3d at 862. Here, the odometer system is a physical defect within the Tesla Vehicles, which calculates the vehicles' mileage and constitutes a central function of repairs and warranties. 2AC ¶¶ 53-65. Therefore, the 2AC adequately pleads the central function prong.

As to the final prong, as discussed, although the 2AC alleges that Tesla designed the odometer system, it lacks any assertion that Tesla possessed knowledge of the alleged system's defects.[3] 2AC ¶ 12. Thus, the 2AC does not adequately plead the final prong.

Taken together and viewing the alleged facts in a light most favorable to Plaintiffs, the Court finds that Plaintiffs failed to adequately plead an omission theory under their Negligent Misrepresentation claim. However, the finds that Plaintiffs could amend the 2AC to plead such knowledge and thus, amendment would not be futile. Fed. R. Civ. P. 15(a).

Accordingly, the Motion is GRANTED as to Plaintiffs' Negligent Misrepresentation claim WITH LEAVE TO AMEND.

**E. Plaintiffs Sufficiently Plead a Claim for Unfair Business Practices Under California Business and Professions Code Section 17200.**

Tesla argues that Plaintiffs "have not stated a plausible" Section 17200 claim as they have yet to identify any unfair conduct or want of remedy. Motion at 16-17; Reply at 11-12. Plaintiffs counter, stating that Section 17200 is broadly applied and the 2AC details Tesla's unfair business practices. Opposition at 17-18.

California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. In California, there are two tests for determining unfairness: (1) the public policy test; and (2) the balancing test. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1170 (9th Cir. 2012). The public policy test requires an unfair practice to be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id.* (citing *Cel-Tech Communications, Inc. v. L.A. Cellular Telephone Co.*, 973 P.2d 527, 543 (Cal. 1999)). The balancing test considers the "impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *Id.* at 1169.

The 2AC alleges violations of 49 U.S.C. §§ 32703(l)-(2), 32710, and California Vehicle Code Section 28050. 2AC ¶ 149. Section 32703(l)-(2) and California Vehicle Code Section 28050

---

[3] In Reply, Tesla asserts that Plaintiffs' belief on how the odometer system works and the fact that Plaintiffs purchased the Subject Vehicles from third parties substantiates the proposition that Plaintiffs have not adequately pleaded knowledge. Reply at 4. As discussed above, as the designers of the odometer system, it is plausible that Tesla has knowledge of the system's function. *Neubronner*, 6 F.3d at 672; *Moore,* 885 F.2d at 540. And purchases from third parties are not pertinent to the issue of knowledge as the odometer system in each Subject Vehicle remains the same.

prohibit the tampering of odometer systems. Tesla claims that Plaintiffs' allegations pertain to the odometer's design and not the subsequent tampering of the odometer. Motion at 16-17. The 2AC, however, alleges "that software updates that Tesla pushes out to its Tesla Vehicles may relate to and/or impact the odometer system, including how mileage is calculated." 2AC ¶ 58. As such, the 2AC sets forth well-pled allegations of tampering. Because the tampering of vehicle systems can substantially impact consumer purchase decisions and injure consumers, Tesla's alleged failure to disclose the odometer's functionality is tethered to a public policy. Therefore, Plaintiffs sufficiently pleaded a UCL violation under the public policy test.

As to the balancing test, Tesla's alleged non-disclosure impacts consumers' vehicle and warranty purchasing decisions, vehicle repair costs as consumers could "pay for warranties that are not as advertised and are required to pay out of pocket for costly repairs that should still be within warranty coverage." Opposition at 18; *see* 2AC ¶¶ 62-64. Tesla has presented no justification for the odometer's functionality, only alleging that Plaintiffs' allegations are based on unfounded speculation. Motion at 17. As discussed, the Court finds that Plaintiffs' allegations have factual support. Taking Plaintiffs' allegations as true, the Court concludes that the alleged harm to Plaintiffs outweigh Tesla's justification and thus, holds that Plaintiffs sufficiently pleaded a UCL violation under the balancing test.

Accordingly, the Motion is denied as to Plaintiffs' UCL claim.

**F. Plaintiffs Sufficiently Plead a Claim for Breach of Contract.**

Tesla contends that Plaintiffs have not met presentation requirements and have not alleged damages. Motion at 8-9. In opposition, Plaintiffs argue that Tesla misstates the core issue of the breach of contract claim. Opposition at 9-11.

The elements of a cause of action for breach of contract are (1) the existence of the contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damages to the plaintiff. *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011).

First, the 2AC states that "Plaintiffs and Class Members entered into agreements with Tesla for the repairs and warranties on Tesla Vehicles"—establishing the existence of a contract.[4] 2AC ¶ 163. Second, the 2AC alleges that Plaintiffs and Class Members fulfilled their obligations under the contract—satisfying performance. *Id.* ¶ 168. Plaintiffs claim that "Tesla refused to cover maintenance on Plaintiffs' and Class Members' vehicles that would have been covered under the Basic Warranty had the odometer counted miles correctly"—demonstrating breach. *Id.* ¶¶ 165-66, 169. Finally, the 2AC alleges that Plaintiffs and Class Members were deprived of the benefit of the bargain, overspent on vehicle maintenance, and faced greater vehicle depreciation as a result of Tesla's breach. *Id.* ¶¶ 7, 145, 170. In sum, the 2AC sufficiently pleads the elements for a breach of contract claim.

Tesla states that Plaintiff Leon "never presented his car to Tesla for repair" and Plaintiff Hinton's vehicle was ineligible for repair because "the problem was caused by collision damage." Motion at 8; Reply at 7-8. Due to this, Tesla claims that Hinton and Leon do not have standing to assert a breach of contract cause of action. *Id.*

In the 2AC, Plaintiffs do not assert that Leon presented his car to Tesla for repair. *See generally* 2AC. Plaintiffs conceded this fact at the February 19, 2026 hearing. However, Plaintiffs indicated that Leon, since the filing of the 2AC, has presented his vehicle for repair to, and was denied coverage by Tesla. Therefore, the Court dismisses the breach of contract claim as to Leon but grants Plaintiffs leave to amend as amendment would not be futile. Fed. R. Civ. P. 15(a).

As to Hinton, the 2AC explicitly states that Hinton brought the vehicle to Tesla for repair or services on four occasions, observed an abnormal spike in average daily miles, and was denied warranty coverage. 2AC ¶¶ 83-90. Thus, Hinton has standing to bring the breach of contract claim. Tesla's arguments misstate Hinton's breach of contract claim.[5] As articulated by Plaintiffs, the

---

[4] Tesla offers multiple warranty levels. Plaintiffs held the Basic Vehicle Limited Warranty, which expires at four years or 50,000 miles. 2AC ¶ 44; Dkt. No. 23-3.

[5] Tesla also points to a text exchange and a calculation of Plaintiff Hinton's warranty coverage denial to suggest that Tesla was under no obligation to repair Hinton's vehicle. Motion at 8-9. The text exchange raises a factual dispute that the Court addresses in its RJN analysis. And the calculation is based on a fifteen (15) percent overstated mileage total while the 2AC states that the odometer can overstate mileage "well over fifteen (15) percent." 2AC ¶ 62. Since the

breach of contract claim centers on prematurely expired warranties due to the odometer's functionality, which was not disclosed to Plaintiffs and Class Members. *Id.* ¶¶ 163-70. The lack of disclosure is at the forefront of this action, which resulted in Tesla's denial of warranty coverage and subsequently out of pocket expenses for Plaintiffs and Class Members who had to pay for uncovered "costly repairs." *Id.* ¶ 7. Had Tesla informed Plaintiffs and Class Members of the odometer system's functionality, Plaintiffs and Class Members might have never purchased "a tesla Vehicle or any accompanying warranty." *Id.* And the breach of contract is brought as a class claim, with each member and Plaintiffs contesting Tesla's failure to disclose. *Id.* Thus, the Motion is DENIED as to Hinton's breach of contract claim.

Accordingly, the Motion is GRANTED IN PART as to the breach of contract claim WITH LEAVE TO AMEND as to Leon's presentation.

**G. Plaintiffs Sufficiently Plead a CLRA Claim.**

Tesla claims that Plaintiffs' CLRA claim fails because: (1) Plaintiffs do not allege Tesla's knowledge of the odometer system; and (2) Plaintiffs do not allege the requisite damages for a CLRA claim. Motion at 14-18.

> The CLRA makes it unlawful to:
> Misrepresent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or correction that the person does not have. Cal Civ. Code § 1770(a)(5);
>
> Misrepresent that goods for services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. Cal. Civ. Code § 1770(a)(7);
>
> Advertise goods or services with an intent not to sell them as advertised. Cal. Civ. Code § 1770(a)(10); and
>
> Representing that a part, replacement, or repair service is needed when it is not.

Cal. Civ. Code § 1770(a)(15). The California Supreme Court has held that a CRLA claim requires a showing of damages. *Meyer v. Sprint Spectrum L.P.*, 200 P.3d 295, 301 (Cal. 2009).

---

Court, at this pleading stage, construes the facts in Plaintiffs' favor, the Court does not find Tesla's points sufficient to dismiss Plaintiffs' breach of contract claim.

As stated, the Court finds that the 2AC, by claiming that Tesla designed the odometer system, sufficiently alleged Tesla's knowledge of the misrepresentation. 2AC ¶ 12. And the 2AC details factual allegations that argue that Tesla's misrepresentation or failure to disclose the odometer's functionality caused Plaintiffs and Class Members to suffer injuries. *Id.* ¶¶ 64, 177-79. Therefore, the 2AC presents claims under Civil Code Sections 1770(a)(5), (a)(7), (a)(10), and (a)(15). The remaining question is whether Plaintiffs adequately allege damages. Contrary to Tesla's claim that Plaintiffs did not allege that they "suffered actual damages," Motion at 18, Plaintiffs state that Class Members have suffered "out of pocket" expenses related to maintenance and repairs which should have been covered by the warranties. *Id.* ¶¶ 7, 63-64, 145, 161. Further, Plaintiffs maintain that they might have never purchased "a tesla Vehicle or any accompanying warranty" if they possessed knowledge of the odometer system's function. *Id.* ¶ 7. As a result, Plaintiffs' have adequately alleged a CRLA claim.

Accordingly, the Motion is denied as to the CRLA claim.

**H. Leave to Amend Is Warranted.**

"The Court is to liberally grant leave to amend a dismissed complaint. *See* Fed. R. Civ. P. 15(a); *Manzarek*, 519 F.3d at 1031. Because Plaintiffs could amend their complaint to properly allege an alter ego theory and/or an agency relationship with a beneficial interest or fiduciary duty, the Court finds that amendment would not be futile. *See* Motion at 6. Therefore, the Court will grant leave to amend with respect to all dismissed claims.

**III. <u>Conclusion</u>**

For the reasons stated herein, the Court ORDERS as follows:

1. Tesla's Motion (Dkt. No. 22) is GRANTED IN PART.
    a. The Motion is DENIED as to the Unjust Enrichment/Restitution (Count One) claim.
    b. The Motion is GRANTED WITH LEAVE TO AMEND as to the Negligent Misrepresentation (Count Two) claim.
    c. The Motion is DENIED as to the Business & Professions Code § 17200 (Count Three) claim.

d. The Motion is DENIED as to the Business & Professions Code § 17500 (Count Four) claim.

e. The Motion is GRANTED IN PART as to the Breach of Contract (Count Five) claim.

i. The Motion is GRANTED WITH LEAVE TO AMEND as to Leon's Breach of Contract claim.

ii. The Motion is DENIED as to Hinton's Breach of Contract claim.

f. The Motion is DENIED as to the California Civil Code § 1750 (Count Six) claim.

2. Tesla's RJN (Dkt. No. 24) is GRANTED in Part

a. The Court judicially notices Exhibit A;

b. The Court judicially notices Exhibit B but not the disputed facts contained therein;

c. The Court judicially notices Exhibit C; and

d. The Court does not judicially notice Exhibit D.

3. Any amended complaint against Tesla must be filed within thirty (30) days of this Order. If Plaintiffs do not file an amended complaint within thirty (30) days of this Order, only their claims for Unjust Enrichment/Restitution (Count One), Business & Professions Code § 17200 (Count Three), Business & Professions Code § 17500 (Count Four), Hinton's Breach of Contract (Count Five), and California Civil Code § 1750 (Count Six) will remain, and the thirtieth (30th) day from the date of this Order will be deemed the date of filing for purposes of calculating when Tesla's Answer is due.

4. The Court will issue an Order Setting Scheduling Conference forthwith.

IT IS SO ORDERED.

Dated: September 28, 2026

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge